## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| MARK GARDNER, | * | |
| LONNIE HOOD, and | * | |
| IVORY STREETER | * | |
| | * | |
| Plaintiffs, | * | |
| | * | Civil Action File No. |
| v. | * | 1:21-cv-02798-SEG |
| | * | |
| KEISHA LANCE BOTTOMS, in her | * | JURY TRIAL DEMANDED |
| Individual capacity | * | |
| PAUL HOWARD, in his | * | |
| Individual capacity AND Official | * | |
| Capacity, GREG L. THOMAS, in his | * | |
| Individual AND Official Capacity and | * | |
| ERIKA SHIELDS, in her | * | |
| Individual capacity, and FULTON | * | |
| COUNTY GOVERNMENT | * | |
| | * | |
| Defendants. | * | |

## SECOND AMENDED COMPLAINT

COME NOW the Plaintiffs, MARK GARDNER, IVORY

STREETER, and LONNIE HOOD by and through and their attorneys, Lance

LoRusso and Ken Davis, and for their Second Amended Complaint.[1] Plaintiffs file

---

[1] Plaintiffs hereby file their Second Amended Complaint per Federal Rule of Civil Procedure 15(a)(2); (c). Plaintiffs also filed a Motion for Leave to Amend contemporaneously with this Second Amended Complaint. The First Amended Complaint is attached for the convenience of the Court as Exhibit 13.

this Second Amended Complaint to fix a misnomer and provide clarification as to the defendants. Plaintiffs bring this Second Amended Complaint pursuant to 42 U.S.C. § 1983, as well as various state law causes of action enumerated herein, against Defendants Keisha Lance Bottoms, Paul Howard, Greg L. Thomas, Erika Shields, Fulton County Government, Georgia, and state the following in support thereof:

## **INTRODUCTION**

This is a civil action under 42 U.S.C § 1983 seeking damages against Defendants for committing acts, under color of law, with the intent and for the purpose of depriving Plaintiffs of the rights secured under the Constitution and laws of the United States; for depriving Plaintiffs equal protection under the law; for damaging Plaintiffs' reputations through an unfounded, malicious, and vexatious campaign of public disparagement accompanied by the deprivation of Plaintiffs' property rights as secured by the Fourteenth Amendment to the United States Constitution, and for false arrest and violation of Plaintiffs' Fourth Amendment Rights as well as their rights under the Georgia Constitution. Plaintiffs assert state law defamation claims against Defendants as well as false arrest claims against Defendants Thomas and Howard and malicious prosecution claims against Defendant Howard. Plaintiffs seek compensatory damages, attorneys' fees and

costs for Defendants' unlawful actions. Plaintiffs also seek compensatory damages, including punitive damages against all individual defendants.

## JURISDICTION AND VENUE

1. Plaintiffs' claims arise under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, as made actionable by 42 U.S.C § 1983. Plaintiffs' claims present federal questions over which this Court has subject matter jurisdiction pursuant to 28 U.S.C § 1331 and 28 U.S.C § 1343 (a).

2. Plaintiffs also assert defamation and invasion of privacy claims arising under Georgia law, O.C.G.A. § 51-5-1, *et seq.* Plaintiffs also assert false arrest and malicious prosecution claims. This Court has supplemental jurisdiction of these state law claims pursuant to 28 U.S.C § 1367.

3. This Court is a proper venue as the acts giving rise to Plaintiffs' claims occurred within this District.

4. Plaintiffs Gardner and Streeter served *ante litem* notices on Fulton County and the State of Georgia consistent with O.C.G.A. §36-11-1 and O.C.G.A. §50-21-26 on April 30, 2021 and supplemental *ante litem* notices on May 7, 2021 which placed Fulton County and the State of Georgia on notice of the claims and injuries outlined in the First Amended Complaint and this Second Amended Complaint. Said *ante litem* notices provided by Plaintiff Gardner

dated April 30, 2021 and May 7, 2021 are attached together as Exhibit 1.
Said *ante litem* notices provided by Plaintiff Streeter dated April 30, 2021,
and May 7, 2021 are attached together as Exhibit 2.

5. Neither Fulton County nor the State of Georgia timely responded to said *ante litem* notices.

6. Plaintiffs Gardner and Streeter have complied with all state-required procedural prerequisites to bring forth the claims outlined herein.

## **THE PARTIES**

7. Plaintiff Mark Gardner is and was, at all times relevant, a resident of Fulton County, Georgia, and an Investigator with the Atlanta City Police Department, resides in the Northern District of Georgia and is subject to the jurisdiction of this court.

8. Plaintiff Ivory Streeter is and was, at all times relevant, a resident of Cobb County, Georgia, and an Investigator with the Atlanta City Police Department, resides in the Northern District of Georgia and is subject to the jurisdiction of this court.

9. Plaintiff Lonnie Hood is and was, at all times relevant, a resident of Cobb County, Georgia, and a Sergeant with the Atlanta City Police Department,

resides in the Northern District of Georgia and is subject to the jurisdiction of this court.

10. Defendant Keisha Lance Bottoms is and was, at all times relevant, the Mayor for the City of Atlanta, Georgia and a resident of Fulton County, Georgia residing at 4900 Guilford Forest Drive SW, Atlanta, Georgia 30331 residing in the Northern District of Georgia. Once served with process, she is subject to the jurisdiction of this Court.

11. Defendant Erika Shields was, at all times relevant, the Police Chief for the Atlanta Police Department. She was, at the time of the events outlined herein, a resident of Cobb County, Georgia residing in the Northern District of Georgia and is currently a resident of Louisville, Jefferson County, Kentucky residing in Louisville, Kentucky. Plaintiffs are not providing her home address herein as a courtesy as Defendant Shields currently serves as the Chief of Police of the Louisville Police Department. Once served with process, she is subject to the jurisdiction of this Court.

12. Defendant Shields regularly engages in transactions relating to her former employment with the City of Atlanta, Georgia including, but not limited to, consulting on pending litigation, participating in meetings with counsel for the City of Atlanta, voluntarily appearing as a witness for the City of Atlanta

in hearings before the City of Atlanta Civil Service Board, and other routine, administrative matters consistent with her obligations as a former chief of Police. Additionally, Defendant Shields is entitled to and draws a pension from the City of Atlanta and maintains her professional certifications from the Georgia Peace Officer Standards and Training Council (POST) in good standing. Finally, Defendant Shields is actively engaged in efforts to recruit law enforcement officers from the City of Atlanta to work in Louisville, Kentucky through the posting of billboards and other advertisements which feature her likeness and a specific request "Join Us In Louisville." See Exhibit 3. Defendant Shields has, through said recruiting efforts, established significant contacts with the Northern District of Georgia. Therefore, the Northern District of Georgia is a convenient forum for her to appear as a defendant in this action. Further, Defendant Shields maintains sufficient voluntary contacts with the State of Georgia to satisfy any minimum contacts analysis necessary for a state court to exercise personal jurisdiction over her as a defendant regarding the matters pled herein.

13. Defendant Paul Howard was, at all times relevant, the District Attorney for the Atlanta Judicial Circuit, an employee of Fulton County, Georgia, and a resident of Fulton County, Georgia residing at 920 Dannon View SW, Suite

3202, Atlanta, Georgia 30331, residing in the Northern District of Georgia.

Once served with process, he is subject to the jurisdiction of this Court.

14. Defendant Greg L. Thomas was at all times relevant, an investigator with
the Fulton County District Attorney's Office, a sworn peace officer in the
State of Georgia, an employee of Fulton County, Georgia, and a resident of
an unknown county.[2] Once served with process, Defendant Thomas is
subject to the jurisdiction of this Court.

15. Defendant Fulton County, Georgia (the "COUNTY") is a political
subdivision of the State of Georgia which may be sued in its own name
pursuant to O.C.G.A. § 36-1-3 and may be served with process by serving
'Fulton County Government' via the Fulton County Attorney at 141 Pryor
Street, SW, Suite 4083, Atlanta, Georgia 30303. Once served with process,
Defendant County is subject to the jurisdiction of this Court. Defendant
County has waived sovereign immunity in this matter to the extent of its
purchase of liability insurance.

---

[2] Defendant Thomas' home address is unknown to Plaintiffs. Plaintiffs would not
have listed said address in this complaint if known as a courtesy as Defendant
Thomas currently serves as an Investigator with the Fulton County District
Attorney's Office.

16. As to state law claims raised herein, the statute of limitations on said claims have been extended pursuant to an official ORDER of the Georgia Supreme Court, pursuant to O.C.G.A. § 38-3-62. As such, all claims are timely filed.

*Facts Common to All Counts*

17. On May 30, 2020, Mayor Keisha Lance Bottoms issued executive order 2020-92 ("The Mayor's Curfew"), which established a curfew within the City of Atlanta, to extend from 9:00 P.M. on the evening of May 30, 2020, until sunrise on May 31, 2020.

18. The executive order issued by Mayor Bottoms was in response to large scale civil unrest that occurred on the previous evening, May 29, 2020.

19. The Order itself described the situation in the city as "dangerous," and states that "…persons began inciting violence and lawlessness," describing that "some persons trespassed and ransacked the CNN Center, the College Football Hall of Fame, and other properties in downtown Atlanta and in Buckhead…"

20. National news headlines showed massive destruction to Atlanta and provided imagery of officers and marked patrol units being attacked.

21. The events in the city on the evening of May 30, 2020 were very similar. That night, protesters shot fireworks at police officers and threw rocks,

incendiary devices and water bottles at officers, and there were multiple reports of shots fired.  One protester, Avery Goggans, attempted to run over police officers with an all-terrain vehicle, ultimately striking and seriously injuring Officer Maximilian Brewer.

22. In a televised news conference that evening, Mayor Bottoms described the situation as "Chaos."  She described how the rioters had drawn knives on police officers and burned police cars.  News video from the night recorded rioters throwing incendiary, explosive devices at police officers.

23. Some 400 National Guard members were brought to the city, along with law enforcement officers from the Georgia State Patrol, the Georgia Bureau of Investigation, the Georgia Department of Natural Resources, numerous city, county, and federal law enforcement agencies, in an attempt to safeguard lawful protestors, prevent destruction of property, arrest rioters and preserve life.

24. On May 30, 2020, Atlanta Police Commanders gave loud, lawful orders to the crowds by loudspeaker, indicating that the 9:00 P.M. curfew was in effect and that anyone on the street after that time was subject to arrest. Further, said Order was passed on to all City of Atlanta police officers,

including Plaintiffs, with explicit orders to begin making arrests for
violations of the Mayor's Curfew at 9:00 P.M.

25. On May 30, 2020, at approximately 9:45 P.M., some forty-five minutes
after the curfew was in place, uniformed City of Atlanta police officers made
contact with a male subject who was standing in the street beside a vehicle
and speaking with its driver.

26. Several officers approached the male to effect an arrest; the male was
placed on the ground and handcuffed.  All officers who approached the
subject were wearing city-issued uniforms clearly identifying them as City
of Atlanta police officers.

27. The vehicle was occupied by Messiah Young, who was the driver, and
Taniyah Pilgrim, a passenger.  Young failed to move forward, and the
vehicle remained stationary.

28. Young and Pilgrim were aware that all officers who approached the vehicle,
including Plaintiffs, were City of Atlanta police officers.

29. After this initial contact, a uniformed Atlanta police officer ordered Young
numerous times to move his vehicle and leave the area.

30. Young was impeding the flow of traffic, in violation of O.C.G.A. § 40-6-184, and using a cellular telephone while driving in violation of O.C.G.A. § 40-6-241.

31. Taniyah Pilgrim exited the vehicle, stood in the street, then returned to the vehicle after receiving numerous commands to do so but took no action to leave the area, as required by the Curfew and the lawful orders of the assembled officers, including the Plaintiffs.

32. Young failed to obey the lawful orders of the officer, Plaintiff Lonnie Hood, who then approached the vehicle to lawfully arrest Young; Plaintiff Hood opened the driver's door and ordered Young to exit the vehicle.

33. Young ignored this lawful order and rapidly drove forward, attempting to elude the police, while Plaintiff Hood was still standing in the vehicle's doorway, placing Plaintiff Hood at risk of serious bodily injury.

34. Young's actions constituted Reckless Driving in violation of O.C.G.A. § 40-6-390, Obstruction of Officers O.C.G.A. § 16-10-24 and Simple Assault O.C.G.A. § 16-5-20.

35. As Young tried to escape, he was forced to stop after a short distance due to traffic.

36. Both Young and Pilgrim refused to exit the vehicle upon further lawful orders of uniformed law enforcement officers, including Plaintiffs.

37. Both were subject to arrest at that time, and earlier, for violations of city ordinances and Georgia law, as stated above.

38. While trying to effect the arrest of Young and Pilgrim from the vehicle, Officer Carlos Smith exclaimed "GUN", creating a reasonable belief on the part of the Plaintiffs that Young was armed with a firearm which was in the vehicle.

39. Further, Young was seen by Plaintiffs Gardner and Streeter attempting to remove an object from his pocket while continuously ignoring repeated lawful orders to show his hands.

40. Plaintiff Hood saw Young reach down toward his waist and pants' pocket.

41. As a result of Young's actions, Plaintiffs were in reasonable fear for their lives and safety and that of others present including officers and civilians.

42. Plaintiffs Gardner, Streeter, and Hood utilized their city-issued conducted energy weapons, a/k/a TASERS, to gain compliance and control of Young and Pilgrim, eventually resulting in compliance and the end of resistance by Young and Pilgrim, and they were taken into custody without further incident.

43. At all times, Plaintiffs' use of their city-issued TASERS was in conformance with their training, Georgia and federal law, prevailing standards of law enforcement, and the policies and procedures of the City of Atlanta Police Department.

44. The Plaintiffs used only the amount of force necessary to effect the lawful arrests of Young and Pilgrim and, at all times, their use of force was reasonable and proportional to immediate circumstances, including the actions of Young and Pilgrim.

45. As a result of his actions, Messiah Young, committed the following criminal acts:

    a.  Obstructing or hindering law enforcement officers (O.C.G.A. § 16-10-24);

    b.  Disorderly Conduct (O.C.G.A. §16-11-39 and Atlanta City Code Part II, Chap. 106, Article III, § 106-81);

    c.  Reckless Driving (O.C.G.A. § 40-6-390);

    d.  Fleeing or attempting to elude police officer (O.C.G.A. § 40-6-395);

    e.  Operating a Cellular Device While Operating a Motor Vehicle (O.C.G.A. 40-6-241);

    f.  Obedience to authorized persons directing traffic (O.C.G.A. § 40-6-2);

g. Impeding the flow of traffic in violation of (O.C.G.A. §40-6-184); and

h. Violation of the curfew requirement of the Mayor's executive order.

46. As a result of her actions, Taniyah Pilgrim committed the following criminal acts:

a. Obstructing or hindering law enforcement officers (O.C.G.A. § 16-10-24);

b. Disorderly Conduct (O.C.G.A. §16-11-39 and Atlanta City Code Part II, Chap. 106, Article III, § 106-81); and

c. Violation of the curfew requirement of the Mayor's executive order.

47. The six Atlanta police officers involved in the arrests of Messiah Young and Taniyah Pilgrim had a combined law enforcement experience of some 120 years.

48. Having achieved the status of a "non-probationary employee" and employee in the "classified service," pursuant to City of Atlanta Municipal Code 114-84(d); 114-502; 114-516; 114-517; 114-518; 114-528(a); and, 114-546 Plaintiffs had a legally protected property right in their employment and could only be terminated or disciplined for cause.

49. On the day following the incident, Plaintiffs Gardner and Streeter were served with a "Notice of Proposed Adverse Action" (NPAA) form, noting a

purported violation of City of Atlanta Police Department Work Rule 4.2.50, "Maltreatment or Unnecessary Force."  See Exhibits 4 and 5 respectively.

50. None of the Plaintiffs violated City of Atlanta Police Department Work Rule 4.2.50, "Maltreatment or Unnecessary Force."

51. Less than an hour later, both Plaintiffs Gardner and Streeter were served with a "Notice of Final Adverse Action" (NFAA) by Defendant Shields, with an effective termination date of June 1, 2020.  See Exhibits 4 and 5 respectively[3].

52. Neither Plaintiff Gardner nor Plaintiff Streeter were provided an opportunity to respond to the charges by Defendant Shields, either orally or in writing, as required by both the Atlanta Municipal Code and Atlanta Police Department Policy, practice, and custom, more specifically but not limited to City of Atlanta Municipal Code 114-530.

53. Additionally, contrary to the clear policies, procedures, customs, and practices of the City of Atlanta, the Office of Professional Standards (OPS) did not, or was not permitted to conduct an investigation, prior to the Plaintiffs' terminations, as required when in connection to any allegations of

---

[3] The NPAAs and NFAAs, though attached as Exhibits to the original complaint, are attached together here for the convenience of the Court.

excessive force and misuse of a TASER, more specifically, but not limited
to, City of Atlanta Police Policy APD. SOP. 2020 "Disciplinary Process."

54. Both "Notice of Final Adverse Action" forms, provided to the Plaintiffs
Gardner and Streeter, attached as exhibits to this Complaint, have a box
labeled "Emergency Action," with a check placed in the "NO" box.

55. The respective forms indicate that Plaintiffs Gardner and Streeter provided
personal responses to the Notices of Proposed Adverse Action (NPAA).

56. This statement is entirely false and indicates a deliberate attempt to falsify
city documents.

57. According to City of Atlanta Police Department Policy, the purpose of a
"Personal Response" is to provide an employee with a pre-adverse action
opportunity, consistent with pre-disciplinary due process rights, as set out in
Cleveland Board of Education v. Loudermill, 470 U.S. 572 (1985), in
response to allegations of misconduct, after having an opportunity to review
the results and facts of the investigation.

58. Plaintiffs Gardner and Streeter were not given an opportunity to provide a
response to the Notice of Proposed Adverse Action, as required by duly
passed ordinances of the City of Atlanta.

59. All Plaintiffs were non-probationary employees of the City of Atlanta, and thus, could only be terminated for cause.  Likewise, the municipal code of the City of Atlanta, including, but not limited to, City of Atlanta Municipal Code 114-530, mandates that an employee who is the subject of proposed adverse action must be given notice and an opportunity to respond.

60. The policies, procedures, customs, and practices of the Atlanta Police Department essentially mirror these requirements.

61. Even though the ordinances, policies, practices, customs, and procedures require that Plaintiffs be given ten (10) days between service of the Notice of Proposed Adverse Action and service of the Notice of Final Adverse Action, Plaintiffs Gardner and Streeter were provided approximately thirty (30) minutes between these two events.

62. Defendant Shields failed to ensure that the events surrounding the presentation of the Notice of Final Adverse Action to Plaintiffs Gardner and Streeter were attended by a member of the City of Atlanta Office of Professional Standards and that such sessions were recorded as required by the policies, rules, regulations, practices, and customs of the City of Atlanta Police Department.

63. The terminations of Plaintiffs Gardner and Streeter were expedited,
including the blatant and intentional violation of duly passed city ordinances,
policies, practices, customs and procedures of the City of Atlanta Police
Department and the City of Atlanta, as well as the due process rights of
Plaintiffs Gardner and Streeter, in order to facilitate a planned press
conference by Defendant Bottoms, at which she announced, in conjunction
with Defendant Shields, that Plaintiffs Gardner and Streeter had been
terminated.

64. While the Notice of Final Adverse Action forms produced by the City of
Atlanta bear the name of Defendant Shields, Defendant Bottoms ratified the
decision to terminate Plaintiffs Gardner and Streeter and boasted about her
involvement and decision, sought increased political standing through their
termination, and reveled in the media attention she received, even though
she had no legal authority to terminate them, as the chief of police is solely
vested with the authority to terminate a City of Atlanta Police Officer,
pursuant to City of Atlanta Municipal Code 98-28[4].

---

[4] City of Atlanta Municipal Code 98-28(a) reads as follows: "The police chief is
the hiring and firing authority for the department of police, subject to applicable
ordinances, rules and regulations."

65. Defendant Shields was required, pursuant to City of Atlanta Municipal Code 98-28(a), to follow all "ordinances, rules, and regulations" in connection with the investigation of the incidents involving Young and Pilgrim as well as the discipline of Plaintiffs.

66. In the televised press conference held on May 31, 2020, even though the terminations of Plaintiffs Gardner and Streeter were not effective until June 1, 2020, Defendant Bottoms discussed the incident, and indicated that, after reviewing the body camera videos of the involved officers, she concluded "…that there clearly was an excessive use of force.  We understand that our officers are working very long hours under an enormous amount of stress, but we also understand that the use of excessive force is never acceptable."

67. Defendant Bottoms continued, "After review of that footage, ***Chief Shields and I*** ***have made the determination*** that two of the officers involved in the incident last night will be terminated immediately." (emphasis added).

68. In the same press conference, Defendant Shields characterized the conduct of the claimants as "manhandling."

69. During the same press conference, Defendant Bottoms announced that she used her influence to ensure that all charges against Messiah Young and Taniyah Pilgrim were dismissed, despite having no legal authority to do so.

70. Defendant Bottoms stated, "[t]he young woman was not charged and was released last evening.  And the young man has been released as well.  And I am ordering that the charges be dropped against the young man."

71. The terminations of Plaintiffs Gardner and Streeter were conducted by Defendants Bottoms and Shields, in an extremely and unnecessarily public manner with public comments made by Defendant Bottoms that insinuated that the Plaintiffs had committed crimes through their conduct and violated the prevailing standards of law enforcement.

72. Such statements, made without meaningful investigation, were made with reckless disregard for the truth and actual malice, and are in violation of the policies, procedures, customs, and practices of the City of Atlanta and the City of Atlanta Police Department, as described above.

73. Further acknowledging the lack of any meaningful investigation conducted by the city prior to terminating the Plaintiffs Gardner and Streeter, Defendant Bottoms made the following statement on the pod cast "Pod Save America" on June 1, 2020:

    a. "And I can tell you had that happened last week, I wouldn't have watched the video, likely.  I would have seen the video that was on television, but I would not have spent four to five

hours of my afternoon yesterday watching seven different body cams, five, seven times each.  Because even for as conscientious as I am, there are things that you go, 'well that was horrible.  Let's investigate.  And let's go through all these hoops.' But with where we are in America we don't have time to wait.  So my police officers just got a very real lesson on what our expectations and our level of tolerance will be in the city going forward.  The force was excessive.  They got [sic] to be fired.  Period."

74. The policies, procedures, customs, and practices of the Atlanta Police Department require that any serious use of force incident or any use of a TASER is to be investigated by the Office of Professional Standards more specifically, but not limited to, City of Atlanta Police Policy APD. SOP. 2020 "Disciplinary Process."

75. There is no dispute that such an investigation was not conducted prior to the termination of Plaintiffs Gardner and Streeter, and that Defendants Shields and Bottoms were aware that no such investigation was conducted.

76. The Plaintiffs were entitled to a full, fair, and impartial investigation of their actions on May 30, 2020.  The actions of Defendants Bottoms and Shields

constitute a deliberate, concentrated, and malicious effort, in concert and in conspiracy with one another, to deny plaintiffs their rights to said investigations.

77. In addition to their termination, the City of Atlanta Police Department reported to the Georgia Peace Officer Standards and Training Council (POST) that Plaintiffs Gardner and Streeter were terminated for cause.

78. This report to POST triggered a mandatory investigation that will permanently appear on their public licensing profile as peace officers and will be available to any law enforcement agency to which they apply for employment.

79. These reports to POST are untruthful, as the terminations were unlawful under the Atlanta Municipal Code and as the officers' use of force was lawful and proper under all relevant policies and procedures.

80. The City of Atlanta further reported the officers' separation as a termination for cause to the Georgia Department of Labor, limiting the Plaintiff's access to unemployment benefits.

81. Defendant Bottoms admitted publicly on numerous occasions that she immediately terminated Plaintiffs Gardner and Streeter despite the fact that such action violated duly passed City of Atlanta Ordinances.

82. Defendant Shields took an oath in her role as the chief of police of the City of Atlanta in which she swore to uphold the Constitution of the United States, the Constitution of the State of Georgia, the laws of the State of Georgia, the duly passed Ordinances of the City of Atlanta, and the policies, rules, and regulations of the City of Atlanta Police Department.

83. Defendant Shields was employed by the City of Atlanta for twenty-five (25) years, was familiar with the policies, procedures, customs, practices of the Atlanta Police Department and duly passed ordinances of the City of Atlanta.

84. Defendant Shields, as chief of Police, was both the policy maker and decision maker of the City of Atlanta Police Department.

85. Defendant Shields' actions in terminating Plaintiffs Gardner, Streeter, and Hood (facts of his termination will follow) constitute clear violations of her oath of office.

86. Defendant Bottoms took an oath in her role as the Mayor of the City of Atlanta, as set out in Atlanta City Ordinance 2-301(b), in which she swore to uphold the Constitution of the United States, the Constitution of the State of Georgia, the laws of the State of Georgia, the duly passed Ordinances of the City of Atlanta.

87. The oath Defendant Bottoms took reads as follows per city ordinance: "I do solemnly swear (or affirm) that I will faithfully discharge the duties of the [mayor, president of the council, councilmember] City Council of the City of Atlanta, Georgia. I will not knowingly permit my vote to be influenced by fear, favor, affection, or reward, and in all things pertaining to my office. I will be governed by the public good and the interests of the City. I will observe the provisions of the Charter, ordinances, and regulations of the City of Atlanta, and I will support and defend the Constitutions of the State of Georgia and the United States of America. I am not the holder of any office of trust under the government of the United States, any other state, or any foreign state which I am prohibited from holding by the laws of the State of Georgia; I am not the holder of any unaccounted-for public money due this state or any political subdivision or authority thereof; I have been a resident of the City of Atlanta [and Council District] and am otherwise qualified to hold this office by the Constitution and laws of this State and the Charter and ordinances of the City of Atlanta, so help me God."

88. Defendant Bottoms, as a member of the Georgia Bar and a duly licensed attorney since 1994, a former judge, Mayor since 2017, and a member of the

Atlanta City Council since 2009, was familiar with the policies, procedures, customs, practices and duly passed ordinances of the City of Atlanta.

89. As the Mayor of the City of Atlanta, Defendant Bottoms was required, pursuant to Atlanta City Ordinance 2-301I, to attend training "that shall include, but not be limited to, matters of campaign and financial disclosure requirements, standards of conduct, ethics code and the legislative process."

90. Defendant Bottoms' actions in terminating Plaintiffs Gardner and Streeter as outlined herein constitute clear violations of her oath of office.

91. Defendant Bottoms' actions in terminating Plaintiffs Gardner and Streeter, as outlined herein, constitute clear violations of her duties and obligations set forth in City of Atlanta Ordinances, specifically 98-26 and 98-28, which solely vests the police chief with the right to terminate a City of Atlanta Police Officer, and subject her to removal from office.

92. Defendant Bottoms' actions at the press conference and through various public comments and media appearances did not serve any legitimate purpose consistent with her sworn duties as the Mayor of the City of Atlanta and were perpetrated with actual malice in a brazen, bold, and desperate effort to advance her political career.

93. On June 2, 2020, Defendant Paul Howard held a lengthy press conference concerning the arrests of Messiah Pilgrim and Taniyah Young, just seven days before his primary election contest, in his unsuccessful re-election bid to continue serving as the elected district attorney for the Fulton Judicial District.

94. Defendant Howard broadcast on live television the details of his decision to instruct his internal investigator to obtain the arrest warrants.

95. Defendant Howard invited members of numerous press outlets to the press conference, set up a room to allow the gathering and participation of numerous media outlets, and invited Young, Pilgrim, and their counsel.

96. Defendant Howard announced and introduced the prosecution's key witnesses to the case. He described one witness' experience with the Plaintiffs as "terrify[ing]." He further prejudiced potential Fulton County jurors by describing the actions taken by the Plaintiffs as a "vicious act" while encouraging viewers to find and watch the body camera footage for themselves then eventually presenting the footage to the public during the press conference.

97. Defendant Howard exclaimed publicly his personal opinion that the Plaintiffs' actions were conclusively excessive force.

98. At the press conference, Defendant Howard announced the following charges against Plaintiffs Gardner, Streeter, and Hood:

   a. Plaintiff Gardner-Aggravated Assault O.C.G.A. § 16-5-21, Violation of Oath By A Public Officer O.C.G.A. § 16-10-1;

   b. Plaintiff Streeter- Aggravated Assault O.C.G.A. § 16-5-21, Violation of Oath By A Public Officer O.C.G.A. § 16-10-1; and,

   c. Plaintiff Hood-Aggravated Assault O.C.G.A. § 16-5-21, Simple Battery O.C.G.A. § 16-5-23.

99. The warrants for Plaintiffs, attached as Exhibits 6, 7, and 8 reflect that they were presented to a judge of the Fulton County Superior Court by Defendant Thomas on June 2, 2020 and signed the same day at 10:35 am for Plaintiff Gardner, 10:43 am for Plaintiff Streeter, and 10:38 am for Defendant Hood.

100. Howard instructed Thomas to seek the warrants.

101. Howard and Thomas secured the arrest warrants for Plaintiffs approximately sixty-one (61) hours after Plaintiffs encountered Young and Pilgrim.

102. Defendant Howard began the press conference at 11:00 am and the press in attendance were gathered when he began.

103. Defendant Howard announced the press conference and invited the media to attend to announce the criminal charges against Plaintiffs before the warrants were signed.

104. This content provided in a public forum is in direct disobedience of Georgia Rules of Professional Conduct set by the Georgia Bar Association. More specifically, Rule 3.6 instructs attorneys to be mindful of any extrajudicial statements that a reasonable person would believe to be disseminated by means of public communication. Comment 5 to Rule 3.6 expressly disallows extrajudicial statements in criminal proceedings that speak to "the identity of a witness or the expected testimony of a party or witness," "the identity of physical evidence expected to be presented," and importantly, "any opinion as to the guilt or innocence of a defendant or suspect in a criminal case or proceeding that could result in incarceration." Additionally, attorneys should not share "the fact that a defendant has been charged with a crime, UNLESS there is included therein a statement explaining that the charge is merely an accusation, and that the defendant is presumed innocent until and unless proven guilty" (emphasis added).

105. While publicly discussing this matter on June 30, 2020 on the "expeditiously Podcast" entitled "Politics as Usual with Paul Howard & Christian Wise Smith," Defendant Howard stated:

106. "Well, I- I just thought it was because the police chief was so outraged by the conduct that she immediately fired them, and for the police department, I think everybody knows that that's really unusual that they would fire somebody on the spot.  And, so once we viewed the videotape, we had eight high quality video tapes that showed us everything that they did, what is it that we had to wait for?"

107. Said statements and their utterance in the forum of a podcast were wholly unnecessary and unrelated to Defendant Howard's sworn duties as the elected District Attorney of the Atlanta Judicial Circuit and constitute acts taken with actual malice to damage the reputation and careers of Plaintiffs.

108. These events occurred immediately prior to the June 9, 2020 Democratic primary race, in which Defendant Howard faced opposition from two opponents.  In this context, it is clear that Defendant Howard abused the authority of his office in bringing charges against the Plaintiffs for his own political gain in a desperate attempt to win reelection.

109. At all times, Defendant Howard acted with actual malice directed at Plaintiffs, with the intent to cause them harm by trampling on the Plaintiffs' rights in furtherance of the Defendants' own personal interests and political agendas.

110. Defendant Howard's actions described above evidence Howard's personal animus towards the Plaintiffs and were done with an entire wont of diligence, concern and care for the rights of the Plaintiffs and with only his personal best interests in mind.

111. Defendant Howard's actions described above were in concert with and in support of the improper and highly politically motivated actions of Defendants Bottoms and Shields.

112. At the press conference, Defendant Howard exceeded the duties of an elected district attorney by making improper statements concerning evidence, made false statements concerning evidence which he knew, should have known, or through reasonable effort would have known were false, and provided a public forum for Young and Pilgrim and their attorneys to defame Plaintiffs, portray them in a false light, and damage their personal and professional reputations.

113. Defendant Howard's false statements include but are not limited to the following:

    a.  There was no indication that either Young or Pilgrim was in possession or had access to a firearm;

    b.  Plaintiffs violated City of Atlanta Policies and Procedures;

    c.  Incident involved two children;

    d.  The victims were both extremely innocent.

114. Defendant Howard's actions at the press conference did not serve any legitimate purpose consistent with his sworn duties as the elected district attorney of the Atlanta Judicial Circuit, did not advance the criminal cases against the Plaintiffs, and were perpetrated with actual malice in a brazen, bold, and desperate effort to advance his political career, as he sought reelection.

### *Facts Unique to Plaintiff Mark Gardner*

115. Plaintiffs restate paragraphs 1-113, as if fully restated here.

116. This case arises from the public, punitive actions levied on Plaintiff Gardner as a result of his involvement in a vehicle stop on May 30, 2020, in Atlanta, Georgia.

117. Plaintiff Gardner is a highly-decorated Investigator with the City of
Atlanta Police Department serving in the elite Fugitive Unit and has served
with the City of Atlanta as a sworn law enforcement officer for more than
twenty-three (23) years.

118. Plaintiff Gardner served as a Task Force Officer with the Federal Bureau
of Investigation (FBI) for ten years. Through that role, he received training
in the use of force from use of force instructors employed by the FBI.

119. Plaintiff Gardner, as of May 30, 2020, had accrued in excess of 2400 hours
of law enforcement training from City of Atlanta instructors as well as
instructors certified on a state and federal level.

120. Plaintiff Gardner's use of his issued TASER was in compliance with his
training, the law, and the practices, policies, procedures, and customs of the
Atlanta Police Department, including agency work rule 4.2.50,
"Maltreatment or Unnecessary Force," Standard Operating Procedure 3042,
"Conducted Energy Weapon (CEW)," Standard Operating Procedure 3010,
"Use of Force," and Standard Operating Procedure 3030, "Arrest
Procedures."

121. Additionally, the claimant's conduct complied with the law of the United
States as enumerated *in Graham v. Connor*, 490 U.S. 386 (1989) and the

state law of Georgia, as enumerated through O.C.G.A. § 16-3-21 and §17-4-20. [5]

122. Plaintiff Gardner was summarily terminated from the Atlanta Police Department effective June 1, 2020.

123. Plaintiff Gardner's termination was affected without either an internal or criminal investigation conducted by the Atlanta Police Department or any other agency.

124. As a result of Plaintiff Gardner's unlawful termination at the hands of Defendant Bottoms and Defendant Shields, effective June 1, 2020, he has, and will continue, to suffer public stigmatization including public ridicule, negative and national media attention, and sanctioning of his state certification.

---

[5] O.C.G.A. §16-3-21 addresses use of force in the defense of self or others, while O.C.G.A. §17-4-20 specifically addresses use of force by a peace officer in affecting an arrest: "Nothing in this code section shall be construed as to restrict such sheriffs of peace officers from the use of such reasonable nondeadly force as may be necessary to apprehend and arrest a suspected felon or misdemeanant." It should also be noted that the City of Atlanta Police Department, along with all other law enforcement agencies of the state, are forbidden by O.C.G.A. § 17-4-20(d) from adopting or promulgating any rule, regulation, or policy which would prohibit a peace officer from using that degree of force to apprehend a suspected felon which is allowed by the statutory and case law of Georgia.

125. The very public comments by Defendants that Plaintiff Gardner's use of force was excessive had and continues to have an extremely negative impact upon any future employment prospects and still stands to jeopardize his ability to practice his chosen profession.

126. Plaintiff Gardner appealed his termination to the Civil Service Board in a hearing on January 21, 2021. The Board ultimately reinstated Mr. Gardner's employment with the Atlanta Police Department, noting numerous failures of the City to comply with the Municipal Code of the City of Atlanta, specifically violations of due process protections which are guaranteed to non-probationary employees below the rank of lieutenant facing investigation and discipline.

127. At all times, Defendants Bottoms and Shields acted with actual malice directed at Plaintiff Gardner, with the intent to cause harm to Plaintiff Gardner, and acted in concert to deprive Plaintiff Gardner of his due process rights in violation of the duly passed ordinances of the City of Atlanta as well as the policies, practices, rules, regulations, and customs of the City of Atlanta.

128. Defendant Paul Howard, after only watching video recordings of the incident and without benefit of any official investigation, instructed a DA's

office investigator, Greg Thomas, to obtain an arrest warrant for Plaintiff
Gardner on June 2, 2020.

129. This is clearly an inadequate investigation and overstepped Defendant
Howard's bounds as the District Attorney.  In such cases, it is common
practice and custom for a District Attorney to either obtain or complete a
thorough investigation, and if warranted upon review, prepare an indictment
for presentation to a grand jury.  Instead, Defendant Howard took the highly
unusual step of instructing an investigator in his office to obtain the arrest
warrants with essentially no investigation.

130. The arrest warrants obtained by DA's office investigator Greg Thomas, at
the direction and under the supervision of Defendant Howard, charged
Plaintiff Gardner with Aggravated Assault in regard to his use of a TASER
on Taniyah Pilgrim.

### *Facts Unique to Plaintiff Ivory Streeter*

131. Plaintiffs restate paragraphs 1-129, as if fully restated here.

132. This case arises from the public, punitive actions levied on Plaintiff
Streeter as a result of his involvement in a vehicle stop on May 30, 2020, in
Atlanta, Georgia.

133. Plaintiff Streeter is a highly-decorated Investigator with the City of Atlanta Police Department serving in the elite Fugitive Unit and has served with the City of Atlanta as a sworn law enforcement officer for over seventeen (17) years and received the highest annual ratings of "highly effective" for fifteen (15) of those years.

134. Plaintiff Streeter served as a Task Force Officer with the Georgia Bureau of Investigation (GBI) assisting with undercover operations and complex law enforcement operations throughout the State of Georgia including cases prosecuted by the United States Department of Justice. Through that role, he received training in the use of force from use of force instructors employed by the GBI.

135. Plaintiff Streeter, as of May 30, 2020, had accrued in excess of 1800 hours of law enforcement training from City of Atlanta instructors as well as instructors certified on a state and federal level.

136. Plaintiff Streeter discharged his city issued TASER against the occupants of the vehicle in order to quickly and safely overcome the resistance of the occupants and affect their arrest.

137. Plaintiff Streeter's use of his issued TASER was in compliance with his training, the law, and the practices, policies, procedures, and customs of the

Atlanta Police Department, including agency work rule 4.2.50,

"Maltreatment or Unnecessary Force," Standard Operating Procedure 3042,

"Conducted Energy Weapon (CEW)," Standard Operating Procedure 3010,

"Use of Force," and Standard Operating Procedure 3030, "Arrest

Procedures."

138. Additionally, the claimant's conduct complied with the law of the United

States as enumerated *in Graham v. Connor*, 490 U.S. 386 (1989) and the

state law of Georgia, as enumerated through O.C.G.A. § 16-3-21 and §17-4-

20. [6]

139. Plaintiff Streeter was summarily terminated from the Atlanta Police

Department effective June 1, 2020.

---

[6] O.C.G.A. §16-3-21 addresses use of force in the defense of self or others, while O.C.G.A. §17-4-20 specifically addresses use of force by a peace officer in affecting an arrest: "Nothing in this code section shall be construed as to restrict such sheriffs of peace officers from the use of such reasonable nondeadly force as may be necessary to apprehend and arrest a suspected felon or misdemeanant." It should also be noted that the City of Atlanta Police Department, along with all other law enforcement agencies of the state, are forbidden by O.C.G.A. § 17-4-20(d) from adopting or promulgating any rule, regulation, or policy which would prohibit a peace officer from using that degree of force to apprehend a suspected felon which is allowed by the statutory and case law of Georgia.

140. Plaintiff Streeter's termination was affected without either an internal or criminal investigation conducted by the Atlanta Police Department or any other agency.

141. As a result of Plaintiff Streeter's unlawful termination at the hands of Defendant Bottoms and Defendant Shields, effective June 1, 2020, he has and will continue to suffer public stigmatization.

142. The very public comments by Defendants that Plaintiff Streeter's use of force was excessive have had an extremely negative impact upon any present or future employment prospects.

143. Plaintiff Streeter appealed his termination to the Civil Service Board in a hearing on January 7, 2021. The Board ultimately reinstated Investigator Streeter's employment with the Atlanta Police Department, "[b]ased upon the serious concerns of insufficient adherence to City code and procedures which culminated into a lack of due process."

144. At all times, Defendants Bottoms and Shields acted with actual malice directed at Plaintiff Streeter, with the intent to cause harm to Plaintiff Streeter, and acted in concert to deprive Plaintiff Streeter of his due process rights in violation of the duly passed ordinances of the City of Atlanta as

well as the policies, practices, rules, regulations, and customs of the City of Atlanta.

145. Defendant Paul Howard, after only watching video recordings of the incident and without benefit of any official investigation, instructed a DA's office investigator, Greg Thomas, to obtain an arrest warrant for Plaintiff Streeter on June 2, 2020.

146. This is clearly an inadequate investigation and overstepped Defendant Howard's bounds as the District Attorney.  In such cases, it is common practice and custom for a District Attorney to either obtain or complete a thorough investigation, and if warranted upon review, prepare an indictment for presentation to a grand jury.  Instead, Defendant Howard took the highly unusual step of instructing an investigator in his office to obtain the arrest warrants with essentially no investigation.

147. The arrest warrants obtained by DA's office investigator Greg Thomas, at the direction and under the supervision of Defendant Howard, charged Plaintiff Streeter with Aggravated Assault in regard to his use of a TASER on Taniyah Pilgrim.

148. The arrest warrants obtained by DA's office investigator Greg Thomas, at the direction and under the supervision of Defendant Howard, charged

Plaintiff Streeter with Pointing Or Aiming Gun Or Pistol At Another, for his interaction with Messiah Young.

*Facts Unique to Plaintiff Lonnie Hood*

149. Plaintiffs restate paragraphs 1-147, as if fully restated here.

150. This case arises from the public, punitive actions levied on Plaintiff Hood as a result of his involvement in a vehicle stop on May 30, 2020, in Atlanta, Georgia.

151. Plaintiff Hood is a highly-decorated Investigator with the City of Atlanta Police Department serving in the elite Fugitive Unit and has served with the City of Atlanta as a sworn law enforcement officer for more than twenty-one (21) years.

152. Plaintiff Hood, as of May 30, 2020, had accrued in excess of 2000 hours of law enforcement training from City of Atlanta instructors as well as instructors certified on a state and federal level.

153. On May 30, 2020, after the curfew had passed, Plaintiff Hood observed a passenger vehicle stopped in the roadway with a male standing next to the vehicle talking with the driver.

154. Several officers approached the male to affect an arrest; the male was placed on the ground and handcuffed.  All officers who approached the

vehicle were wearing city issued uniforms clearly identifying them as city of
Atlanta police officers.

155. The vehicle was occupied by Messiah Young, who was the driver, and
Taniyah Pilgrim, a passenger.

156. Young continued to idle the vehicle in the same location and refused to
move forward when directed by the officers, obstructing the traffic behind
him.  Instead, Young pointed his cell phone at them while remaining
stationary.

157. At that time, officers advised Young that he needed to move along or he
would be arrested.  Young continued to disobey their lawful orders and
remained stationary.

158. After repeated directions to move along, Plaintiff Hood approached the
vehicle, reached for driver's side door handle and opened the door.  He then
reached for Young's arm in order to affect an arrest.

159. Young then rapidly drove forward while Plaintiff Hood was still standing
in the vehicle's doorway, placing him at risk of serious bodily injury.

160. As Young tried to escape, he was forced to stop after a short distance due
to traffic.

161. Plaintiff Hood ran to the passenger side of the vehicle.

162. Both Messiah Young and his passenger, Taniyah Pilgrim, refused to exit the vehicle upon the lawful orders of the uniformed law enforcement officers. The windows of the vehicle were rolled up and the doors were locked.

163. Plaintiff Hood gave Pilgrim lawful orders to open her door but she initially refused.

164. When Pilgrim opened the door, she did not exit the vehicle.

165. Pilgrim was then tased by Plaintiff Gardner; Plaintiff Hood then drew his city issued TASER.

166. Young then reached over into the passenger seat and attempted to dislodge the TASER probes from Pilgrim committing a felony under Georgia law, specifically Obstruction of Officers O.C.G.A. § 16-10-24.

167. Plaintiff Hood then deployed his city issued TASER toward Young, but was unable to determine if the prongs made contact.

168. Pilgrim then attempted to exit the vehicle but it rolled slightly; she then yelled out for Young to stop.  Shortly thereafter, Pilgrim was pulled from the vehicle by another officer.

169. Plaintiff Hood then entered the vehicle while Young was still in the driver's seat.  Plaintiff Hood attempted to holster his TASER, but was

unable to do so and instead placed it in the passenger seat.  Plaintiff Hood took Young's right arm and began pulling him toward the passenger seat.

170. Young was then tased from the driver's side, and Plaintiff Hood released his arm.  Young then lowered his hands, placing them near his waist and pocket area.  At this time, Plaintiff Hood drew his city issued service weapon fearing Young could be reaching for a weapon.

171. Simultaneously, Officer Carlos Smith exclaimed "GUN," creating a reasonable belief on the part of the Plaintiffs that Young may have been armed and that a firearm was present within the vehicle.

172. Plaintiff Hood did not observe a gun, and then re-holstered his firearm. Plaintiff Hood continued to attempt to gain control of Young until he was pulled out of the vehicle from the driver's side by another officer.  Both Young and Pilgrim were placed under arrest and escorted to a staging area near CNN Center.

173. Plaintiff Hood's use of his issued TASER was in compliance with his training, the law, and the practices, policies, procedures, and customs of the Atlanta Police Department, including agency work rule 4.2.50, "Maltreatment or Unnecessary Force," Standard Operating Procedure 3042, "Conducted Energy Weapon (CEW)," Standard Operating Procedure 3010,

"Use of Force," and Standard Operating Procedure 3030, "Arrest Procedures."

174. Additionally, the claimant's conduct complied with the law of the United States as enumerated in _Graham v. Connor_, 490 U.S. 386 (1989) and the state law of Georgia, as enumerated through O.C.G.A. § 16-3-21 and §17-4-20. [7]

175. Plaintiff Hood got off duty at approximately 3:30 A.M. on Sunday, May 31, 2020.

176. Plaintiff Hood reported again for duty at approximately 11:00 A.M. on Sunday, May 31, 2020 in order to generate reports regarding the incident. After generating his report, Plaintiff Hood was sent home.

177. Defendant Paul Howard, after only watching video recordings of the incident and without benefit of any official investigation, instructed a DA's

---

[7] O.C.G.A. §16-3-21 addresses use of force in the defense of self or others, while O.C.G.A. §17-4-20 specifically addresses use of force by a peace officer in affecting an arrest: "Nothing in this code section shall be construed as to restrict such sheriffs of peace officers from the use of such reasonable nondeadly force as may be necessary to apprehend and arrest a suspected felon or misdemeanant." It should also be noted that the City of Atlanta Police Department, along with all other law enforcement agencies of the state, are forbidden by O.C.G.A. § 17-4-20(d) from adopting or promulgating any rule, regulation, or policy which would prohibit a peace officer from using that degree of force to apprehend a suspected felon which is allowed by the statutory and case law of Georgia.

office investigator, Greg Thomas, to obtain an arrest warrant for Plaintiff
Hood on June 2, 2020.

178. This is clearly an inadequate investigation and overstepped Defendant
Howard's bounds as the District Attorney.  In such cases, it is common
practice and custom for a District Attorney to either obtain or complete a
thorough investigation, and if warranted upon review, prepare an indictment
for presentation to a grand jury.  Instead, Defendant Howard took the highly
unusual step of instructing an investigator in his office to obtain the arrest
warrants with essentially no investigation.

179. The arrest warrants obtained by DA's office investigator Greg Thomas, at
the direction and under the supervision of Defendant Howard, charged
Plaintiff Hood with Aggravated Assault in regard to his use of a TASER on
Messiah Young.

180. The arrest warrants obtained by DA's office investigator Greg Thomas, at
the direction and under the supervision of Defendant Howard, charged
Plaintiff Hood with Aggravated Assault alleging he deployed a TASER
against Taniyah Pilgrim.

181.  Plaintiff Hood never deployed his TASER against Taniyah Pilgrim, a fact
which could have been determined by diligent investigation.

182. The arrest warrants obtained by DA's office investigator Greg Thomas, at the direction and under the supervision of Defendant Howard, charged Plaintiff Hood with Simple Battery alleging that he "intentionally and without justification made physical contact with Taniyah Pilgrim, of an insulting or provoking nature, by violently pulling Taniyah Pilgrim out of a parked vehicle and throwing Taniyah Pilgrim down unto the paved street."

183. Plaintiff Hood did not remove Pilgrim from the vehicle or place her on the ground, facts which could and would have been obvious by diligent investigation.

184. On June 2, 2020, Plaintiff Hood was relieved of duty and placed on suspension with pay.

185. On June 9, 2020, Plaintiff Hood's union representative, Raemona Byrd, was served with a "notice of proposed adverse action" form, noting a violation of APD work rule 4.2.50, "Maltreatment or Unnecessary Force," and indicating a proposed dismissal to be effective on June 11, 2020.  The form was signed by Defendant Shields and dated June 9, 2020.

186. The "Notice of Proposed Adverse Action" (NPAA) form (see Exhibit 9) indicates that Plaintiff Hood could respond to the disciplinary authority on June 10, 2020, at 1:00 p.m.

187. On June 10, 2020, Plaintiff Hood's union representative, Raemona Byrd, was served with a "notice of final adverse action" form (see Exhibit 9), noting a violation of APD work rule 4.2.50, "Maltreatment or Unnecessary Force," and indicating that his dismissal would be effective on June 11, 2020.  The form was signed by Defendant Shields and dated June 10, 2020.

188. Despite the language of the "Notice of Proposed Adverse Action" (NPAA), Plaintiff Hood was not provided a meaningful opportunity to respond to the charges by Defendant Shields, either orally or in writing, as required by both the Atlanta Municipal Code and Atlanta Police Department Policy.

189. Additionally, contrary to the clear policies, procedures, customs, and practices of the City of Atlanta, the office of professional standards did not, or was not permitted to conduct an investigation, *prior* to Plaintiff Hood's termination.

190. Both "Notice of Proposed Adverse Action" (NPAA) and "Notice of Final Adverse Action" (NFAA) forms provided to Plaintiff Hood, attached as an exhibit to this Complaint, have boxes labeled "Emergency Action," with a check placed in the "yes" box.

191. The policies, procedures, customs, and practices of the Atlanta Police Department require that any serious use of force incident or any use of a TASER is to be investigated by the Office of Professional Standards more specifically but not limited to City of Atlanta Police Policy APD. SOP. 2020 "Disciplinary Process."

192. The Plaintiffs were entitled to a full, fair, and impartial investigation of their actions on May 30, 2020.  The actions of Defendants Bottoms and Shields instituted a deliberate, concentrated, and malicious effort, in concert and in conspiracy with one another, to deny them the right to said investigation.

193. Plaintiff Hood's termination was affected without either an internal or criminal investigation conducted by the Atlanta Police Department or any other agency.

194. As a result of Plaintiff Hood's unlawful termination at the hands of Defendant Bottoms and Defendant Shields, effective June 11, 2020, he has, and likely will continue, to suffer public stigmatization.

195. The very public comments by Defendants Howard, Shields, and Bottoms that Plaintiff Hood's use of force was excessive has had an extremely negative impact upon any future employment prospects.

196. Plaintiff Hood appealed his termination to the Atlanta Civil Service Board, and a hearing was held on April 29, 2021.

197. The Atlanta Civil Service Board reinstated Plaintiff Hood's employment with the Atlanta Police Department, holding that: "The city failed to follow its own disciplinary procedures in this action.  Moreover, the City did not show that the circumstances in this matter warranted emergency action."

198. At all times, Defendants Bottoms and Shields acted with actual malice directed at Plaintiff Hood, with the intent to cause harm to Plaintiff Hood, and acted in concert to deprive Plaintiff Hood of his due process rights in violation of the duly passed ordinances of the City of Atlanta as well as the policies, practices, rules, regulations, and customs of the City of Atlanta.

199. Defendant Howard was aware, as evidenced by his statements, that City of Atlanta Police Officers are entitled to due process and are not terminated immediately.

*Preliminary Note to Causes of Action*

200. When the Complaint was filed, the criminal trials of Plaintiffs had not been scheduled, no indictments had been returned, and in fact, the entire office of the District Attorney for the Atlanta Judicial Circuit had been recused from any involvement in the pending criminal matters against

Plaintiffs, in part pursuant to a formal request from the newly elected district attorney. The Plaintiffs  filed this civil action at that time to timely meet any applicable statutes of limitations under Georgia law including any defamation claims arising out of the televised press conference and media appearances thereafter. All criminal charges against Plaintiffs were dismissed on May 23, 2020.

201. Applicable statutes of limitations regarding state law claims have been extended pursuant to official orders of the Georgia Supreme Court.

202. Defendant Howard remained in office and continued to prosecute Plaintiffs until he was removed from office at the end of his term having lost the election to Fani Willis.

203. During the nearly seven months from June 2, 2020 through December 31, 2020, a period of 211 days, Defendants Howard and Thomas did nothing to follow up on their investigations, make any efforts to interview Plaintiffs, make any efforts to verify the statements of Young and Pilgrim to Thomas or to the public at the June 2 press conference, or in any way determine if their warrants they secured were based upon probable cause.

204. On January 2021, Fani Willis, having been duly sworn as District Attorney for the Atlanta Judicial Circuit successfully sought to have the prosecution of Plaintiffs assigned to a conflict prosecutor.

205. On July 21, 2021, Attorney General Christopher M. Carr assigned the prosecution of Plaintiffs to Samir Patel, District Attorney of the Cherokee Judicial Circuit to serve as District Attorney *Pro Tempore* per O.C.G.A. § 15-8-5.

206. Samir Patel, hereinafter "Patel" or "Special Prosecutor," took custody of the files from the District Attorney's Office of the Atlanta Judicial Circuit, sought the assistance of the Georgia Bureau of Investigation (GBI) to investigate the events that led to the detention and arrests of Messiah Young and Taniyah Pilgrim, and the criminal charges against Plaintiffs.

207. Plaintiffs voluntarily submitted to interviews with the GBI, provided all materials requested by the GBI and Patel, and cooperated fully with Patel's investigation.

208. After ten months of investigation, research, and analysis, Patel filed a pleading entitled, "Not Presented to Grand Jury" on May 23, 2022. His eighteen-page decision, excluding five pages of exhibits including the arrest affidavits of Defendant Thomas, the arrest warrants for Plaintiffs, and two

maps outlines the course of his investigation, the findings, relevant policies of the City of Atlanta Police Department, case law, and statutory authority. A copy of the filings, one for each Plaintiff, is attached hereto as Exhibits 10, 11, and 12.

209. In dismissing ALL charges against Plaintiffs, Patel stated,

"After conducting an actual investigation of this matter and a review of all the materials provided, the State cannot prove any of the officers intended to violate any criminal statute. It is the opinion of this prosecuting agency that the officers were acting within the lawful scope of their authority and their actions were reasonable and in accordance with the law. I further find no criminal intent on the part of Ivory Streeter, Lonnie Hood, Mark Gardner, Roland Claud, Willie Sauls, and Armond Jones."

210. Following dismissal of all criminal charges against Plaintiffs based upon a finding that no probable cause existed for said charges, Patel sought an order sealing the Plaintiffs' arrest records per O.C.G.A. §35-3-37(d)(1)(B) which reads:

(d) (1) An individual who was:

(A) Arrested for an offense under the laws of this state but subsequent to such arrest is released by the arresting agency without such offense being referred to the prosecuting attorney for prosecution; or

(B) After such offense referred to the proper prosecuting attorney, and the prosecuting attorney dismisses the charges without seeking an indictment or filing an accusation may request the original agency in writing to expunge the records of such arrest, including any fingerprints or photographs of the individual taken in conjunction with such arrest, from the agency files. Such request shall be in such form as the center shall prescribe. Reasonable fees shall be charged by the original agency and the center for the actual costs of the purging of such records, provided that such fees shall not exceed $50.00.

211. Plaintiffs arrest records will not be concealed from law enforcement agencies, licensing agencies, or government entities conducting employment, background, or security clearance checks.

212. Plaintiffs plan to continue working as law enforcement officers and intend to pursue work in related fields which require background and security clearances after their retirement from the City of Atlanta Police Department.

213. The arrests at issue, and the permanent records resulting therefrom with the Georgia Crime Information Center (GCIC) and the National Crime Information Center (NCIC), as well as the transcript, recording, and news reports from Howard's June 2, 2020 press conference will continue to damage the Plaintiffs in perpetuity.

214. Patel's report detailed the following relevant facts:

-Messiah Young and Taniyah Pilgrim advised they were driving to a business when they were contacted by Plaintiffs. However, all businesses in the City of Atlanta were closed by executive order of Mayor Bottoms;

-Messiah Young and Taniyah Pilgrim advised they were unaware of the curfew in place;

-Messiah Young and Taniyah Pilgrim were in possession of cellphones on the night in question and recorded, at a minimum, the events involving Plaintiffs and other officers. Defendants Howard and

Thomas never forensically examined the cellphones to verify the statements they made;

- Messiah Young and Taniyah Pilgrim were in possession of cellphones on the night in question and recorded, at a minimum, the events involving Plaintiffs and other officers, yet they refused to turn the cellphones over to the Patel's office or the GBI despite being asked to do so;

-Messiah Young was driving with a suspended driver's license;

-The registration on Taniyah Pilgrim's vehicle was invalid;

-Messiah Young and Taniyah Pilgrim were subject to arrest when the officers, including Plaintiffs, first contacted them;

-Officers, including Plaintiffs, told Messiah Young "numerous times" to leave over a period of thirty seconds, yet Mr. Young refused to comply and move his vehicle;

-Officers, including Plaintiffs did not arrest numerous other individuals who were in the city after the curfew because they were not committing crimes, not obstructing traffic, leaving on their own, or leaving when ordered to do so.;

-Taniyah Young was not charged with curfew violations "because she did not have identification on her person.";

-Messiah Young and Taniyah Pilgrim were not free to leave, flee, or resist arrest when they were contacted by officers including Plaintiffs;

-The encounter between Messiah Young and Taniyah Pilgrim and officers, including Plaintiffs, was categorized as a third-tier encounter under Georgia law as the officers, including Plaintiffs, had witnessed a crime being committed in their presence;

- Messiah Young and Taniyah Pilgrim were in violation of the curfew when they were first approached by officers, including Plaintiffs, and subject to arrest at that time;

-Officers "gave Messiah Young approximately thirty-three (33) seconds to comply with their lawful commands before they shattered the driver's side window. Three (3) seconds later, at 21:46:25, law enforcement deployed their taser on Mr. Young."

-"Ms. Pilgrim failed to obey the officer's instructions for approximately ten (10) seconds.";

-"Officer Hood [Plaintiff Hood] at 21:45:54 instructed Ms. Pilgrim to get out of the car, Ms. Pilgrim initially refuses to abide by this

instruction. Ms. Pilgrim then instructed Mr. Young to stop the car. Ms. Pilgrim then screamed stop several times and appeared to be complying with law enforcement commands by removing her right leg from the vehicle at 21:46:01. However, at 21:46:02, Ms. Pilgrim ends her compliance with law enforcement and places her right foot back into the vehicle. It is then at 21:46:04 law enforcement tased Ms. Pilgrim.";

-"The officers were unable to determine the safety risk Mr. Young and Ms. Pilgrim posed when they initially approached the two individuals.";

-The circumstances surrounding the encounter between Messiah Young and Taniyah Pilgrim and the officers, including Plaintiffs was set in an unprecedented environment of rampant violence, continual gunshots, destruction of property, and threats to officers;

-"It is clear from reviewing the body cameras in this matter that the occupants of the vehicle [Messiah Young and Taniyah Pilgrim] were resisting arrest. Messiah Young and Taniyah Pilgrim were provided numerous and repeated opportunities to abide by the lawful commands of law enforcement."

"Not only was law enforcement acting within the scope of their legal authority in their actions to obtain compliance, but their actions were also largely consistent with Atlanta Police Department's own use of force policy.";

-"It is also clear from the evidence that the use of the taser, and indeed any force employed by the police, ended once Mr. Young and Ms. Pilgrim were subdued. The actions of the officers were proportional to the force necessary to effectuate the arrests.";

-"…law enforcement was ordered to strictly enforce a 9:00 P.M. curfew on the evening of May 30, 2020.";

-"Mr. Young's actions in driving away during his encounter with law enforcement, could have resulted in serious bodily injury to the officer.";

-Messiah Young made several overt acts that constituted felonies under Georgia law;

-"Given the extremely chaotic and dangerous scene, as described by Chief Shields [Defendant Shields] and Mayor Bottoms [Defendant Bottoms], it was entirely reasonable for an officer to have a heightened sense of danger during this encounter.";

**COUNT ONE**

**Denial of Equal Protection Claim
against Defendants Shields and Bottoms**

215. Plaintiffs restate paragraphs 1-214, as if fully restated here.

216. The Equal Protection Clause of the Fourteenth Amendment to the United
States Constitution entitles Plaintiffs to equal protection and equal treatment
under the law.

217. Defendants violated Plaintiffs' rights to equal protection by, among other
things, subjecting Plaintiffs to discriminatory and disparate treatment not
otherwise imposed on similarly situated persons more specifically, taking
action to separate them from employment without a thorough investigation
and in violation of numerous policies and procedures of the City of Atlanta
Police Department and duly passed ordinances of the City of Atlanta.

218. Defendants Shields and Bottoms subjected Plaintiffs to disparate treatment
and discriminatory rules and regulations not otherwise imposed on similarly
situated individuals.

219. More particularly, Defendants Shields and Bottoms wrongly disciplined
Plaintiffs.

220. Defendants Shields and Bottoms wrongly terminated Plaintiffs.

221. Defendants Shields and Bottoms had no rational basis for any of the discipline or termination.

222. At all times relevant hereto, the law was clearly established that the actions of Defendants Shields and Bottoms violated the equal protection clause of the Fourteenth Amendment to the United States Constitution.

223. Defendants Shields and Bottoms undertook all of their conduct giving rise to the Plaintiffs' claims while acting under color of State and local law and within the course and scope of their employment.

224. Defendants Shields and Bottoms failed to perform ministerial acts in connection with the denial of rights to Plaintiffs including but not limited to:

a. Failing to follow City of Atlanta Police Policies which required a full investigation of the incidents outlined here involving Young and Pilgrim by the City of Atlanta Police Department's Office of Professional Standards;

b. Failing to interview Plaintiffs as a part of a thorough administrative investigation; and,

c. Failing to provide Plaintiffs an opportunity to respond to the allegations of misconduct lodged against them.

225. Plaintiffs have been irreparably harmed by Defendants' unlawful actions.

226. Defendants Shields and Bottoms acted intentionally and with callous disregard for Plaintiffs' known statutory and constitutional rights.

227. As a direct and proximate result of the actions of Defendants Shields and Bottoms, Plaintiffs have been deprived of rights to which they were entitled and suffered loss of income and revenue as a result thereof.

228. Plaintiffs have been irreparably harmed by the unlawful, retaliatory and defamatory actions of Defendants Shields and Bottoms.

229. As a direct and proximate result of the actions of Defendants Shields and Bottoms, the Plaintiffs suffered damages including financial damage, emotional distress, mental anguish, inconvenience, loss of income and benefits, humiliation, and other indignities.

230. Plaintiffs pray for compensatory attorneys' fees, expert fees, costs, per se damages, and pre-judgement and post-judgement interest against Defendants Shields and Bottoms.

231. Defendant Bottoms' conduct was intentional, reckless, and malicious, as a result, Plaintiffs pray for punitive damages, without limits against Defendant Bottoms in her individual capacity.

232. Defendant Shields' conduct was intentional, reckless and malicious. The Plaintiffs pray for punitive damages, without limits against Defendant Shields in her individual capacity.

## COUNT TWO

### DEPRIVATION OF REPUTATIONAL LIBERTY
### Reputational Injury – Stigma Plus against All Defendants

233. Plaintiffs restate paragraphs 1-232, as if fully restated here.

234. Defendants Howard, Shields, and Bottoms embarked upon a vitriolic public campaign designed to damage the personal reputations of the Plaintiffs and deprive Plaintiffs of property rights to which they are legally entitled in violation of the Fourteenth Amendment to the United States Constitution.

235. Each having achieved the status of a "non-probationary employee" and employee in the "classified service" pursuant to City of Atlanta Municipal code 114-84(d), 114-502, 114-516, 114-517, 114-518, 114-528(a), and 114-546 Plaintiffs had a legally protected property right in their employment and could only be terminated or disciplined for cause.

236. Defendants Howard, Shields, and Bottoms arbitrarily and illegally deprived Plaintiffs of their property rights and undertook all of the unlawful

conduct giving rise to Plaintiffs' claims while acting under color of State and local law.

237. Defendants Howard, Shields, and Bottoms were deliberately indifferent to Plaintiffs' rights.

238. Plaintiffs have suffered damage to reputation, humiliation, embarrassment, mental and emotional anguish and distress and violation of right to free speech as protected under the Constitution as well as other compensatory damages, in an amount to be determined by a jury and the Court.

239. Plaintiffs have been irreparably harmed by the Defendants' unlawful, retaliatory and defamatory actions.

240. The statements made by Defendant Bottoms at the May 31, 2020 press conference and in speaking engagements following the press conference, regarding Plaintiffs, deprived Plaintiffs of their reputational liberty rights as protected by the due process clause of the Fifth and Fourteenth Amendment to the United States Constitution.

241. The statements made by Defendant Howard at the June 2, 2020 press conference and in speaking engagements following the press conference, regarding Plaintiffs, deprived Plaintiffs of their reputational liberty rights as

protected by the due process clause of the Fifth and Fourteenth Amendment to the United States Constitution.

242. The statements made by Defendant Shields at the May 31, 2020 press conference deprived Plaintiffs of their reputational liberty rights as protected by the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution.

243. Statements made publicly and to the media by Defendants Howard, Shields, and Bottoms were neither required nor necessary to fulfill any official function of their office and were solely done to intentionally deprive Plaintiffs of their reputational liberty.  Such statements included but are not limited to:

   a.  reports to the Georgia POST council of the termination of Plaintiffs for cause which placed their professional peace officer certificates in jeopardy; and,

   b.  report to the Georgia Department of Labor of Plaintiffs' termination for cause which denied them state unemployment benefits.

244. Defendants Howard, Shields, and Bottoms were aware that their actions would lead to the immediate suspension and or investigation of Plaintiffs' certifications as Peace Officers by the Georgia Peace Officer Standards and

Training Council (POST) thereby having a negative effect on Plaintiffs' professional reputations and state licensure.

245. The Plaintiffs pray for compensatory and punitive damages, attorneys' fees, expert fees, costs, per se damages, and pre-judgement and post-judgement interest against Defendants Howard, Shields, and Bottoms.

## COUNT THREE

### State Law Defamation Claims against All Defendants

246. Plaintiffs restate paragraphs 1-245, as if fully restated here.

247. O.C.G.A. § 51-5-1 details the common law defamation per se tort.

248. As noted, Defendants Shields and Bottoms made televised public statements regarding Plaintiffs on May 31, 2020.

249. Defendant Bottoms made additional public statements regarding Plaintiffs on June 1, 2020 and thereafter.

250. These statements imputed to Plaintiffs crimes punishable by law and made such charges that reference their trade and profession.

251. These statements were defamatory because they exposed Plaintiffs to public scorn, hatred and contempt, thereby discouraging others in the community from having a good opinion of, or associating with, Plaintiffs.

252. In making these statements, Defendants Howard, Shields, and Bottoms knowingly made the aforementioned false and defamatory statements with actual malice or did so with reckless and/or intentional disregard for the truth.

253. Defendants Howard, Shields, and Bottoms published these statements to countless people as a result of televised press conferences. The aforementioned persons reasonably understood these publications to be defamatory.

254. Defendants Howard, Shields, and Bottoms acted with an intent to harm Plaintiffs when these statements were published.

255. As a direct and proximate result of the false and defamatory statements published by Defendants Howard, Shields, and Bottoms, the character and reputation of Plaintiffs were harmed, their standing and reputation in their profession and in the community were impaired, and they suffered mental anguish and personal humiliation.

256. As a direct and proximate result of the false and defamatory statements published by Defendants Howard, Shields, and Bottoms Plaintiffs were terminated and falsely charged and arrested, thereby causing them to suffer significant economic and non-economic losses.

257. Plaintiffs incorporate each of the above factual allegations as if fully restated here.

258. Defendant Kiesha Lance Bottoms intentionally, deliberately and maliciously, made false, defamatory and libelous statements about Plaintiffs.

259. Defendant Bottoms published each of these false, defamatory and damaging statements about Plaintiffs.

260. The publication of these false defamatory statements was designed to injure Plaintiffs in their personal reputation and professional trade. As such, these statements were damaging per se.

261. Plaintiffs show that the defamatory actions herein are part of a series of actions and may not reflect the entirety of the false, malicious, slanderous and libelous statements Defendant Bottoms has made against the Plaintiffs.

262. To the extent Defendant Bottoms verbalized these false, defamatory and damaging statements about the Plaintiffs, Defendant Bottoms is liable for slandering Plaintiffs.

263. Said statements were made in a manner that exceeded any requirements or duties necessary to fulfill her obligations as Mayor.

264. Said statements were gratuitous and served no legal purpose that can be construed as consistent with the obligations of Defendant Bottoms' elected office.

265. Defendant Bottoms is liable for defaming Plaintiffs.

266. Defendant Bottoms is liable for publicly casting Plaintiffs in a false and negative light.

267. Defendant Bottoms is liable for committing acts of slander against Plaintiffs.

268. Defendant Bottoms was offered the opportunity to issue a retraction of the aforementioned defamatory statements about Plaintiffs; however, to date she has failed and refused to do so.

269. Defendant Bottoms has been stubbornly litigious and is liable for attorney's fees.

270. The Plaintiffs pray for compensatory and uncapped punitive damages, attorneys' fees, expert fees, costs, and per se damages against Defendant Bottoms.

271. Defendant Shields intentionally, deliberately and maliciously, made false, defamatory and libelous statements about Plaintiffs.

272. Defendant Shields published each of these false, defamatory and damaging statements about Plaintiffs.

273. The publication of these false defamatory statements was designed to injure Plaintiffs in their personal reputation and professional trade. As such, these statements were damaging per se.

274. Plaintiffs show that the defamatory actions herein are part of a series of actions and may not reflect the entirety of the false, malicious, slanderous and libelous statements Defendant Shields has made against the Plaintiffs.

275. To the extent Defendant Shields verbalized these false, defamatory and damaging statements about the Plaintiffs, Defendant Bottoms is liable for slandering Plaintiffs.

276. Defendant Shields is liable for defaming Plaintiffs.

277. Defendant Shields is liable for publicly casting Plaintiffs in a false and negative light.

278. Defendant Shields is liable for committing acts of slander against Plaintiffs.

279. Said statements were made in a manner that exceeded any requirements or duties necessary to fulfill her obligations as chief of police.

280. Said statements were gratuitous and served no legal purpose that can be construed as consistent with the obligations of Defendant Shields' elected office.

281. Defendant Shields was offered the opportunity to issue a retraction of the aforementioned defamatory statements about Plaintiffs; however, to date she has failed and refused to do so.

282. Defendant Shields has been stubbornly litigious and is liable for attorney's fees.

283. The Plaintiffs pray for compensatory and uncapped punitive damages, attorneys' fees, expert fees, costs, and per se damages against Defendant Shields.

284. Defendant Howard intentionally, deliberately and maliciously, made false, defamatory and libelous statements about Plaintiffs.

285. Defendant Howard published each of these false, defamatory and damaging statements about Plaintiffs.

286. The publication of these false defamatory statements was designed to injure Plaintiffs in their personal reputation and professional trade. As such, these statements were damaging per se.

287. Plaintiffs show that the defamatory actions herein are part of a series of actions and may not reflect the entirety of the false, malicious, slanderous and libelous statements Defendant Howard has made against the Plaintiffs.

288. To the extent Defendant Howard verbalized these false, defamatory and damaging statements about the Plaintiffs, Defendant Howard is liable for slandering Plaintiffs.

289. Defendant Howard is liable for defaming Plaintiffs.

290. Defendant Howard is liable for publicly casting Plaintiffs in a false and negative light.

291. Defendant Howard is liable for committing acts of slander against Plaintiffs.

292. Said statements were made in a manner that exceeded any requirements or duties necessary to fulfill his obligations as District Attorney.

293. Said statements were not made in the furtherance of a criminal case or in the investigation of a criminal case.

294. Said statements were gratuitous and served no legal purpose that can be construed as consistent with the obligations of Defendant Howard's elected office.

295. Defendant Howard was offered the opportunity to issue a retraction of the aforementioned defamatory statements about Plaintiffs; however, to date he has failed and refused to do so.

296. Defendant Howard has been stubbornly litigious and is liable for attorney's fees.

297. The Plaintiffs pray for compensatory and uncapped punitive damages, attorneys' fees, expert fees, costs, and per se damages against Defendant Howard.

## **COUNT FOUR**

### **CIVIL CONSPIRACY**
### **AGAINST DEFENDANTS SHIELDS AND BOTTOMS**

298. Plaintiffs restate paragraphs 1-297, as if fully restated here.

299. Defendant Shields and Bottoms conspired, in concert with each other and others not yet known to Plaintiffs, to deprive them of their due process rights and other rights due them pursuant to the duly passed ordinances of the City of Atlanta as well as their rights under the United States and Georgia Constitutions to further their careers.

300. Defendants Shields and Bottoms have been stubbornly litigious and are liable for attorney's fees.

301. The Plaintiffs pray for compensatory and uncapped punitive damages, attorneys' fees, expert fees, costs, per se damages, and pre-judgement and post- judgement interest against Defendants Shields and Bottoms.

## COUNT FIVE

### VIOLATION OF RIGHTS SECURED UNDER GEORGIA CONSTITUTION, ARTICLE I, § 1, ¶ II AGAINST DEFENDANTS SHIELDS AND BOTTOMS

302. Plaintiffs restate paragraphs 1-301, as if fully restated here.

303. The Georgia Constitution protects the equal protection rights of its citizens, stating "No person shall be denied the equal protection of the laws."

304. This provision requires that "the State treat similarly situated individuals in a similar manner," _Bell v. Austin_, 278 Ga. 844, 846 (2005).  Further, Georgia courts have consistently treated individuals who perform the same work as being similarly situated in regard to equal protection.[8]

305. In this case, the ranks of the Atlanta Police Department are replete with officers who engaged in criminal conduct and faced similar allegations as Plaintiffs but who were not terminated from their employment, let alone terminated without proper procedure.

---

[8] _See Jackson et a. v. Raffensperger_, 308 Ga. 736 (2020).

306. Defendants Shields and Bottoms undertook a deliberate course of action to knowingly violate Plaintiffs' due process rights.

## COUNT SIX

### NEGLIGENCE
### AGAINST DEFENDANTS SHIELDS AND BOTTOMS

307. Plaintiffs restate paragraphs 1-306, as if fully restated here.

308. O.C.G.A. § 51-1-2 details the common law ordinary diligence, ordinary negligence, and Common Law Negligence.

309. Defendant Bottoms and Defendant Shields had a legal duty to Plaintiffs to follow the Atlanta City Ordinances and the policies, procedures, practices, and customs of the Atlanta Police Department in regard to Plaintiffs as well as follow standard law enforcement procedures for the investigation of use of force complaints, including but not limited to those set out in the CALEA standards.[9]

---

[9] The Commission on Accreditation for Law Enforcement Agencies (CALEA), sets forth certain standards for law enforcement agencies seeking CALEA certification.  The Atlanta Police Department is a CALEA certified agency, and as such, is expected to meet the standards set out by the commission.

310. Failure to follow the ordinances, policies, practices, procedures, and customs of the City of Atlanta was a breach of a ministerial duty, proximately causing harm to Plaintiffs.

## COUNT SEVEN

### RATIFICATION
### AGAINST DEFENDANT BOTTOMS

311. Plaintiffs restate paragraphs 1-310, as if fully restated here.

312. O.C.G.A. § 51-1-12 details the liability for ratifying a tort.

313. Through her public comments, it is clear that Defendant Bottoms ratified the tortious actions of Defendant Shields, for her own benefit specifically including but not limited to political gain and advancement of her career.

314. Defendant Bottoms' actions caused damages to Plaintiffs including but not limited to termination, loss of income, and loss of and damage to their professional reputations, as well as mental and emotional anguish.

## COUNT EIGHT

### FALSE ARREST UNDER GEORGIA LAW

315. Plaintiffs restate paragraphs 1-314, as if fully restated here.

316. At all times relevant, Defendants Howard and Thomas were working within the course and scope of their employment with Fulton County

Georgia as investigators in all respects concerning their procurement of arrest warrants against Plaintiffs.

317. Defendants Howard and Thomas lacked probable cause to believe that Plaintiffs had violated any criminal laws of the State of Georgia when they secured arrest warrants for them on June 2, 2020.

318. Defendants Howard and Thomas are liable to Plaintiffs for False Arrest, O.C.G.A. §51-7-1, *et seq.*

319. Defendants Howard and Thomas acted with actual malice, as defined in O.C.G.A. §51-7-2 in securing arrest warrants against Plaintiffs.

320. Defendants Howard and Thomas violated clearly established law, as no reasonable officer could have believed that it was lawful to arrest Plaintiffs under the facts set forth herein.

321. Defendants Howard and Thomas knew and/or should have known on June 2, 2020 that, "the circumstances are such as to satisfy a reasonable man that the accuser had no ground for proceeding but his desire to injure the accused" as set out in O.C.G.A. §51-7-3.

322. Plaintiffs suffered economic and non-economic damages as a proximate result of the actions of Defendants Howard and Thomas.

## COUNT NINE

### MALICIOUS PROSECUTION UNDER GEORGIA AND FEDERAL LAW

323. Plaintiffs restate paragraphs 1-322, as if fully restated here.

324. Defendants Howard's and Thomas' acts, as described herein, constituted malicious prosecution, for which an action lies, pursuant to O.C.G.A. §51-7-40, *et seq.*, the Georgia Constitution, and the Constitution of the United States.

325. Defendants Howard's and Thomas' acts as set out herein constitute "criminal prosecution which is carried on maliciously and without any probable cause and which causes damage to the person prosecuted…" as set out in O.C.G.A. §51-7-40, *et seq.*

326. Defendant Howard and Thomas accomplished the unlawful objective of maliciously prosecuting Plaintiffs by unlawful means.

327. Defendants Howard and Thomas violated clearly established law, as no reasonable officer could have believed that it was lawful to prosecute Plaintiffs under the facts set forth herein.

328. Defendants Howard and Thomas maliciously prosecuted Plaintiffs under color of legal process.

329. Plaintiffs were arrested via warrants instigated without probable cause at the direction of Defendants Howard and Thomas.

330. Defendants Howard and Thomas pursued prosecution against Plaintiffs which has terminated in Plaintiffs' favor.

331. In all the foregoing, Defendants Howard and Thomas acted with reckless and callous indifference to Plaintiffs' constitutionally protected rights.

332. As a direct and proximate result of Defendant Howard's and Thomas' conduct, Plaintiffs sustained economic and non-economic losses and damages, for which Defendants are liable.

## COUNT TEN

## NEGLIGENT TRAINING

333. Plaintiffs restate paragraphs 1-332, as if fully restated here.

334. Defendant Howard, as the direct supervisor of Defendant Thomas, was, at all times relevant to this cause of action, responsible to provide training to Defendant Thomas and ensure that he was properly trained to perform his job in a non-negligent manner.

335. Defendant Howard failed to properly train Defendant Thomas.

336. Defendant Howard's failure to train Defendant Thomas was the direct and

proximate cause of the injuries suffered by Plaintiffs.

## COUNT ELEVEN

### UNLAWFUL SEIZURE IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND THE GEORGIA CONSTITUTION

337. Plaintiffs restate paragraphs 1-336, as if fully restated here.

338. Defendants Howard's and Thomas' actions in securing arrest warrants for

Plaintiffs without sufficient probable cause constitute unreasonable seizures

in violation of Plaintiffs' federal and state constitutional rights.

339. Defendants Howard and Thomas violated clearly established law, as no

reasonable officer could have believed that it was lawful to prosecute

Plaintiffs under the facts set forth herein.

340. The actions of Defendant Howard and Thomas were the proximate cause

of the harm suffered by Plaintiffs.

## COUNT TWELVE

### CIVIL CONSPIRACY AS TO DEFENDANTS HOWARD AND THOMAS

341. Plaintiffs restate paragraphs 1-340, as if fully restated here.

342. Defendants Howard and Thomas conspired, in concert with each other and

others not yet known to Plaintiffs, to deprive Plaintiffs of their constitutional

rights under the United States and Georgia Constitutions to be free from unreasonable seizures.

343. Defendants Howard and Thomas knew or should have known their conduct arbitrarily deprived Plaintiffs of life, liberty, or property guaranteed them by the Constitutions and laws of the United States and the State of Georgia.

344. Defendants Howard and Thomas have been stubbornly litigious and are liable for attorney's fees.

345. The Plaintiffs pray for compensatory and uncapped punitive damages, attorneys' fees, expert fees, costs, per se damages, and pre-judgement and post- judgement interest against Defendants Howard and Thomas in their individual capacities.

## COUNT THIRTEEN

### RATIFICATION AGAINST DEFENDANT HOWARD

346. Plaintiffs restate paragraphs 1-345, as if fully restated here.

347. O.C.G.A. § 51-1-12 details liability for ratifying a tort.

348. Through his public comments, it is clear that Defendant Howard ratified the tortious actions of Defendant Thomas, for his own benefit specifically including but not limited to political gain and advancement of his career.

349. Defendant Howard ratified the tortious actions of Defendant Thomas by failing to properly investigate or pursue any effort to examine the evidence available to him in an effort to confirm that the charges against Plaintiffs were based upon probable cause.

350. Defendant Howard had full knowledge of all material facts that the arrest of Plaintiffs was based on an insufficient investigation.

351. Defendant Howard remained willfully ignorant or purposefully did not seek further information before ratifying the unlawful arrest of Plaintiffs despite that true and accurate information was readily ascertainable upon diligent effort to investigate the events leading to Plaintiffs' unlawful arrests.

352. The facts contained herein demonstrate that Defendant Howard's conduct would cause inequity to others if Defendant Howard were allowed to assert that he has not ratified the unauthorized acts of Defendant Thomas.

353. Defendant Howard's actions caused damages to Plaintiffs including but not limited to loss of income, and loss of and damage to their professional reputations, as well as mental and emotional anguish.

## COUNT FOURTEEN

### CONSPIRACY UNDER 42 U.S.C. § 1983 RESULTING IN VIOLATION OF DUE PROCESS AGAINST DEFENDANT HOWARD AND THOMAS

354. Plaintiffs restate paragraphs 1-353, as if fully restated here.

355. Plaintiffs were deprived of the liberty guaranteed them by the Constitutions and laws of the United States and State of Georgia without notice and opportunity for hearing appropriate to the nature of their case by Defendants acting in concert under the color of law.

356. Defendants knew or should have known that their actions arbitrarily deprived Plaintiffs of life, liberty, or property.

## **PRAYER FOR RELIEF**

Plaintiffs respectfully request the following relief:

A. That all Defendants be served with a copy of the Summons and Complaint in this case;

B. That all Defendants be required to timely answer the allegations and averments contained in the Complaint;

C. Declaratory judgement that Defendants violated Plaintiffs' rights;

D. Compensatory damages against Defendants in an amount in excess of seventy-five thousand dollars ($75,000) to be determined at trial by jury upon all claims and matters for which a jury can be empaneled;

E. For an award of reasonable attorney's fees and costs expended pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1988, 28 U.S.C. §1920; and,

O.C.G.A. §13-6-11;

F.  Punitive damages against Defendants Bottoms, Shields, and Howard as to all

applicable Counts; and

G.  Award such other and further relief as this court deems just and proper.

This 8th day of June, 2022.

By:
*/s/Lance J. LoRusso*
Lance J. LoRusso
Georgia Bar No. 458023

*s/ Ken Davis*
Ken Davis
Georgia Bar No. 705045
*Counsels for Plaintiffs*

LoRusso Law Firm, P.C.
1827 Powers Ferry Road, S.E.
Atlanta, Georgia 30339
P: 770-644-2738 | F: 770-644-2379
lance@lorussolawfirm.com

THIS DOCUMENT APPEARS IN TIMES NEW ROMAN 14 PT FONT.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| MARK GARDNER, LONNIE HOOD, | * | |
| and IVORY STREETER | * | |
| | * | |
|     Plaintiffs, | * | |
| | * | Civil Action File No. |
| v. | * | 1:21-cv-02798-SEG |
| | * | |
| KEISHA LANCE BOTTOMS, in her | * | JURY TRIAL DEMANDED |
| Individual capacity, | * | |
| PAUL HOWARD, in his | * | |
| Individual capacity & Official capacity, | * | |
| GREG L. THOMAS, in his | * | |
| Individual & Official capacity, | * | |
| ERIKA SHIELDS, in her | * | |
| Individual capacity, and FULTON | * | |
| COUNTY GOVERNMENT | * | |
| | * | |
|     Defendants. | * | |

<u>CERTIFICATE OF SERVICE</u>

I certify that I electronically filed the within and foregoing with the Clerk of

Court using the CM/ECF system.

This 8th day of June, 2022.

*s/ Lance J. LoRusso*
Lance J. LoRusso, Esq
Georgia Bar No. 458023

*s/ Ken Davis*
Ken Davis, Esq.
Georgia Bar No. 705045

Attorney for Plaintiffs