# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **MARK GARDNER, LONNIE HOOD, and IVORY STREETER,** | § § § | |
| *Plaintiffs*, | § § | **CIVIL ACTION NO.** |
| v. | § § | **1:21-cv-02798-JPB** |
| **KEISHA LANCE BOTTOMS, in her Individual capacity, PAUL HOWARD, in his Individual capacity and Official capacity, GREG THOMAS, in his Individual and Official Capacity, ERIKA SHIELDS, in her Individual capacity, and FULTON COUNTY GOVERNMENT,** | § § § § § § § § § § § § | |
| *Defendants*. | § | |

## DEFENDANT PAUL HOWARD'S MOTION TO DISMISS AND BRIEF IN SUPPORT OF THE MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

COMES NOW, Defendant Paul Howard with this his Motion to Dismiss and Brief in Support of his Motion to Dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted and showing this Honorable Court as follows:

## ISSUES PRESENTED

Plaintiffs bring these claims against Defendant Paul Howard: (1) a procedural due process claim for the deprivation of reputational liberty, (2) defamation, (3) false arrest, (4) malicious prosecution, (5) negligent training,

(6) unlawful seizure in violation of the Fourth Amendment, (7) civil conspiracy between Defendants Howard and Thomas, (8) ratification, and (9) conspiracy under § 1983 to violate due process. Plaintiffs Amended Complaint is also a shotgun pleading which should be dismissed and the defamation claims are untimely under the statute of limitations. The issues presented to the Court are these:

1. The Plaintiffs, Atlanta Police Officers, allege former DA Paul Howard made defamatory statements about a use of force incident. A deprivation of reputational liberty claim exists where the employer of a government official makes a false statement about him without a hearing to clear his name. Have the Plaintiffs stated a claim where Howard was not their employer, and where each was granted a hearing to clear his name before the Civil Service Board?

2. Plaintiffs bring claims for false arrest, unlawful seizure, malicious prosecution, and conspiracy, for Howard's decision to get an arrest warrant and prosecute them. Under Georgia and federal law, a prosecutor has absolute immunity for the initiation and pursuit of a criminal prosecution. Have Plaintiffs stated a claim where Howard's decision to secure an arrest warrant and pursue a criminal prosecution are at the heart of the prosecutorial function?

3. Plaintiffs have brought conspiracy claims against Howard and an investigator at the DA's Office. Under Eleventh Circuit precedent, two agents of the same government agency cannot conspire together. Since Howard and his investigator are both agents of the Fulton Judicial Circuit District Attorney's Office, can they form a conspiracy?

4. Plaintiffs bring state-law claims against Howard for defamation, false arrest, malicious prosecution, negligent training, unlawful seizure, civil conspiracy, and ratification. Under the Georgia Tort Claims Act— the exclusive remedy for state-law claims against state officials— an official has immunity for any claims connected to their duties. Where all the state-law claims allege that Howard acted tortiously while carrying out his duties, is Howard immune under the GTCA?

5. Plaintiffs bring a defamation claim for statements made by Howard during violent civil unrest, riots, and mass protests about perceived police misconduct. Government officials have qualified immunity for

acts that do not violate established law. Where there is no case law similar to the factual situation faced by Howard when he addressed a city in chaos about his decision to prosecute police for excessive force, does Howard have immunity for his statements?

6. Plaintiffs have alleged defamation for statements they contend were Howard's "personal opinion." Under Georgia law, defamation will not lie for an expression of opinion. If Howard's statements were only his opinion, have Plaintiffs stated a claim?

7. Plaintiffs allege that Howard made defamatory statements on June 2, 2020, and on June 30, 2020. In Georgia, the statute of limitations for defamation is one year. Where Plaintiffs brought a defamation claim against Howard on July 13, 2021, more than one year after the alleged defamation occurred, is the claim barred as untimely?

## **FACTS AS ALLEGED IN PLAINTIFFS' AMENDED COMPLAINT**

Plaintiffs originally brought this suit on July 13, 2021. [Doc. 1]. The Court gave leave for Plaintiffs to file an Amended Complaint. [Doc. 63]. The relevant allegations against Defendant Howard are the following: On May 30, 2020, the mayor of Atlanta, Keisha Lance Bottoms, established a 9:00 PM curfew in Atlanta due to the large-scale protests and civil unrest that was occurring within the city. [*Id.* ¶ 17-18]. That evening in Atlanta, the unrest grew violent, dangerous, and uncontrolled. [*Id.* ¶ 19-23]. During this time, Atlanta's elected officials, including District Attorney Paul Howard, were presented with a uniquely dangerous and volatile situation.

At around 9:45 PM on May 30th, an incident occurred between Plaintiffs and two young adults that is detailed in the Amended Complaint. [*Id.* ¶¶ 26-44].

All three Plaintiffs were employees of the City of Atlanta. [*Id.* ¶ 59]. A day later, Plaintiffs Gardner and Streeter were served with disciplinary notices for adverse employment actions and subsequently terminated that day. [*Id.* ¶¶ 49-51]. Plaintiffs allege that the procedure used by the City of Atlanta to terminate them violated several policies, rules, and regulations. [*Id.* ¶¶ 50-65].

On June 2, 2020, Defendant Paul Howard, then district attorney for the Atlanta Judicial Circuit, held a press conference concerning the incident and the dangerous civil unrest that had swept through Atlanta. [*Id.* ¶ 88]. Howard stated that he had instructed his investigator to obtain arrest warrants for the officers. [*Id.* ¶ 94]. Howard described the events as "terrifying" and described the actions of the Plaintiffs as "vicious." [*Id.* ¶ 96]. Howard explained his reasons for seeking warrants for the Plaintiffs' arrests and announced the charges he was pursuing. [*Id.* ¶ 98]. As Plaintiffs acknowledge, Howard was merely stating his ***"personal opinion"*** in the press conference. [*Id.* ¶ 97].

On June 30, 2020, on the "expeditiously Podcast" titled "Politics as usual with Paul Howard and Christian Wise Smith," Howard discussed why the City of Atlanta fired the Plaintiffs and why he chose to charge the Plaintiffs. [*Id.* ¶¶ 105-106]. Plaintiffs allege that Howard's comments were made for political gain, were made with actual malice, and that Howard made several false statements, including that there was no sign that Young or Pilgrim were

armed, that the Plaintiffs violated City of Atlanta policies and procedures, that Young and Pilgrim were children, and that both were extremely innocent. [*Id.* ¶¶ 108-113].

Plaintiffs also allege that Howard did not benefit from an official investigation, that the investigation was inadequate, and that Howard took steps outside the norm when he instructed an investigator in his office to obtain an arrest warrant. Plaintiffs correctly allege that a warrant was issued by a Superior Court of Fulton County Judge. [*Id.* ¶¶ 128-130; 145-148; 177-182].

Each of the Plaintiffs appealed their termination to the Civil Service Board and were given a hearing. [*Id.* ¶¶ 126, 143, 186-87]. Each Plaintiff was reinstated to their position with the Atlanta Police Department. [*Id.*].

## ARGUMENT AND CITATION TO AUTHORITY

## I.   THE AMENDED COMPLAINT IS A SHOTGUN PLEADING.

"Courts in the Eleventh Circuit have little tolerance for shotgun pleadings." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018). Though shotgun pleadings vary in approach, the Eleventh Circuit has distilled those elements most often seen to four distinct factors: (1) multiple counts that each adopt the allegations of the preceding counts; (2) conclusory, vague and immaterial facts that do not clearly connect to a particular cause of action; (3) failing to separate each cause of action into distinct counts; or (4) combining

multiple claims against multiple defendants without specifying which defendant is responsible for which act." *McDonough v. City of Homestead*, 771 Fed. App'x 952, 955 (11th Cir. 2019). Shotgun complaints waste judicial resources at the district and appellate levels, needlessly expand discovery, cause unwarranted expense to litigants, and harm the public's faith in the courts. *See e.g., Arrington v. Green*, 757 Fed. App'x 796, 797 (11th Cir. 2018); *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356-57 (11th Cir. 2018).

The Amended Complaint contains 214 allegations, each of which is incorporated into each count against Howard. Most of those allegations are not concerned with Howard or are only tangentially connected to him. The result is that Howard is left to guess which allegations Plaintiffs believe are material to their claims. The 214 vague and immaterial "facts" that each fully adopted in the counts against Howard, illustrate the first and second examples from *McDonough*. Courts typically permit a plaintiff to amend their complaint prior to dismissing it as a shotgun pleading. But Plaintiffs have already had an opportunity to amend their Complaint and still filed a shotgun complaint. As the Amended Complaint is impermissible under Eleventh Circuit precedent, the claims against Howard should be dismissed.

## II.   PLAINTIFFS HAVE FAILED TO STATE A CLAIM

### A. MOTION TO DISMISS STANDARD

In a motion to dismiss under FRCP 12(b)(6), the Court must accept the complaint's factual allegations as true. *Hardy v. Regions Mort., Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006). To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly* at 555. "[U]nwarranted deductions of fact in a complaint are not admitted as true for the purposes of testing the sufficiency of [the plaintiff's] allegations". *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).

*Iqbal* states that, while a court must accept all factual allegations in a complaint as true, it need not accept legal conclusions as true. "Determining whether a complaint states a plausible claim for relief will...be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, it has not been shown that the pleader is entitled to relief. *Iqbal* at 679.

The Eleventh Circuit has stated that a complaint must "contain either direct or inferential allegations respecting all material elements necessary to sustain a recovery under some viable legal theory." *Randall v. Scott*, 610 F.3d 701, 716 n. 2 (11th Cir. 2010). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal* at 678.

## B. PLAINTIFF'S CLAIM FOR THE DEPRIVATION OF REPUTATIONAL LIBERTY DOES NOT SATISFY THE ELEVENTH CIRCUIT'S FACTORS.

To establish a procedural due process claim, a plaintiff must show the deprivation of a liberty or property interest protected by the due process clause. *Board of Regents v. Roth*, 408 U.S. 564, 92 S. Ct. 2701 (1972). Allegations of injury to reputation alone do not support a § 1983 claim for violating due process. *Paul v. Davis*, 424 U.S. 693, 701, 96 S. Ct. 1155 (1976) (reputation alone does not implicate any "liberty" or "property" interest sufficient to invoke the procedural protections of the due process clause). The defamation must accompany a constitutionally recognized injury to due process. This rule is often labeled the "stigma-plus" standard. *Cypress Ins. Co. v. Clark*, 144 F. 3d 1435, 1436 (11th Cir. 1998). The stigma-plus standard requires a plaintiff to show that the government official's conduct deprived the plaintiff of a previously recognized property or liberty interest apart from damaging the plaintiff's reputation. *Paul* at 712. The rule is designed to

prevent the due process clause from becoming an all-purpose constitutionalizing of state tort law. *Id*. at 701. Plaintiffs point to their termination as the "plus" of the stigma-plus test. [Doc. 63 ¶ 244-245]. Although the Amended Complaint now adds that the "professional reputation" was damaged, this— standing alone— is not a due process violation and cannot support a claim in the absence of a due process injury. Thus, the termination of employment is the only recognized due process injury that the Plaintiffs have alleged that a reputational injury can attach to under stigma-plus. When reputational damage is sustained in connection with a termination, it may give rise to a procedural due process claim for deprivation of liberty. *Campbell v. Pierce Cty. Ga.*, 741 F. 2d 1342, 1344 (11th Cir. 1984).

The Eleventh Circuit has developed a six-factor test to determine whether a plaintiff has a due process claim for the deprivation of reputational liberty. *Warren v. Crawford*, 927 F. 2d 559, 565 (11th Cir. 1991). To recover, a plaintiff must show:

1) a false statement;

2) of a stigmatizing nature;

3) attending a governmental employee's discharge;

4) was made public;

5) by the governmental employer;

6) without a meaningful opportunity for an employee name clearing

hearing."

*Id.*

The hearing can be held either before or after the termination or publication of the defamation. *Harrison v. Wille*, 132 F. 3d 679, 683 n. 9 (11th Cir. 1998). Because Plaintiffs do not meet the fifth and sixth elements of this test against Howard the claims for deprivation of reputational liberty fail.

Howard is not the Plaintiffs' governmental employer. All the "plaintiffs were non-probationary employees of the City of Atlanta". [Doc. 63, Am. Cmpl. at ¶ 59]. And Howard is not an employee of the City of Atlanta, he was the elected District Attorney for the Fulton Judicial Circuit. [Doc. 63, ¶ 13][1]. Howard's lawful duties did not include the exercise of any authority over the Plaintiffs' employment status as police officers. *See generally*, O.C.G.A. § 15-18-6. Under the stigma-plus test, the defamatory statements must be made "by the governmental employer". *Warren* at 565 (emphasis supplied). Since Howard was not the Plaintiffs' employer, the fifth factor is not satisfied and the claim for the deprivation of reputational liberty fails versus Howard.

Even if Howard could be considered the Plaintiffs' governmental employer, which he cannot, Plaintiffs would still fail to state a claim because they were

---

[1] Plaintiffs sometimes refer to Howard as the elected DA for the Fulton Judicial Circuit, [Doc. 63, ¶ 93], and at other times for the Atlanta Judicial Circuit. [*Id.* ¶¶ 13, 31, 204].

given an opportunity for a name clearing hearing.  It is "only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under § 1983 arise." *McKinney v. Pete*, 20 F. 3d 1550, 1557 (11th Cir. 1994).  It is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives right to a federal procedural due process claim.  *Id*.  The Eleventh Circuit recognized that the state must have the chance to "remedy the procedural failings of its subdivisions and agencies in the appropriate fora – agencies, review boards, and state courts" before being subjected to a claim alleging a procedural due process violation.  This hearing can be held either before or after the termination or the publication of the defamation.  *Harrison* at 683, n. 9.

All three Plaintiffs had a name-clearing hearing in front of the Civil Service Board.  [Doc. 1, ¶¶ 126, 143, 196].  And all three were reinstated by the Civil Service Board to their positions with the Atlanta Police Department.  *Id*.  And Plaintiffs could have filed a civil suit in state court to reclaim their jobs, which was another meaningful opportunity for the Plaintiff's to clear their names.  The Civil Service Board hearings and ability to litigate the issue are each meaningful opportunities for a name-clearing hearing; opportunities which the Plaintiffs have fully benefited from.  Plaintiffs' claim for the deprivation of reputational liberty does not satisfy *Crawford's* sixth element.

In short, Howard was not the Plaintiffs' governmental employer and all three Plaintiffs have been given a meaningful opportunity for a name-clearing hearing. Plaintiffs fail to state a claim for deprivation of reputational liberty against Howard and the claim should be dismissed.

## C. HOWARD HAS PROSECUTORIAL IMMUNITY FROM FEDERAL CLAIMS RELATED TO PLAINTIFFS' CRIMINAL CHARGES

Plaintiffs have asserted several claims that fall under Howard's absolute prosecutorial immunity. Plaintiff has alleged federal claims for false arrest, [Doc.63, Count VII ¶¶ 314-321], malicious prosecution, [*Id.*, Count IX ¶¶ 322-331, unlawful seizure, [Count XI ¶¶ 336-339], civil conspiracy between Howard and DA Investigator Thomas, [*Id.*, Count XII ¶¶ 340-344], and conspiracy under § 1983 for violating due process against Howard and DA Investigator Thomas, [*Id.*, Count XIV ¶¶ 353-355].

The United States Supreme Court has held that prosecutorial immunity applies to claims under 42 U.S.C. § 1983, malicious prosecution, false arrest, unlawful seizure, conspiracy (given that the allegations concern the initiation and pursuit of a prosecution), and state law defamation claims. *See, Imbler v. Pachtman*, 424 U.S. 409, 420, 439, 441, n. 7, n. 23 (1976). "Absolute prosecutorial immunity encompasses all acts taken by a prosecutor in performing his role as a government advocate, including 'the initiation and pursuit of criminal prosecution…" *Rivera v. Leal*, 359 F.3d 1350, 1353 (11th Cir. 2004).

The Supreme Court uses the "functional approach" to determine whether a prosecutor is entitled to absolute immunity. *Id*. This approach looks to "the nature of the function performed," regardless of title. *Id.* One of the quintessential prosecutorial functions is the "initiation and pursuit of criminal prosecutions," *Id.,* and "other actions that are intimately associated with the judicial phase of the criminal process." *Hoffman v. Off. of St. Att'y*, 793 Fed. Appx. 945, 950 (11th Cir. 2019). Courts have applied absolute immunity in many situations when prosecutorial misconduct was alleged: "filing information without investigation, filing charges without jurisdiction, filing a baseless detainer, offering perjured testimony, suppressing exculpatory evidence, and threatening further criminal prosecutions," to name a few. *Id.*

Under the Georgia Constitution, "[d]istrict attorneys shall enjoy immunity from private suit for actions arising from the performance of their duties." Ga. Const. of 1983, Art. VI, Sec. VIII, Par. I (e). The test is identical to that used by federal courts. *McSmith v. Brown*, 317 Ga.App. 775, 776 (2012); *Robbins v. Lanier*, 198 Ga.App. 592, 593 (1991). Thus, Howard is just as immune under state law.

### i.   Claims for Malicious Prosecution and Unlawful Seizure Under the Fourth Amendment.

Plaintiffs' claims for false arrest and § 1983 claim for unlawful seizure (another term of art for false arrest) is an allegation of "detention without legal process." *Wallace v. Kato*, 549 U.S. 384, 389 (2007). When arrest is pursuant

to a form of legal process, such as a warrant issued by a court, a cause for false arrest or unlawful seizure is not proper. Plaintiffs' claim for false arrest under state law and unlawful seizure under the Fourth Amendment alleges that Howard is liable for "securing an arrest warrant without sufficient probable cause." [Doc. 63, ¶¶ 316, 337]. As Plaintiffs concede in the Amended Complaint, the arrests were pursuant to an arrest warrant issued by a Fulton County Superior Court Judge. [*Id.* ¶ 99]. Since Plaintiffs were arrested under an arrest warrant—legal process—the false arrest and fourth amendment claims fail. *Wallace* at 390. Even if the claims were viable, they would still fail as both fall directly within a prosecutor's absolute immunity.

Malicious prosecution "remedies detentions accompanied, not by absence of legal process, but by wrongful institution of legal process." *Id.* Plaintiffs allege that Howard prosecuted "without probable cause," that he chose to secure warrants "after only watching video recordings of the incident," and that he overstepped because "it is common practice and custom for a District Attorney to either obtain or complete a thorough investigation and… prepare an indictment for presentation to a grand jury." [Doc. 63 ¶¶ 177-178, 328].

A prosecutor's decision whether to prosecute lies at the heart of the prosecutorial function. *Hart v. Hodges*, 587 F.3d 1288, 1295 (11th Cir. 2009). The Eleventh Circuit has repeatedly stated that a prosecutor "cannot be held liable for initiating and continuing prosecutions against the plaintiffs, even

assuming he lacked probable cause at the outset and pursued the prosecutions after receiving overwhelming exculpatory information." *Id.* Plaintiffs seek to hold Howard liable for actions he took in his role as government advocate: initiating and pursuing a prosecution. That Plaintiffs allege that he acted without probable cause and with malice does not dilute Howard's immunity. *Hart* at 1298; see also, *Jackson v. Capraun*, 534 Fed. Appx. 854, 859 (11th Cir. 2013) (prosecutor entitled to absolute immunity for initiating prosecution even if he did so with malicious intent). Plaintiff's claims for false arrest, unlawful seizure, and malicious prosecution are barred by prosecutorial immunity.

### ii.    Civil Conspiracy and Conspiracy under § 1983.

In Count XII, Plaintiffs claim that Howard conspired with an investigator at the DA's Office, Defendant Thomas, to deprive Plaintiffs of their right to be free from unreasonable search and seizure. [Doc. 63 ¶ 341]. Count XIV for conspiracy under § 1983, claims that Howard conspired with Thomas by depriving them of "notice and opportunity for hearing appropriate to the nature of their case…" [*Id.* ¶ 354]. It is unclear what notice and hearing the Plaintiffs were entitled to from Howard and Thomas; both claims, however, relate to the allegations that Howard pursued a prosecution without probable cause and without a thorough investigation. As explained below, a DA and an investigator at the DA's Office cannot conspire with each other under the

intracorporate conspiracy doctrine. But even if they could conspire, these claims would be barred under prosecutorial immunity." Indeed, "[i]t would be cold comfort for a prosecutor to know that he is absolutely immune from direct liability for actions taken as prosecutor, if those same actions could be used to prove him liable on a conspiracy theory involving conduct for which he was not immune." *Rowe v. Ft. Lauderdale*, 279 F.3d 1271, 1282 (11th Cir. 2002).

As stated in the prior section, Howard's decision to initiate and prosecute lies at the heart of the prosecutorial function. That Plaintiffs allege the decision to initiate a prosecution was a conspiracy does not vitiate a prosecutor's absolute immunity. *Elder v. Athens-Clarke Cty., Ga.*, 54 F.3d 694, 695 (11th Cir. 1995) (holding that the allegation that the prosecutor's actions "is part of a conspiracy does not in any manner dilute immunity."). Thus, Plaintiffs' conspiracy claims both fail because Howard has prosecutorial immunity.

### D. PLAINTIFFS' CONSPIRACY CLAIMS

### i.    The Conspiracy Claims Fail Under the Intracorporate Conspiracy Doctrine.

"Under the intracorporate conspiracy doctrine, a corporation's employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation." *Dickerson v. Alachua Cty. Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000). The Eleventh Circuit has held that the doctrine applies to governmental entities. *Dickerson* at 767-68; *Chambliss v. Foote*, 562

F.2d 1015 (5th Cir. 1977). "The reasoning behind the intracorporate conspiracy doctrine is that it is not possible for a single legal entity…to conspire with itself, just as it is not possible for an individual person to conspire with himself… [t]his doctrine has been applied not only to private corporations but also to public, government entities." *Dickerson* at 767; *Grider v. City of Auburn*, 618 F.3d 1240, 1261 (11th Cir. 2016).

Plaintiffs allege that Thomas, Howard's alleged co-conspirator, "was at all times relevant, an investigator with the Fulton County District Attorney's Office. [Doc. 63 ¶ 14]. Plaintiffs also allege that Howard was Thomas' "direct supervisor" at the DA's Office. [*Id.* ¶ 333]. Since both Howard and Thomas were agents of the DA's Office the intracorporate conspiracy doctrine bars Plaintiffs' conspiracy claims. See O.C.G.A. § 15-18-14.1 (governing a district attorney's appointment of investigators).

### ii.   Plaintiffs' Conspiracy Claims Lack Plausibility

First, Plaintiffs never identify an underlying cause of action for the § 1983 conspiracy claim. Plaintiffs only allege that they were denied "notice and opportunity for hearing appropriate to the nature of their case by Defendants Howard and Thomas acting in concert under the color of law." [Doc. 63 ¶ 354]. It is unclear what notice or hearing the Plaintiffs believe that Howard and Thomas conspired to deprive them of. Based on the allegations, Defendant

assumes that Plaintiffs refer to the decision to secure an arrest warrant and prosecute them.

When alleging a conspiracy, "[m]ore than mere conclusory notice pleading is required." *Fullman v. Graddick*, 739 F.2d 553, 556 (11th Cir. 1984). "It is not enough to simply aver in the complaint that a conspiracy existed." *Id*. at 557. "Conclusory allegations of agreement or conspiracy are insufficient." *Quality Auto Painting Ctr. Of Roselle v. State Farm*, 917 F.3d 1249, 1262 (11th Cir. 2019).

Plaintiffs have not pleaded any facts in support of their conspiracy claims. Both Counts are vague and merely allege that a conspiracy took place. Even if the conspiracy claims were not subject to dismissal under prosecutorial immunity and the intracorporate conspiracy doctrine, they would still be subject to dismissal under the plausibility standard.

### E. PLAINTIFFS' STATE-LAW CLAIMS ARE BARRED AGAINST HOWARD UNDER THE GEORGIA TORT CLAIMS ACT.

Plaintiff alleges several state-law claims against Howard, including defamation, false arrest, malicious prosecution, negligent training, unlawful seizure, civil conspiracy, and ratification.

The Georgia Constitution expressly preserves the State's sovereign immunity and provides that immunity "can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is waived and the extent of such waiver." Ga. Const. of 1983, Art. I, Sec. II, ¶ IX

(e). The Georgia Tort Claims Act (GTCA) is "the *exclusive remedy* for any tort committed by a state officer or employee." O.C.G.A. § 50-21-25(a) (emphasis supplied). The GTCA "by its own terms, must be strictly construed." and "cannot be abrogated by the Judiciary." *Howard v. State,* 226 Ga. App. 543, 543 (1997); *Dollar v. Dalton Pub. Schools*, 233 Ga. App. 827, 830 (1998).

The GTCA exempts individual state officers and employees from liability for any tort committed while acting within the scope of their official duties or employment. O.C.G.A. § 50-21-25(a). The GTCA provides that a person who sues the state "must name as a party defendant only the state government entity for which the state officer or employee was acting and shall not name the state officer or employee individually." O.C.G.A. § 50-21-25(b). If a state employee is acting within the scope of their official duties or employment, the state employee is immune. For each of the state-law claims alleged, Howard was acting within the scope of his elected role as District Attorney. Therefore, he is immune.

Whether a state official falls under the exception has been construed broadly: where the official "acts in the prosecution and within the scope of [his official duties], intentional wrongful conduct comes within and remains within the scope of [the official duties]." *Feist v. Dirr*, 271 Ga. App. 169, 172 (2004). Even where Plaintiff alleges malice, if the "underlying conduct complained of is tortious" and occurs within the scope of his or her official duties, the official

is protected by official immunity. *Premo v. Ga. Ports Auth.,* 227 Ga. App. 27, 29 (1997); *Davis v. Standifer*, 275 Ga. App. 769, 772 (2005). Plaintiffs' allegations of malice do not defeat Howard's GTCA immunity. *Ridley v. Johns*, 274 Ga. 241, 242 (2001) (holding there is no exemption in the GTCA for acts motivated by malice or intent to injure).

Plaintiffs' complaint alleges that Howard was "at all relevant times, the District Attorney." [Doc. 63 ¶ 13]. Each of the Plaintiffs' state-law claims alleges conduct that falls within the scope of Howard's role as elected DA.

The false arrest, unlawful seizure, malicious prosecution, ratification, and civil conspiracy claims are only concerned only with Howard's decision to initiate and pursue a prosecution. The ratification claim is also concerned only with the decision to prosecute, as Plaintiffs allege that Howard ratified Thomas' tortious conduct in obtaining an arrest warrant and prosecuting Plaintiffs. [Doc. 63 ¶¶ 347-350]. These are quintessential duties of a prosecutor. It is also worth noting that Plaintiff's state law false arrest claim is also barred because the arrest was made pursuant to a warrant. *Franklin v. Consol. Gov't*, 236 Ga.App. 468, 470 (1999).

The negligent training claim alleges that Howard was Thomas' direct supervisor at the DA's Office. Setting aside the fact that Howard does not train those with a POST certification or those in law enforcement, supervising employees— such as investigators— does fall within the scope of a DA's

duties. *See generally*, O.C.G.A. § 15-18-14.1 (outlining an investigator's role within the DA's Office).

Finally, Howard's statements at a press conference and on a podcast about his decision about whether to prosecute were also done in his capacity as District Attorney. As is discussed below, this is especially true given the civil unrest, riots, and mass protests in Atlanta.

Since the GTCA "exempts state officers and employees from liability for any torts committed while acting within the scope of their official duties", DA Howard is immune under O.C.G.A. § 50-21-25(a) and entitled to dismissal.

## F. HOWARD IS ENTITLED TO QUALIFIED IMMUNITY

Howard is entitled to qualified immunity for his statements made during the upheaval, including riots, violence, and mass protests against police misconduct. Qualified immunity shields government officials who perform discretionary functions from civil liability so long as their conduct does not violate any "clearly established statutory or constitutional rights which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When case law is necessary to establish the right, only a decision of the Supreme Court, the Eleventh Circuit, or the highest court of the state in which the case arose will suffice to establish it. *Marsh v. Butler Cty.*, 268 F.3d 1014, 1032 n.10 (11th Cir. 2001) (en banc). "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just

suggest or allow or raise question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances*." *Lassiter v. Ala. A&M Univ.*, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc), overruled in part on other grounds, *Hope v. Pelzer*, 536 U.S. 730 (2002).

Plaintiffs allege that in May 2020 Atlanta was under siege. [Doc. 63 ¶¶ 17-24]. Mayor Bottoms' executive order described the city as "dangerous" and discussed the "incit[ment of] violence and lawlessness." [*Id.* ¶ 19]. News reports showed "massive destruction" and images of "officers and marked patrol units being attacked." [*Id.* ¶ 20]. Rioters drew knives on police officers, burned police cars, and threw explosive devices at police officers. [*Id.* ¶ 22]. The riots were a direct reaction to perceived wrongs committed by law enforcement in Atlanta and nationwide.

It was under this unique and volatile situation that Paul Howard, the District Attorney of Atlanta, was forced to make decisions that had the potential to incite further violence or provide a calming voice. DA Howard's decision to address his constituents at a press conference in the midst of this chaos has no peer in the case law. The same can be said of the podcast in which Howard was interviewed in the weeks following the riots— a time just as volatile. It cannot be said that Howard's statements to the public about the prosecution of officers whom many believed engaged in excessive force

violated clearly established law. There is no case law that "truly compels" the conclusion that Howard violated clearly established law when he made the choice to address a city on the brink and announced his decision to prosecute the police for excessive force in a city that was a tinder box ready to erupt in continued violence.  Howard's press conference may have helped to quell the violence.

There is no existing case law that is materially similar to the events faced by DA Howard in May and June 2020.  Nor can it be said that Howard's statements about his prosecutorial decisions were so egregious as to violate constitutional rights.  Howard is entitled to qualified immunity on the defamation claim and it should be dismissed.

### G. STATEMENT OF OPINION IS NOT DEFAMATION

Plaintiffs allege that Howard's statements at the press conference was Howard's opinion. Paragraph 97 of the Amended Complaint alleges that at the press conference Howard "exclaimed publicly his personal opinion…" Under Georgia law, a defamation action does not lie for a statement of opinion. *Gettner v. Fitzgerald*, 297 Ga.App. 258, 261 (2009). "[T]he expression of opinion on matters with respect to which reasonable men might entertain differing opinions is not libelous." *Kendrick v. Jaeger*, 210 Ga.App. 376, 277 (1993).

The language quoted from the podcast in the Amended Complaint is clearly a statement of opinion as well. Howard began his statement with "Well, I- I just thought…" and continues on with his opinion on what took place in the city government and on the police body cams. [Doc. 63 ¶ 106]. No reasonable person could find that Howard's statements on the podcast were anything but opinion. Since opinions are not actionable defamation, the claim against Howard should be dismissed.

### III.   PLAINTIFF'S CLAIM FOR DEFAMATION WAS FILED AFTER THE STATUTE OF LIMITATION EXPIRED AND IS BARRED.

Under Georgia law, the statute of limitation for a defamation claim is one year.  O.C.G.A. § 9-3-33. Plaintiffs' Complaint alleges that Howard made defamatory comments during a press conference on June 2, 2020, [Doc. 63 ¶ 93], and on a podcast published on June 30, 2020 [*Id.* ¶ 106]. For the press conference, the limitations period expired on June 2, 2021, and, the podcast, on June 30, 2021. Over a year later, however, on July 13, 2021, Plaintiffs filed their Complaint.  [Doc. 1].  Plaintiffs' defamation claims are barred by the statute of limitation.

Plaintiffs incorrectly suggest that the statute of limitations for their defamation claims have been extended under an official Order of the Georgia Supreme Court in response to the Covid-19 pandemic.  [Doc. 63 ¶ 16]. The Order of the Georgia Supreme Court had no effect on federal courts. Instead,

Federal Courts issued their own emergency orders during this period untethered to the Georgia Supreme Court's. It would violate principles of federalism for a federal court to be bound by an order of a state court.

Perhaps more to the point, Plaintiffs have pointed to no reasons that they were prevented from timely filing their defamation claim. The Northern District of Georgia was accepting electronic filings throughout the pandemic. The policy and purpose of the statute of limitations would be frustrated if Plaintiffs could rely on a state court order where they were fully able to file the case within the statutory period. Plaintiffs ask the Court to accept a form over function approach when the Court accepts a fiction and holds that a state court order— that necessarily had no impact on federal courts— defeats the statute of limitations where Plaintiffs suffered no imposition because of Covid-19. The Court should reject this pretense and hold that the Plaintiffs filed their defamation claim after the statute of limitation expired. Plaintiffs' defamation claim is untimely and should be dismissed.

## CONCLUSION

For these reasons, Defendant requests that this Honorable Court grant his Motion to Dismiss the Amended Complaint.

This 17th day of August, 2022.

HENEFELD & GREEN, P.C.

/s/ Noah Green
Noah Green

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), this is to certify that the foregoing has been

prepared using Century Schoolbook 13-point font in compliance with Local Rule 5.1.

 This 17th day of August, 2022.

HENEFELD & GREEN, P.C.

/s/ Noah Green
Noah Green
Georgia Bar No. 468138
*Attorney for Defendant Howard*

3017 Bolling Way NE, Suite 129
Atlanta, Georgia 30305
(404) 841-1275
ngreen@henefeldgreen.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **MARK GARDNER, LONNIE HOOD, and IVORY STREETER,** | § § § | |
| *Plaintiffs,* | § § | **CIVIL ACTION NO.** |
| **v.** | § § | **1:21-cv-02798-JPB** |
| **KEISHA LANCE BOTTOMS, in her Individual capacity, PAUL HOWARD, in his Individual capacity and Official capacity, GREG THOMAS, in his Individual and Official Capacity, ERIKA SHIELDS, in her Individual capacity, and FULTON COUNTY GOVERNMENT,** | § § § § § § § § § § § § | |
| *Defendants.* | § | |

## CERTIFICATE OF SERVICE

This is to certify that I have this day served counsel for the opposing parties with a copy of **DEFENDANT PAUL HOWARD'S MOTION TO DISMISS AND BRIEF IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**, by filing same with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

This 17th day of August, 2022.

HENEFELD & GREEN, P.C.

/s/ Noah Green
Noah Green
Georgia Bar No. 468138
*Attorney for Defendant Howard*

3017 Bolling Way NE, Suite 129
Atlanta, Georgia 30305
(404) 841-1275
ngreen@henefeldgreen.com