**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION**

| | | |
|---|---|---|
| MARK GARDNER, | * | |
| LONNIE HOOD, and | * | |
| IVORY STREETER | * | |
| | * | |
| Plaintiffs, | * | |
| | * | Civil Action File No. |
| v. | * | 1:21-cv-02798-SEG |
| | * | |
| KEISHA LANCE BOTTOMS, in her | * | |
| Individual capacity | * | |
| PAUL HOWARD, in his | * | |
| Individual AND Official | * | |
| Capacity, GREG L. THOMAS, in his | * | |
| Individual AND Official Capacity and | * | |
| ERIKA SHIELDS, in her | * | |
| Individual capacity, and FULTON | * | |
| COUNTY GOVERNMENT | * | |
| | * | |
| Defendants. | * | |

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT FULTON COUNTY'S MOTION TO DISMISS

COME NOW, Plaintiffs Mark Gardner, Lonnie Hood, and Ivory Streeter, who by and through undersigned counsel timely file this Brief in opposition to Defendant Fulton County's Motion to Dismiss.

## PRELIMINARY STATEMENT

Plaintiffs filed their Complaint on July 13, 2021. (ECF Doc. No. 1)

(hereinafter "Complaint" or "Compl."). Thereafter, Plaintiff's filed an amended complaint, with leave of court, alleging in pertinent part that certain Fulton County actors caused Plaintiffs harm. (ECF Doc. 63 at pp. 74-78) (hereinafter "FAC"). Defendant Fulton County is a named party in Counts Eight through Eleven of Plaintiffs' FAC, *id.* at pp. 74-78.

Defendant Fulton County has moved to dismiss all counts against it, arguing, *inter alia*, that service was not properly effected; that it enjoys sovereign immunity; that Defendant Paul Howard—then a district attorney—could not be a County actor; and that in any event Plaintiff's improperly pleaded under a *Monell* theory of liability.[1] (ECF Doc. No. 80-1 at pp. 6-20) (hereinafter "Defendant's Brief" or "Def. Br.").

## STATEMENT OF FACTS

Plaintiffs were officers with the Atlanta City Police Department with years of experience and thousands of hours of law enforcement training. FAC at ¶¶ 7-9, 117, 119, 133, 135, 151-52. Atlanta was, during the pertinent time, dangerous and facing widespread unrest and riot. FAC ¶¶ 18-22. This led to the mobilization of hundreds National Guard members and the imposition of an emergency curfew. *Id.*

---

[1] Plaintiffs concede the final point but note that they can successfully amend. *See generally*, Section III.

at ¶¶ 18, 23. The situation was chaotic, dangerous, and there were near constant reports of gun fire. *Id.* at ¶¶ 21-22. Much of this violence was particularly aimed at police officers. *Ibid.*

On May 30, 2020, Plaintiffs were attempting to enforce the curfew, instituted by Defendant Bottoms, which had been announced to protesters, when they encountered Messiah Young, *id.* at ¶¶ 24-27. Mr. Young was driving a vehicle without valid registration on a suspended license and ignored multiple lawful orders. *Id.* at ¶¶ 27, 33, 214. His passenger, Taniyah Pilgrim, likewise ignored multiple lawful orders. ¶¶ 27, 31, 36.Young, while under arrest after attempting to escape, placing Plaintiff Hood in serious danger, still refusing to obey repeated lawful orders, reached for his pocket. *Id.* at ¶¶ 33, 39-40. A nearby officer shouted "*Gun"* and Plaintiffs, reasonably fearing for their safety as well as the safety of the citizens and officers around them, deployed their TASERS in the hope of subduing Mr. Young and Ms. Pilgrim and taking them into custody. *Id.* at ¶¶ 38-42. The use of the TASERS was lawful and necessary force to effect the arrests and the arrests were without further resistance or danger. *Id.* at ¶¶ 42-44. Young and Pilgrim had committed multiple criminal acts within the presence of Plaintiffs. *Id.* at ¶¶ 45-46.

As all of this unfolded, Defendant Howard was struggling in a contested reelection and saw bringing charges against unpopular police officers as politically advantageous in the then-dominant climate. *Id.* at ¶¶ 93, 108, 114. Defendant

Howard, as the then-current Fulton County Attorney had duties which deeply involved the County, including the supervision of County investigative employees. *Id.* at ¶¶ 13-14, 130, ,328, 315, 333. It was in this role—not his role as a prosecutor for the State—that Defendant Howard directed Defendant Thomas to obtain warrants. *Id.* at ¶¶ 315, 130.   Likewise, it was in this role that Defendant Howard conducted the constitutionally inadequate investigation. Further, it was in this County-level role that Defendant Howard conducted the training of the County Employees who acted as investigators. *Id.* at ¶¶ 315-16, 333-34.

Within 61 hours of the incident, Defendant Howard had caused arrest warrants to be issued based on known mischaracterizations and a constitutionally inadequate investigation. *Id.* at ¶¶ 101, 106, 129-30, 316. Even more quickly, Defendant Howard organized a press conference in the hopes of wringing a political gain from his misdeeds. *Id.* at ¶¶ 102-03, 108.

There was no cause for the Plaintiffs' arrest or prosecution. *Id.* at ¶ 316. The prosecution and arrest were caused directly by known mischaracterizations and/or a clearly constitutionally inadequate investigation. *Id.* at ¶¶ 101, 106, 129-30, 316. Plaintiffs were eventually exonerated by a special prosecutor. *Id.* at ¶ 329. The pertinent actions at issue were taken with malice or reckless disregard to Plaintiff's rights. 319-20, 330. The Plaintiffs suffered injury as a result of these actions. *Id.* at ¶¶ 321, 331, 335.

The Plaintiffs inadvertently failed to plead that Defendant Howard was a final policymaker for Fulton County; further, Plaintiffs inadvertently failed to plead that acting under the direction of Defendant Howard, there was a policy of undertaking speedy, inadequate investigations, causing unconstitutional arrests, and causing unconstitutional prosecutions. Further, the County apparently was aware of these actions and ratified the same by passing a resolution and stating approval publicly. *Id.* at ¶¶ 93-96, 105-06 (the process was literally published by Howard to the world at large and made a matter of public knowledge).[2]

## LEGAL STANDARDS

To survive a motion to dismiss for failure to state a claim, the complaint must give the defendant general notice under Federal Rule of Civil Procedure, Rule 8, which requires *only* "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

This is a lenient standard which was adopted to simplify the pleading system; the Rule "was adopted to focus litigation on the merits of a claim" rather

---

[2] As discussed at length below, Plaintiffs are aware that *Monell* liability was not adequately pleaded; however, Plaintiffs strongly believe that leave to amend is appropriate in this case where Plaintiffs are fully aware of how to cure their pleading and can do so.

than on technicalities that could keep litigants out of court. *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 513-14 (2002); *see also Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69 (1993) (holding there exists no heightened pleading standard for *Monell* claims).

There is *no* heightened pleading standard for *Monell* claims. *See generally Leatherman*, 507 U.S. 168-69. This has not changed in light of *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) or *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), while a *Monell* claim must comply with Rule 8, it need not do more; The Eleventh Circuit explicitly held its prior heightened pleading standards have been abrogated:

> In 1993, however, the Supreme Court held, in a municipal liability case under § 1983, that "it is impossible to square a 'heightened pleading standard' ... with the liberal system of 'notice pleading' set up by the Federal Rules." *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).
>
> . . .
>
> Following the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), *we got rid of heightened pleading altogether in § 1983 cases.*
>
> We held that "it is clear that there is no 'heightened pleading standard' as it relates to cases governed by Rule 8(a)(2), including civil rights complaints.*" Randall v. Scott*, 610 F.3d 701, 710 (11th Cir.2010). . . .
>
> We expressly held in *Randall,* and reaffirm today, that "whatever requirements our heightened pleading standard once imposed have since been replaced by those of the *Twombly– Iqbal* plausibility standard.... [which] applies to all civil actions...." *Id .See also Saunders v. Duke*, 766 F.3d 1262, 1266 (11th Cir.2014) ("After ... *Iqbal* ..., which applied the *Twombly* pleading standard in a civil rights/qualified immunity context, there is no

longer a 'heightened pleading' standard in 'cases governed by Rule 8(a)(2), including civil rights [cases]' under § 1983.") (quoting *Randall*, 610 F.3d at 710) (alterations in original).

*Hoefling v. City of Miami*, 811 F.3d 127, 1275-76 (11th Cir. 2016) (emphasis added).

The Supreme Court has reaffirmed that a federal court may not apply a standard "'more stringent than the usual pleading requirements of Rule 8(a)'" in "'civil rights cases *alleging municipal liability*.'" *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (*per curiam*) (quoting *Leatherman*, 507 U.S. at 164) (emphasis added). *Johnson* reaffirmed that Rule 8 *only* requires a plaintiff state "simply, concisely, and directly" the events that they allege entitle them to damages. *Id*. at 11.

Where a plaintiff informs the municipality of the factual basis for the complaint, the plaintiff is "required to do no more to stave off threshold dismissal for want of an adequate statement of their claim." *Id*. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Id*. at 346; *see also id.* at 347 ("For clarification and to ward off further insistence on a punctiliously stated 'theory of the pleadings,' petitioners, on remand, should be accorded an opportunity to add to their complaint a citation to § 1983.") (citing 5 Wright & Miller, Federal Practice and Procedure § 1219, pp. 277-78 ("The federal rules effectively abolish the restrictive theory of the pleadings doctrine, making it clear that it is unnecessary to

set out a legal theory for the plaintiff's claim for relief."))

In *Twombly*, the Supreme Court held that "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." 550 U.S. at 555. The factual allegations need only "be enough to raise a right to relief above the speculative level." *Id*. (citations omitted). The *Twombly* Court stressed that it was not imposing a probability requirement on plaintiffs at the pleading stage. *Id.* at 556. Rather, the claims must be "plausible," which "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting the allegations. *Id*. The Court explained: "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks and citations omitted).

Importantly the holding in *Twombly* was significantly narrowed and delimited in *Erickson v. Pardus*, 551 U.S. 89 (2007) (*per curiam*): Rule 8: "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id*. at 93 (quoting *Twombly*, 550 U.S. at 555).

Whether a complaint should survive a motion to dismiss is a "context-

specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A district court reviewing a complaint under Rule 12(b)(6) must construe the complaint in a light most favorable to the non-moving party and accept all factual allegations in the complaint as true. *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007) (hereinafter "*Martinez*").

Nothing is considered beyond the face of the complaint in a standard motion to dismiss inquiry, *see Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir.1997), and the burden is upon the moving party to show *to a certainty* that the plaintiff is not entitled to relief. *Jackam v. Hosp. Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1581 (11th Cir. 1986) ("Over and over and over again—but apparently not often enough—this Court has stated, explained, reiterated, stressed, rephrased, and emphasized one simple long established, well publicized Rule of Federal Procedure: A motion to dismiss for failure to state a claim should not be granted unless it appears to be a certainty that Plaintiff would not be entitled to recover under any state of facts which could be proved in support of his claim.") (quoting *Cook & Nichol, Inc. v. Plimsoll Club*, 451 F.2d 505, 506 (5th Cir. 1971)).

## **ARGUMENT**

### **I.     Dismissal under 12(b)(5) Would Be Improper at this Point.**

*Ab initio*, Plaintiffs respectfully point the court to service which was perfected on September 14, 2022. [Doc. 85] Defendant Fulton County has alleged that it was not served with a summons. Although Plaintiffs refute that allegation, and Plaintiffs will respond to Defendant's argument as to service, this is a moot point.

Defendant states that absent proper service under Rule 4 a defendant may move to dismiss. Def. Br. at 7 (citing *Velez v. Georgia*, No. 1:17-CV-0550-SCJ, 2017 WL 11573593, slip op at *2 (N.D. Ga. Nov. 2, 2017)). The *Velez* Court, however, explains that the plaintiff is responsible for completing service within the time Rule 4(m). *Velez*, 2017 WL 11573593 at *1. Rule 4(m) specifies the time in which service must be properly completed. *See* FRCP 4(m) (setting forth a 90-day deadline for service). At the time of the filing of the instant Opposition that time has yet to run.

Although neither the Eleventh Circuit nor this Court have specifically ruled on the matter—though the holding in *Velez* apparently recognizes the ripeness issue, 1:17-CV-0550-SCJ, 2017 WL 11573593 at *1 (noting the "Defendant's motion is now ripe")—, virtually every court which analyzes the issue notes a motion to dismiss for improper service filed where proper service can still be effected is groundless. *See, e.g.*, *Foster v. Bridgestone Americas, Inc.*, No. 11-0175-WS-N, 2011 WL 3606983 at *7,  n. 20 (S.D. Ala. Aug. 15, 2011) (collecting cases);

*McPhearson v. Anderson*, 874 F.Supp.2d 573 (E.D. Va. 2012) (holding where time not exhausted motion "groundless at this time"); *Coastal Neuro-Psychiatric Assoc. v. Onslow Cnty. Hosp. Auth.*, 607 F.Supp. 49 (E.D.N.C. 1985) (holding motion "not justified where it appears service can be properly made"); *S.E.C. v. Gilbert*, 82 F.R.D. 723, 727 (denying motion where service may still be effected) (citing *Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2d Cir. 1972).

Service here could still be effected, and in fact *was* effected, within the time constraints of Rule 4, and indeed any flaw that may have existed under Rule 4, has been cured by subsequent service of a summons *and* complaint served on Defendant on September 14, 2022. *See* (ECF Doc. No. 85).

## II.   Defendant Has Ignored Binding State Precedent and the Plain Language of O.C.G.A. § 36-11-1.

The Defendant fails to account for the nature of both O.C.G.A. § 36-11-1 and Georgia's extant caselaw addressing notice of claim which involves multiple claimants. *See Delson v. Dept. of Transp.* 245 Ga.App 100, 102 (2000) (holding no requirement to inform of *all claimants* but rather the claim).

### A.   State Law Malicious Prosecution

Defendant's argument simply does not apply to the malicious prosecution claim of Hood—or any other plaintiff. The malicious prosecution action did not accrue until May 23, 2022. Compl. at ¶¶ 208-09 (noting dismissal). A cause for malicious prosecution does not accrue until the underlying action is terminated in

the plaintiff's favor. *See Wood v. Kesler*, 323 F.3d 872, 882 (11th Cir.2003)

(holding elements of malicious prosecution: "(1) a criminal prosecution instituted or

continued by the present defendant; (2) with malice and without probable cause; (3)

*that terminated in the plaintiff accused's favor*; and (4) caused damage to the

plaintiff accused.") (citations and footnote omitted; emphasis added); *see also*

*Gooch v. Tudor*, 296 Ga.App. 414, 416 (2009).  Fulton county cannot contend that

it lacks notice of the claim; nor can it contend that it did not get such notice within

the 12-month period after accrual, *i.e.*, between May 23, 2022 and May 23, 2023.

*See, e.g.*, *Douglas Cnty. v. Brown & Riley Enterprises, Ltd.*, 114 Ga.App. 410, 410

(1966) (overruled other reasons); *Taylor v. Richmond Cnty*, 57 Ga.App. 586 (1938)

(holding "bringing suit against county within 12 months from the date of

accrual . . . is a sufficient presentation of claim . . . [under predecessor statute]")

(citing *Dement v. Dekalb Cnty.*, 97 Ga. 733 (1896)).

### B. <u>The County Was Put on Notice of the General Character of the Complaint.</u>

All that is required under O.C.G.A. § 36-11-1 is general notice of the

character of the complaint in a general way. *See Gary v. DeKalb Cnty. Gov't*, 1:05-

CV-0158-CAP, 2006 WL 8433067, at *3 (N.D. Ga. Oct. 23, 2006) ("Substantial

compliance is all that is required to meet the statutory notice requirements. It is

necessary only that the county shall be put on notice of the general character of the

complaint, and, in a general way, of the time, place, and extent of the injury.")

(citing *City of Atlanta v. Frank*, 120 Ga. App. 273, 274 (1969) (overruled on other grounds)).

The purpose of Georgia's *ante litem* statutes is "to give a county notice of the plaintiff's grievance, and an opportunity to investigate and settle the claim before suit."  *Jones v. E.R. Snell Contractor, Inc*., 333 F.Supp.2d 1344, 1352 (N.D. Ga. 2004). The notice required under O.C.G.A. §36-11-1 is general due to the nature of the language of the statute. *See Howard v. State*, 226 Ga.App. 543, 544 (1997) (comparing the strict compliance requirements imposed by O.C.G.A § 50-21-26 with general requirements for municipalities) (overruled on other grounds).

The language of O.C.G.A. § 36-11-1 sets forth no enumerated requirements for notice: "All claims against counties must be presented within 12 months after they accrue or become payable or the same are barred . . ." *Cf.* O.C.G.A. § 50-21-26(a) (setting forth a multitude of specific requirements). The lack of any requirements relating to the claimants or plaintiffs is critical.

The only case which Plaintiffs' counsel was able to find touching upon the failure to identify *all* claimants or plaintiffs is *Delson.* The Court of appeals held: "The statute contains no express requirement *that all claimants be identified in the notice*. The omission of such a requirement makes sense when one considers that the person possessing a cause of action can sometimes change over time." *Delson v. Dept. of Transp.* 245 Ga.App 100, 102 (holding requirements fulfilled despite not

naming all eventual plaintiffs). It is worth noting that the *Delson* Court was examining the stricter requirements of notice to the state under O.C.G.A. § 50-21-26. A natural extension of this is that because notice requirements to counties and municipalities is more lax, and there is likewise no requirement to identify all claimants or potential plaintiffs, that general notice of the claim is sufficient under O.C.G.A. §36-11-1 without identifying all later-named plaintiffs.

The major and determinative requirement is the identification of the nature of loss suffered. *See id.* (discussing and distinguishing *Williams v. Dept. of Human Resources*, 272 Ga. 624 (2000)); *accord Roberts v. Unison Behavioral Health*, 312 Ga. 438, 446-50 (2021) (examining caselaw at length and citing *Delson* approvingly). Here the losses suffered and the transaction and occurrence were certainly enumerated within the notices which were provided to the County and State. This is sufficient under *Delson.*

Defendant does not argue that Plaintiff's attorney failed to provide the County an *ante litem* notice—it notes that *two* such notices were provided. Def. Br. at 6. It does not argue that those notices failed to adequately describe the loss, the claim, or the occurrence. It does not even analyze whether the four separate notices provided fulfilled the requirements of O.C.G.A. § 36-11-1.

The Defendant seeks to read into the statute requirements that simply do not exist: a strict requirement that all plaintiff's bring independent notice separately

from one another. This is an impermissible reading of the statute simply not supported by any law. *See U.S. v. DBB, Inc.*, 180 F.3d 1277, 1281 (11th Cir. 1999) (holding plain language controls); *Houston v. Marod Supermarkets, Inc*., 733 F.3d 1323, 1334 (11th Cir. 2013) (holding "absence of legislative language restricts our interpretation, as we are not allowed to add or subtract words from a statute. Because our task is merely to apply statutory language not to rewrite it.")  The Georgia Legislature  chose to draft a statute requiring notification of claims; it specifically did not require a statute mandating the identification of all claimants who may take part in those claims, nor all plaintiffs, nor any more than a general notice of claim within 12 months. The Plaintiffs have provided such to Defendant and the Defendant does not argue that they have not, for this reason alone the Defendant has failed to demonstrate a ground to dismiss.

Further, none of the cases cited by Defendant examine the actual issue at hand and none of these cases demonstrate that dismissal is mandated in these circumstances. *See, e.g.*, *Hudson v. Morris*, No. 420-cv-120, 2021 WL 2188571, at * 7 (S.D. Ga. May 28, 2021) (where single plaintiff provided no notice other than complaint filed after 12-month period); *Fulton v. City of Roswell*, 982 F.Supp. 1472, 1475 (N.D.Ga. 1997) (not addressing necessity of identifying claimant). Given such, Defendant has failed to meet its heavy burden and its motion must fail.

**III.**   **Plaintiffs Concede that *Monell* Liability Was Not Adequately Pleaded; However, Dismissal with Leave to Amend Is**

**Appropriate.**

The Plaintiffs cannot contend that they adequately pleaded the existence of Monell liability in the instant iteration of their complaint. Defendant is correct in asserting that plaintiffs failed to plead the existence of a policy and custom or to identify a final policymaker. However, the language of the Compliant identifies Defendant Howard as one who directed the actions of his subordinates. That being said, Plaintiffs can cure this deficiency through amendment and hereby pray that this Court will afford them the opportunity to do so. Such action is within the Court's discretion.

### A. Determining the Existence of a Policy or Custom.

In order to establish a *Monell* claim a plaintiff must demonstrate either the existence of a policy adopted through decision making channels or in the alternative the existence of a custom "even though such a custom has not received formal approval through the body's official decision making channels."

> "Congress included customs and usages [in § 1983] because of the persistent and widespread discriminatory practices of state officials . . . . Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law."

> *Adickes v. S. H. Kress & C*o., 398 U.S. 144, 167–168 (1970).

Where a final policymaker[3] exercises final decision-making authority there is no need to demonstrate repeated violations to show the existence of a *de facto* custom. *See Scala v. Cty. Of Winter Park*, 116 F.3d 1396, 1399 (11th Cir. 1997) ("Where action is directed by those who establish governmental policy, the municipality is *equally responsible whether that action is to be taken only once or to be taken repeatedly.*") (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481 (1986) (emphasis added; internal quotation marks omitted). Finally, a final policy maker may ratify the conduct of another, which will result *in Monell* liability: "[R]atification exists when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policy making authority." *Matthews v. Columbia Cty.*, 294 F.3d 1294, 1297 (11th Cir. 2002). "The final policymaker, however, must ratify not only the decision itself, but also the unconstitutional basis for it." *Id.* In other words, "local government policymakers [must have] had an opportunity to review the

-----

[3] This holds true for policymakers who act through delegated authority. *See Matthews v. Columbia Cty*., 294 F.3d 1294, 1297 (11th Cir.2002) ("Local government liability can exist when someone with final policymaking authority delegates that authority to someone else. But, the delegation must be such that the decision is not subject to review by the policymaking authority."); *Gattis v. Brice*, 136 F.3d 724, 725 (11th Cir.1998) ("If a county official holds final policymaking authority for the county in the subject area of the alleged constitutional violation, that official's decisions may constitute county policy.")

subordinate's decision and agreed with both the decision and the decision's basis[.]" *Garvie v. City of Ft. Walton Beach*, 366 F.3d 1186, 1189 (11th Cir. 2004) (cleaned up).

To sum, if Plaintiffs can demonstrate that a final decisionmaker for the County caused the action leading to the constitutional deprivation, liability can be demonstrated; if Plaintiffs can show that ratification occurred, they can demonstrate liability; or, if they can demonstrate that there was a custom or policy through repeated actions, they can  state a claim. This Court should exercise its discretion to permit Plaintiffs, public servants who have been publicly abused by public officials, leave to amend to do so.

## B. <u>Plaintiff's Injuries and Constitutional Harms</u>

The injuries in the instant action, as they relate to Fulton County, were brought on through: 1, negligent training of investigative staff; 2, causing an arrest warrant to issue after a constitutionally inadequate investigation; 3, causing the initiation of a criminal prosecution based on a constitutionally inadequate investigation.[4] In short, all of these actions are based on the investigative functions carried out by Defendant Thomas as an employee of Fulton County while

---

[4] The claims are familiar section 1983 claims based on the Fourth amendment which parallel state law torts.

Defendant Howard was acting in an investigative capacity managing or supervising Defendant Thomas—these claims do not relate to Defendant Howard acting in a prosecutorial capacity as a District Attorney. *Cf. Vandiver v. Meriwether Cnty., Georgia*, 325 F. Supp. 3d 1321 (N.D. Ga. 2018) (where District Attorney acting in his *prosecutorial capacity* held a state actor).[5]

A district attorney is not acting as a prosecutor where he swears to a warrant. *See Jones v. Cannon*, 174 F.3d 1271, 1284-85 (11th Cir. 1999) (citing *Malley v. Briggs*, 475 U.S. 335 (1986)). A district attorney is not acting as a prosecutor where he holds a press conference. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 341-42 (2009) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 277 (1993)). A district attorney is not acting as a prosecutor where he trains or supervises non-prosecutorial tasks. *Cf. Id.* (holding where prosecutor supervises or trains in prosecutorial task, such is intimately associated with criminal prosecution). Plaintiffs would argue, and would amend the complaint to reflect, that Defendant

---

[5] Plaintiffs have searched for any caselaw relating to a District Attorney's state/county role when acting in an investigatory capacity and have not discovered any binding caselaw. Caselaw, however, amply demonstrates those the stark divide those duties of a prosecutor acting as a prosecutor and those actions in which a prosecutor is acting in an administrative, executive, or investigative capacity. *See, e.g.* Citation [press conference]; *See Rowe v. City of Fort Lauderdale*, 279 F.3d 1271 (prosecutor entitled to *no* immunity where acting in an investigatory capacity") (citing  [investigator]; citation [administrative].

Howard was acting in an administrative or investigative capacity when directing and causing these harms and that in doing so he was acting as a final policymaker for Fulton County rather than pursuant to his constitutional duties as a District Attorney. *See generally infra.*

### C. <u>Analysis of Policymakers in this Circuit</u>

In the Eleventh Circuit, courts use a "functional" analysis to determine whether a particular decisionmaker is a final policymaker. *See Owens v. Fulton County*, 877 F.2d 947, 950 (11th Cir. 1989) (citing *Familias Unidas v. Birscoe*, 619 F.2d 391, 404 (5th Cir. 1980)). *Owens* specifically recognizes that a district attorney may be acting as a state actor in certain circumstances and a county actor in others. *See id.* at 952 (noting if "grievance had involved an employment termination by the district attorney, which is an administrative function, such an act might be characterized as an exercise of county power . . .") (citation omitted). Simply because an employee is wearing a "state hat" in some of his duties, does not mean that he does not wear a county hat in others. *See Van Ooteghem v. Gray*, 774 F.2d 1332, 1337 (5th Cir. 1985) ("Whatever state duties a County Treasurer may have, we are persuaded that in the personnel matters at issue here, Gray was wearing his county hat.")

Further, the mere labeling in a state constitution as being a county or state actor is not determinative; it is rather an analysis of the actor's function and action

which determines whether the actor is a state or county actor in taking any

particular action. *See Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1332 (11th Cir.

2003). In *Grech* the plaintiff mistakenly argued that the labeling of an official as a

county or state official was dispositive; the *Grech* court flatly rejected the

formalistic focus on language:

> In this appeal, plaintiff Grech's main argument is that sheriffs are county
> policymakers under § 1983 because Georgia's Constitution characterizes
> sheriffs as "county officers." Grech contends that Georgia's statutory and
> decisional law supports this "county officer" classification. The
> insurmountable hurdles for Grech are that, under *McMillian, we must focus
> on control, not labels*, and that, under Georgia law, counties lack authority
> and control over sheriffs' law enforcement functions.

> *Id*. (emphasis added).

The Defendant certainly has demonstrated that under the Georgia

constitution the District Attorney is a state actor, but that is the very demonstration

that was rejected in *Grech. Id.* The pertinent question is whether or not the District

Attorney may exercise county-level policymaker authority where he acts as an

investigator or where he trains investigators who may very well be county

employees. That question involves a functional analysis of his duties as they relate

to the constitutional torts. Although, certainly as Defendant points out the District

Attorney's post is created by the constitution and pursuant to certain laws he may

employ people, *see* Def. Brief at pp. 16-7 (citing Ga Const. of 1983, Art. VI, Sec. 8,

Par. I(a) and O.C.G.A. § 15-18-20); this does not preclude him from wearing a

county hat, nor certainly does it mean that he can exercise no other authority or may *only* supervise and control state employees.

Under Georgia law there are three manners[6] in which an investigator may find himself employed under a district attorney. He may be an employee directly hired by the district attorney. *See* O.C.G.A. § 15-18-14.1. He may be employed by the state pursuant to a contract with the local municipality, where the municipality transfer's funds to the state to cover his compensation. *See* O.C.G.A. § 15-18-20.1. Or, presumably, a county employee may find himself under the control of the district attorney where a county chooses to provide additional personnel but chooses not to do so through a contract with the Prosecuting Attorney's Council of the State of Georgia for one reason or another.[7]

The language in section 15-18-20.1 is precatory, not mandatory:

> Notwithstanding any other provision of law, the governing authority of any county or municipality within the judicial circuit which provides additional personnel for the office of district attorney *may* contract with the Prosecuting Attorneys' Council of the State of Georgia to provide such additional personnel in the same manner as is provided for state paid personnel in this

---

[6] For the purpose of this analysis, Plaintiffs would note that supplements from the municipality remain possible with any position. *See* O.C.G.A. 15-18-19 (e)(7).

[7] Many counties may prefer not to have to "transfer funds [to the state] as may be necessary to cover compensation, benefits, travel, and other expenses for such personnel . . ." O.C.G.A. § 15-18-20.1, or to comply with statutory qualification or compensation statutes which limit district attorneys and state employees.

article. Any such personnel shall be considered state employees and shall be entitled to the same fringe benefits as other state employees . . .

There is no question that the usage of "may" and "shall" in statutes carries with it important meaning. There are three rules of statutory interpretation which prove important.

First, where two different words are used in a statute, it is presumed that they carry different meaning. *See Ysleta v. Del Sur Pueblo*, 142 S.Ct 1929 (2022) ("differences in language like this convey differences in meaning.") (quoting *Henson v. Santander Consumer USA Inc.*, 582 U.S. ---, 137 S.Ct. 1718, 1723 (2017)); *accord* 73 Am.Jur.2d Statutes § 122 (Aug. 2022 update) (collecting cases).

Second where the same statute distinguishes between "may" and "shall" it is generally clear that "shall" imposes a mandatory duty while "may" allows for a discretionary act. *See United States ex el. Siegel v. Thorman*, 156 U.S. 353, 359-60 (1895).

Third that language is to be interpreted with its plain meaning where possible and in accordance with normal usage. *See 304 F.3d 1076, 1086-87 (11th Cir. 2002)*

Under a plain meaning "shall" is widely recognized as ordinarily being mandatory, *see See Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123, 127 (5th Cir. 1994)*; see also Cornett v. Carrithers*, 465 F. App'x 841, 843 (11th Cir. 2012), while "may" is normally interpreted as being discretionary and permissive. *See US v.*

*Rodgers*, 461 U.S. 677, 706 (1983).

Here we have a single statute which utilizes both "may" and "shall" presumably the different words have different meanings—one mandatory the other permissive—which accord to their plain meaning—the one mandatory and the other permissive.

In consequence, what this means is that pursuant to O.C.G.A. §15-18-20.1, a county may, but need not, contract through the state to supply its district attorney's office with additional personnel. The concomitant conclusion should be readily apparent, a county may also provide additional personnel to a district attorney's office without contracting with the state, and when it does so, the mandatory shall provisions vesting those employees with "state" employment do not apply and those employees are county employees, paid by the county, put under the supervision of the district attorney by delegation, *i.e.*, they are county employees who are made subject to a final policy maker for the county.

The possibility of multiple methods of employment vis-a-vis investigators is critical.

A district attorney's acts in training and supervising employees provided to him or her may involve him or her acting under authority provided through local act or law, exercised by and through employees compensated by the county at a rate fixed by the county. In essence, a county may provide a district attorney with a

county hat to wear.

This is true even when one examines the statute cited by Defendant:

O.C.G.A. § 15-18-20 provides:

> (a) The district attorney in each judicial circuit may employ such additional assistant district attorneys, deputy district attorneys, or other attorneys, investigators, paraprofessionals, clerical assistants, victim and witness assistance personnel, and other employees or independent *contractors as may be provided for by local law or as may be authorized by the governing authority of the county* or counties comprising the judicial circuit. The district attorney shall define the duties and fix the title of any attorney or other employee of the district attorney's office.
> (b) Personnel employed by the district attorney pursuant to this Code section shall serve at the pleasure of the district attorney and *shall be compensated by the county* or counties comprising the judicial circuit, the manner and *amount of compensation to be paid to be fixed either by local Act* or by the district attorney with the approval of the county or counties comprising the judicial circuit.

(Emphasis added).

These employees may be employed via authorization coming from the

county, to be paid by the county, at a rate fixed by the county.

### C. A District Attorney Not Acting in a Prosecutorial Capacity, through Powers Vested by a County, over Employees Paid by the County, in Positions Created by the County Is Acting in a County Capacity.

The "pivotal issue" is not whether a district attorney considered an employee

of the state—he is and there is no question about that—, but whether, in his capacity

to supervise and train investigators and office staff acting in the capacity of

investigators, where such investigators are county employees, he would be acting as

a county policymaker. The Plaintiff believes this to be the case where a district attorney in an investigative role, whose salary is heavily subsidized by the County, who manages employees of the County, appointed by County at County's discretion, at rates fixed by the County, *etc. See generally Owens*, 877 F.2d at 951-52 (comparing Georgia law with Louisiana and Texas law and determining district attorney is a state actor in his *prosecutorial* role, but may very well be county actor in others).

It is first worth noting that for certain county officials there exist state-mandated training or qualifications. *See, e.g.*, O.C.G.A. §§36-7-2, 36-20-4. For other positions no similar state-statute defines training or qualifications exists. Indeed, it appears exceedingly likely that most employees of counties are employed under O.C.G.A. § 36-1-11 (authority to employ) and § 36-1-21 (authority to create county civil service). These statutes make possible a scenario where a state employee (a district attorney or sheriff) exercises county authority over county employees. *See, e.g.*, *Manders v. Lee*, 338 F.3d 1304, 1311 n. 14 (11th Cir. 2003) ("We likewise read O.C.G.A. §§ 42–4–1 and 36–1–21 together to mean that the sheriff may appoint his non-deputy jailers "at will" under O.C.G.A. § 42–4–1, but also may elect in *writing to make their appointment subject to the county civil service system and thereby subject to county supervision* as prescribed by law in O.C.G.A. § 36–1–21."); *Ezell v. Wynn*, 802 F.3d 1217, 1211 (11th Cir. 2015)

(describing employees of sheriff's office falling into county civil service system).

Plaintiff has pleaded that Thomas was a County employee. Compl. at ¶ 14. Neither the single law, dealing with employment, cited by Defendant, nor any other pertinent law herein analyzed precludes the possibility that Thomas was a County employee.

Plaintiff believes and could plead on information and belief that then-district-attorney Howard exercised County authority, in essence, delegated completely to him by the County for training and supervision of pertinent County employees, namely Thomas. Clearly this County training and supervision role was investigatory not prosecutorial and was a cause of the constitutional injuries suffered.

It is difficult to brook that in this scenario a district attorney would be operating under his state constitutionally vested duties. *See* Ga. Const. of 1983, Art. VI, Sec. 8, Par. I(d) ("It shall be the duty of the district attorney to represent the state in all criminal cases in the superior court of such district attorney's circuit and in all cases appealed from the superior court and the juvenile courts of that circuit to the Supreme Court and the Court of Appeals and to perform such other duties as shall be required by law.").

Further, when acting in this capacity it is easy to see how this case is distinguishable from *Vandiver v. Meriwether Cnty., Georgia*, 325 F. Supp. 3d 1321

(N.D. Ga. 2018), where the district attorney was acting in his prosecutorial capacity and issued an indictment, *id.* at 1330-31 and *McClendon v. May*, 37 F. Supp. 2d 1371, 1377 (S.D. Ga. 1999), aff'd, 212 F.3d 599 (11th Cir. 2000), where assistant district attorneys were appearing before a grand jury—the only cases on which Defendant relies. *See* Def. Br. at pp. 17-18.

Last, while a district attorney certainly has the power to employ a certain number of assistant district attorney's and investigators, *see* O.C.G.A. §§ 15-18-14, 15-18-14.1, nothing prevents a district attorney from taking on additional county staff provided by the County.[8]

### D. Conclusion

 In short the law of Georgia makes clear that both county and state employees might find themselves under a district attorney—some would be paid by the state, hired pursuant to the district attorney's state-defined statutory mandate, and subject to the legislature's qualifications set down in statutes; others critically, would be hired pursuant to a county's powers, subject to none of the legislatures dictates, paid by the county, and employees of the county, who simply have found themselves subject to the whim of the district attorney because the county chose to

---

[8] Plaintiffs additionally believe it is possible to demonstrate a custom and policy of this behavior, especially during the period of time at which the claims arose and Plaintiffs believe they could successfully plead County ratification.

give that district attorney personnel and authority over them.

Plaintiffs are aware that they have failed to plead certain elements of *Monell* liability; and will not attempt to persuade the court otherwise. Plaintiffs can, however, cure this pleading error and would readily do so if given the opportunity to amend.[9] Given such, Plaintiffs would argue that dismissal with leave to amend is appropriate. *See, e.g.*, *Thomas v. Farmville Mfg. Co., Inc.*, 705 F.2d 1307, 1307-08 (noting that "leave to amend is particularly appropriate following dismissal of a complaint for failure to state a claim" (citing *Griggs v. Hinds Junior College*, 563 F.2d 179, 180 (5th Cir.1977)).

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request this Court deny Defendant, Fulton County's, Motion to Dismiss or that if the Court grants such motion it grant the motion with leave to amend.

This 16th day of September, 2022.

By:
*/s/Lance J. LoRusso*
Lance J. LoRusso
Georgia Bar No. 458023

*s/ Ken Davis*
Ken Davis

---

[9] Plaintiffs are aware that an opposition is not the correct procedural method for seeking leave to amend, and are not requesting such here, but simply noting that the pleading errors present in the current complaint are curable.

Georgia Bar No. 705045
*Counsels for Plaintiffs*

LoRusso Law Firm, P.C.
1827 Powers Ferry Road, S.E.
Atlanta, Georgia 30339
P: 770-644-2738 | F: 770-644-2379
lance@lorussolawfirm.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| MARK GARDNER, LONNIE HOOD, | * | |
| and IVORY STREETER | * | |
| | * | |
| Plaintiffs, | * | |
| | * | Civil Action File No. |
| v. | * | 1:21-cv-02798-SEG |
| | * | |
| KEISHA LANCE BOTTOMS, in her | * | JURY TRIAL DEMANDED |
| Individual capacity, | * | |
| PAUL HOWARD, in his | * | |
| Individual capacity & Official capacity, | * | |
| GREG L. THOMAS, in his | * | |
| Individual & Official capacity, | * | |
| ERIKA SHIELDS, in her | * | |
| Individual capacity, and FULTON | * | |
| COUNTY GOVERNMENT | * | |
| | * | |
| Defendants. | * | |

<u>CERTIFICATE OF SERVICE</u>

I certify that I electronically filed the within and foregoing with the Clerk of

Court using the CM/ECF system.

This 16th day of September, 2022.

*s/ Lance J. LoRusso*
Lance J. LoRusso, Esq
Georgia Bar No. 458023

_s/ Ken Davis_
Ken Davis, Esq.
Georgia Bar No. 705045
Attorney for Plaintiffs

THIS DOCUMENT APPEARS IN TIMES NEW ROMAN 14 POINT FONT