## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| MARK GARDNER, LONNIE HOOD, and IVORY STREETER, | § § § | |
| *Plaintiffs*, | § § | CIVIL ACTION NO. |
| v. | § § | 1:21-cv-02798-TCB |
| PAUL HOWARD et al., | § § | |
| *Defendants*. | § § § | |

## DEFENDANT PAUL HOWARD'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND BRIEF IN SUPPORT

COMES NOW, Defendant Paul Howard with this his Motion to Dismiss Plaintiff's Second Amended Complaint, and Brief in Support, for lack of jurisdiction and failure to state a claim upon which relief can be granted, showing this Court as follows:

### ISSUES PRESENTED

Plaintiffs bring these claims against Defendant Paul Howard:

(1) state law defamation,
(2) state law false arrest,
(3) unlawful seizure in violation of the Fourth Amendment for Plaintiffs' arrest under 42 U.S.C. § 1983,
(4) deprivation of reputational liberty under 42 U.S.C. § 1983,
(5) negligent training under 42 U.S.C. § 1983,
(6) state law civil conspiracy,
(7) civil rights conspiracy under 42 U.S.C. § 1983, and
(8) state law ratification.

These are some of the larger issues the Motion presents:

1. The Plaintiffs, Atlanta Police Officers, allege former DA Paul Howard made defamatory statements about an excessive force incident. A deprivation of reputational liberty claim exists where the employer of a government official terminates the employee's job and makes a false statement about him without a hearing to clear his name. Have the Plaintiffs stated a claim where Howard was not their employer, and where each was granted an opportunity for a hearing to clear his name before the Civil Service Board?

2. Plaintiffs assert federal and state-law claims related to Howard's decision to seek an arrest warrant and prosecute them. Under Georgia and federal law, a prosecutor has absolute immunity for initiating and pursuing a criminal prosecution. Have Plaintiffs stated a claim where Howard's decision to secure an arrest warrant and pursue a criminal prosecution is at the heart of a prosecutor's duties?

3. Plaintiffs have brought conspiracy claims against Howard and Thomas, an investigator at the DA's Office. Under the intra-corporate conspiracy doctrine, two agents of the same government agency cannot conspire together. Since Howard and his investigator are both agents of the District Attorney's Office, can they form a conspiracy?

4. Plaintiffs bring state-law claims against Howard for defamation, false arrest, civil conspiracy, and ratification. Under the Georgia Tort Claims Act— the exclusive remedy for state-law claims against the state (and its officials)— an official has immunity for claims connected to his discretionary duties and for defamation. Since these claims allege that Howard acted tortiously while carrying out his discretionary duties, is Howard immune under the GTCA?

5. Plaintiffs have alleged defamation for statements that were Howard's opinion. Under Georgia law, defamation will not lie for speech on those topics about which reasonable people may disagree. If Howard's statements were about matters that reasonable people disagree about— their opinions— have Plaintiffs stated a claim?

6. Plaintiffs allege that Howard made defamatory statements on June 2, and June 30, 2020. In Georgia, the statute of limitations for defamation is one year. Where Plaintiffs brought a defamation claim against Howard on July 13, 2021, more than one year after the alleged defamation occurred, is the claim untimely?

7. Plaintiffs assert their claims against Howard in his official capacity. The Eleventh Amendment bars suits against state officials sued in their official capacity for federal claims and for state-law claims brought in federal court. Does the Eleventh Amendment bar Plaintiffs' official capacity claims and state-law claims in federal court?

**FACTS AS ALLEGED IN PLAINTIFFS' SECOND AMENDED COMPLAINT[1]**

Plaintiffs originally brought suit on July 13, 2021. (Doc. 1). The Court gave leave for Plaintiffs to file an Amended Complaint, (Doc. 63), and leave to file a Second Amended Complaint. (Doc. 141). The relevant allegations against Howard are these: On May 30, 2020, the mayor of Atlanta, Keisha Lance Bottoms, established a 9:00 PM curfew in Atlanta due to the civil unrest that was occurring within the city. (Doc. 140 ¶ 23). That evening in Atlanta, the unrest grew violent, dangerous, and uncontrolled. (*Id.* ¶ 24). The situation was described as "chaos" and as a "powder keg." (*Id.* ¶¶ 24-28; Doc. 141-10 at 1). During this time, Atlanta's elected officials, including District Attorney Paul Howard, were presented with a uniquely dangerous and volatile situation for which there was no precedent in Atlanta's modern history. (*Id.*).

---

[1] Defendant Howard recites the allegations in the Second Amended Complaint as the Court must accept those allegations that are properly pled for the purposes of this Motion. Defendant's recitation of the allegations is not an admission. Defendant does not accept these allegations as true nor waive any defenses or objections.

At around 9:45 PM on May 30th, an incident occurred between the Plaintiffs and two young adults. This incident is detailed in the Amended Complaint. (Doc. 141 ¶¶ 29-41).

All three Plaintiffs were employed by the City of Atlanta as police officers. (*Id.* ¶¶ 5-7). A day after the incident, Plaintiffs Gardner and Streeter were served with disciplinary notices for adverse action and terminated by the city. (*Id.* ¶¶ 42-46). Plaintiffs allege that the procedure used by the City of Atlanta to terminate them violated several policies, rules, and regulations. (*Id.*).

On June 2, 2020, Howard, then district attorney for the Atlanta Judicial Circuit,[2] held a press conference concerning the incident and the civil unrest that was sweeping through Atlanta. (*Id.* ¶ 75)]. Based on videos of the incident, Howard instructed his investigator to obtain arrest warrants for the officers. (*Id.* ¶ 86). Howard described the events that took place as "terrifying" and described the actions of the Plaintiffs as "vicious." (*Id.* ¶ 80). Howard explained that his reason for seeking warrants for Plaintiffs' arrests was the use of "excessive force." (*Id.* ¶ 81). In prior iterations of their Complaints, Plaintiffs acknowledged Howard was merely stating his *"personal opinion"* in the press conference. (*See,* Doc. 1 ¶ 92; Doc. 63 ¶ 97 ("Defendant Howard exclaimed publicly his personal opinion that

---

[2] Plaintiffs are inconsistent in referring to the DA's Office. At times the Office is described as the "Fulton Judicial Circuit," and at other times as the "Atlanta Judicial Circuit." For simplicity, Defendant will refer to the Office as the "Atlanta Judicial Circuit," or simply the "DA's Office."

the Plaintiffs' actions were conclusively excessive force."). While Plaintiffs have removed this language hoping to defeat Howard's Motion to Dismiss, the statement is undeniably true.

On June 30, 2020, on the "expeditiously Podcast" titled "Politics as usual with Paul Howard and Christian Wise Smith," Howard discussed his opinion on why the City of Atlanta fired Plaintiffs and why he chose to charge them. (Doc. 141 ¶ 89). Plaintiffs allege that Howard's comments were made for political gain, were made with actual malice, and that Howard made several false statements.

Plaintiffs repeatedly allege that Howard undertook an investigation, but do not explain how. (*Id.* ¶¶ 77, 89, 99, 100, 154-155). Warrants for Plaintiffs' arrests were issued by Fulton County Superior Court Judge Belinda Edwards. [*Id.* ¶¶ 128-130; 145-148; 177-182; Docs. 141-6, 141-7, 141-8].

Each Plaintiff appealed their termination to the Civil Service Board and was given a hearing. [*Id.* ¶ 57]. After this opportunity for a hearing, Plaintiffs were reinstated to their positions with the Atlanta Police Department. [*Id.*].

## ARGUMENT AND CITATION TO AUTHORITY

Each of the Plaintiffs' claims is untenable for jurisdictional and substantive reasons. The doctrine of prosecutorial immunity is an absolute bar. In a half-hearted attempt to overcome prosecutorial immunity, Plaintiffs now insert unsupported, conclusory allegations that Howard "undertook an investigation."

(Doc. 141 ¶¶ 77, 89, 99, 100, 154-155). Plaintiffs do not even attempt to provide factual support for these conclusory statements.

Under the Eleventh Amendment to the United States Constitution, Howard has immunity for federal claims brought against him in his official capacity. The Georgia Constitution and the Georgia Tort Claims Act bar state-law claims against Howard.

Howard is also entitled to qualified immunity on all federal claims[3]. There is no rational basis for finding a constitutional violation where a district attorney exercises his discretionary authority to choose who to prosecute. The Officers' body cam recordings provide more than enough content to satisfy the low threshold for probable cause. After all, "[p]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity," and it "does not require overwhelmingly convincing evidence, but only reasonably trustworthy information."[4]

The Second Amended Complaint does nothing to challenge the fact that a district attorney has the discretion to choose whom to prosecute and that the decision is presumptively valid. The Second Amended Complaint relies only on conclusory statements about a lack of probable cause. Howard is entitled to

---

[3] It is not clear that Plaintiffs are still pursuing individual capacity claims against Howard since all language and references to individual capacity claims that were included in earlier iterations of the Complaint have been removed from the Second Amended Complaint. In any case, Plaintiffs' claims should be dismissed under either theory of liability.

[4] *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009).

qualified immunity on the fourth amendment seizure claim, the reputational liberty claim, and the conspiracy claim under § 1983. The state-law claims are also barred by the Georgia Tort Claims Act which prevents suits against state officials in their individual capacity.

Each claim also fails substantively. All are subject to dismissal under applicable law and based on the Plaintiffs' inability to articulate non-conclusory, factually supported allegations that support an inference of liability. For these reasons, Plaintiffs' causes of action should be dismissed.

## I.    MOTION TO DISMISS STANDARD

In a motion to dismiss under FRCP 12(b)(6), the Court must accept the complaint's factual allegations as true. *Hardy v. Regions Mort., Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006). To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly* at 555. "[U]nwarranted deductions of fact in a complaint are not admitted as true for the purposes of testing the sufficiency of [the plaintiff's] allegations". *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).

*Iqbal* states that, while a court must accept all factual allegations in a complaint, it need not accept legal conclusions as true. "Determining whether a complaint states a plausible claim for relief will...be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, it has not been shown that the pleader is entitled to relief. *Iqbal* at 679.

The Eleventh Circuit wrote that a complaint must "contain either direct or inferential allegations respecting all material elements necessary to sustain a recovery under some viable legal theory." *Randall v. Scott*, 610 F.3d 701, 716 n. 2 (11th Cir. 2010). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal* at 678.

An attack on a complaint for want of jurisdiction under Fed. R. Civ. P. 12(b)(1) or (2) is evaluated the same as a Fed. R. Civ. P. 12(b)(6) motion. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009). Jurisdictional challenges can also raise factual arguments, attacking "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings... are considered." *Id.* At the Motion-to-dismiss stage, allegations about the jurisdictional inquiry do not benefit from the presumption of truth that normally

attaches to a complaint, and disputed material facts are not relevant to the jurisdictional analysis. *Id.*

Plaintiff fails to state a claim since Howard has immunity from each count. Substantively, the Amended Complaint is supported by conclusory allegations hoping to defeat dismissal. The Second Amended Complaint's conclusory statements do not supply the factual support needed to sustain these claims.

## II.   HOWARD IS ENTITLED TO DISMISSAL OF ALL CLAIMS SINCE EACH IS BARRED BY APPLICABLE IMMUNITIES.

### A. <u>Howard is Entitled to Prosecutorial Immunity.</u>

In the seminal case of *Imbler v. Pachtman*, the Supreme Court held that a prosecutor enjoys absolute immunity for acts associated with the judicial process. 424 U.S. 409, 420 (1976). The question presented in *Imbler,* asked whether prosecutors have absolute immunity for claims arising under § 1983, for acts in furtherance of their prosecutorial duties. *Id.* 430- 31. The Eleventh Circuit has held that prosecutorial immunity extends to claims for conspiracy. *Smith v. Shorstein*, 217 F. App'x 877, 880-81 (11th Cir. 2007). Absolute immunity vitiates every claim that Plaintiff brings based on Howard's decision to prosecute.

To decide whether Howard has absolute immunity, the Court must determine whether the allegations concern acts associated with the prosecutorial function. Each of the claims concern Howard's decision to prosecute. Count Three, alleging false arrest under Georgia law, is based on Howard's initiation of a prosecution. (Doc. 141 ¶¶ 153-166). Count Four, alleging unreasonable seizure based on

Plaintiff's arrest, relates to Howard's prosecutorial discretion to commence a prosecution and Howard seeking an arrest warrant in furtherance of that goal. (*Id.* ¶¶ 168-171). Count Five, which asserts a deprivation of reputational liberty, is concerned with statements Howard made about initiating the prosecution and Plaintiffs' brief loss of employment. (*Id.* ¶¶ 173-186). Count Six, claims that Howard did not train his investigator, ostensibly on when it is proper to seek an arrest warrant. (*Id.* ¶¶ 189-191). In Count Eleven, Plaintiffs bring a civil conspiracy claim based on Howard's decision to prosecute the Plaintiffs. (*Id.* ¶¶ 214-217). Count Twelve, asserts the same claim as Count Eleven, but is brought under Section 1983. (*Id.* ¶¶ 220-222). And finally, in Count Thirteen Plaintiffs allege that Howard ratified his investigator's "tortious actions" because the investigator obtained an arrest warrant. (*Id.* ¶¶ 224-230). Each of these claims is intimately associated with the initiation of the prosecution and is barred by prosecutorial immunity.

Georgia state law on prosecutorial immunity mirrors federal law and is analyzed using the same framework. *See Windsor v. Huber,* Case No. 1:11-CV-2326-TWT, 2011 U.S. Dist. LEXIS 108012 * 3-5 (N.D. Ga. Sept. 21, 2011); *Robbins v. Lanier*, 198 Ga. App. 592, 593 (1991) ("[T]here is no question that a prosecutor's decision to file formal charges against an individual is an act intimately associated with the judicial phase of the criminal process"); *see also*, Ga. Const. Art. VI, § VIII,

¶ I ("District attorneys shall enjoy immunity from private suit for actions arising from the performance of their duties.").

**i.** Every Act Alleged of Howard was in the Scope of his Prosecutorial Duties.

Courts use the "functional approach" to determine whether a prosecutor is entitled to absolute immunity for a particular act. *Rivera v. Leal*, 359 F.3d 1350, 1353 (11th Cir. 2004). This approach looks to "the nature of the function performed..." Id. One of the quintessential prosecutorial functions is the "initiation and pursuit of criminal prosecutions," *Rivera*, 359 F.3d at 1353, and "other actions that are intimately associated with the judicial phase of the criminal process." *Hoffman v. Off. of the State Att'y,* 793 F. App'x 945, 950 (11th Cir. 2019). Courts have held that DAs are entitled to absolute immunity even where prosecutorial misconduct was alleged. *Id.* For example, courts have applied immunity where a prosecutor "fil[ed] information without investigation, fil[ed] charges without jurisdiction, fil[ed] a baseless detainer, offer[ed] perjured testimony, suppress[ed] exculpatory evidence, and threaten[ed] further criminal prosecutions." *Id.*

In *Capt. Jack's Crab Shack, Inc. v. Cooke*, the court recognized that acts like "securing judicial approval" of a warrant, even if "based on... false statements" in a "warrant affidavit," "clearly involve [a prosecutor's] role as an advocate for the state." 2022 U.S. App. LEXIS 26523, at *21 (11th Cir. 2022).[5] The *Capt. Jack's* court

---

[5] 2022 WL 4375364 (11th Cir. 2022).

recognized that "a prosecutor is absolutely immune for his presentation of... a motion for an arrest warrant [and a search warrant] to the court." *Id.* (citing *Kalina v. Fletcher*, 522 U.S. 118, 130 (1997)).

Thus, immunity turns on Mr. Howard's involvement in the initiation and pursuit of criminal prosecution. The most critical question for the Court is— when the allegations of misconduct are stripped away— what was the function of the prosecutor in each instance? Accepting Plaintiffs' allegations as true, they amount to a condemnation of Mr. Howard's choices regarding the initiation of a criminal prosecution and his decisions about the criminal prosecution. These are quintessential prosecutorial functions. The claims under the Fourth Amendment for Plaintiff's arrest, as well as the state-law claim for false arrest, are only attacks on Howard's initiation of a prosecution. And allegations that a prosecutor engaged in misconduct to initiate a prosecution are shielded by immunity. *See Hoffman,* 793 F.App'x at 950 (surveying cases in which prosecutorial misconduct was alleged but immunity applied).

Plaintiffs engage in a half-hearted attempt to defeat immunity using conclusory legal statements. The Second Amended Complaint states several times that Howard functioned as an investigator. Plaintiff does this because, in some cases, a prosecutor acting as an investigator is not entitled to immunity. Plaintiff does not even remotely satisfy the standard from *Iqbal* and *Twombly*. Plaintiff alleges that Howard "undertook first-instance investigations to determine probable cause for arrest, no different than the investigations typically undertaken by police," (Doc. 141 ¶ 77), and

that Howard was "acting in a manner no different from police officers investigating a suspected crime to discover probable cause and affect an arrest,'" (*Id.* ¶ 78; *see also, Id.* ¶¶ 79, 88-89, 99-100, 154-155). Plaintiffs never describe what this police-like "investigation" entailed, they repeat themselves throughout the Second Amended Complaint, affixing the equivalent of a blinking neon sign to ensure that the Court is aware they've alleged that Howard undertook an "investigation." But since *Iqbal* and *Twombly*, courts do not credit conclusory statements that merely recite the elements of a cause of action— or, in this case, a naked attempt to abrogate immunity. Case law recognizes this. Plaintiffs are not the first to try this approach.

In *Capt. Jack's*, the Eleventh Circuit addressed a plaintiff's attempt to defeat prosecutorial immunity through conclusory legal statements about "investigations":

> Looking to plead their way around [prosecutorial immunity], the [plaintiffs] pointed to certain "investigative" conduct in their complaint. The [plaintiffs] alleged, for example, that the prosecutors directed an illegal raid, insisted that the officers include the "fabricated evidence" in the warrant affidavit, and acted in their "investigative capacities." But the [plaintiffs] failed to include "enough facts" to 'plausibly allege that the prosecutors directed the search, fabricated evidence, or acted in an investigative capacity. For example, they don't tell us how the prosecutors "directed" any search, what the prosecutors did to "insist" on any false statements, or how they were acting in their "investigative capacities." After *Twombly* and *Iqbal*, we do not credit "conclusory allegations, unwarranted deductions of facts, or legal conclusions masquerading as facts."

*Capt.* Jack's, 2022 U.S. App. LEXIS 26523 at *21-22.

In *Rojas-Guevara v. Dunn*, the court held that a prosecutor seeking an arrest warrant was an act that "undeniably fell within her role as an advocate." Civil Action No. 2:17-CV- 255-RWS, 2019 U.S. Dist. LEXIS 233529, at *8 (N.D. Ga. Jan. 28, 2019).[6] The *Dunn* court recognized that the Eleventh Circuit holds that prosecutorial immunity bars Section 1983 claims arising out of a prosecutor's alleged signing of an arrest warrant without probable cause, withholding material evidence, and participating in a conspiracy to proffer perjured testimony. *Id.* at *7 (*citing Fullman v. Graddick*, 739 F.2d 553, 558-559 (11th Cir. 1984)).

The *Dunn* court also held that a prosecutor is entitled to absolute immunity for the factual investigation necessary to prepare a case. *Id.* at *9-10. In *Dunn*, the plaintiff asserted that the prosecutor acted as an investigator in performing a database search in deciding to bring charges. *Id.* In finding that prosecutorial immunity applied, the court wrote that "[a]ll [the prosecutor] did was obtain and examine information that was readily available." *Id.* at *10.

Like the plaintiffs in *Capt. Jack's* and *Dunn*, the Amended Complaint merely asserts that Howard functioned as an investigator without any factual support. Plaintiff alleges far less than the plaintiffs in *Capt. Jack's*. The greatest detail about the "investigation" that Plaintiff provides is to say that Howard conducted a "first-instance probable cause investigation" that was police-like. And like the database in *Dunn,* Howard merely reviewed the video recordings of the incident. Plaintiffs

---

[6] 2019 WL 10375618 (N.D. Ga. Jan. 28, 2019).

allegations have not come remotely close to abrogating the immunity that Howard is entitled to. Plaintiffs offer only "conclusory allegations, unwarranted deductions of facts, [and] legal conclusions masquerading as facts."

Howard is entitled to prosecutorial immunity. Plaintiffs have not abrogated the immunity by relying on bald legal conclusions. Counts Three, Four, Five, Six, Eleven, Twelve, and Thirteen are barred and should be dismissed.

**B.** **Plaintiff's Claims Are Barred By Eleventh Amendment Immunity And Official Immunity.**

The Eleventh Amendment issue must be addressed before a substantive resolution of the claims. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-101 (1998). The Eleventh Amendment bars suits against a state or one of its officials, absent a waiver by the state or a valid congressional override when the state is the real party in interest. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Unless jurisdiction is clearly found, appellate and trial courts should not address the substantive validity of the claims. *Bellerit v. U.S.*, 712 F.3d 543, 547 (11th Cir. 2013).

Immunity has not been waived for state law actions that are brought in federal court. Ga. Const. Art. I, § II, ¶ IX(f). The Eleventh Circuit has held the State has not waived its sovereign immunity on state-law claims brought in federal court. *See, e.g., Polite v. Dougherty Cnty. School System*, 314 Fed. Appx. 180, 184 (11th Cir. 2008).

Under Georgia law, the district attorney is an official of the State. *Mullinax v. McElhenney*, 672 F. Supp. at 1451; Ga. Const. Art. VI, § 8, ¶ I(a) ("There shall be a

district attorney for each judicial circuit, who be elected circuit-wide for a term of four years.").[7]

The Eleventh Circuit and district courts within the Circuit— including the Northern District of Georgia— have held that Georgia district attorneys are entitled to sovereign immunity. *Owens v. Fulton Cnty.*, 877 F.2d 947, 952 (11th Cir. 1989) (holding that Georgia prosecutors are state officials entitled to sovereign immunity when making decisions related to prosecutions); *Robertson v. Clayton Cnty.*, 2005 U.S. Dist. LEXIS 61973, at *3 (N.D. Ga. Aug. 25, 2005); *Skandalakis v. Geeslin,* 303 B.R. 533 (M. D. Ga. 2004) (a district attorney, as a state officer acting in his official capacity, is entitled to immunity under the Eleventh Amendment).

The federal claims against Howard in his official capacity (Counts Four, Five, Six,[8] and Twelve) and the state-law claims (Counts Two, Three, Eleven, and Thirteen) are barred under the Eleventh Amendment.

### C. Howard Is Entitled To Qualified Immunity.

Howard is entitled to qualified immunity for the federal claims against him in his individual capacity. Qualified immunity provides immunity from suit not just

---

[7] Throughout the Second Amended Complaint, Plaintiffs repeatedly assume that Howard was a Fulton County official (or was a County official for some purposes) with policy making authority. Since these allegations are for the County to respond to, not Howard, this brief will not address the issue except to say, the contention that district attorneys in Georgia are not independent from the counties their judicial circuits serve, belies a fundamental misunderstanding of how the state's judicial branch functions. This argument has no basis in fact or law and is meritless.

[8] Count Six is a negligent training claim brought under 42 U.S.C. § 1983. Plaintiffs do not explain where the authority for a Section 1983 negligent training claim derives from.

immunity from liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To receive qualified immunity, a public official must first show that he was acting "within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005).

Plaintiff claims that Howard sought an arrest warrant without probable cause, which violated the Fourth Amendment for Plaintiffs' arrests. Seeking arrest warrants and search warrants, and initiating prosecutions are part of a district attorney's discretionary function. *See Capt. Jack's Crab Shack, Inc. v. Cooke*, 2022 U.S. App. LEXIS 26523, at *26-27 (11th Cir. 2022) (holding that a district attorney is acting within his discretionary authority when initiating a prosecution, including seeking an arrest warrant).

If the defendant was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate. *Id.* (*citing Lee v. Farraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). To meet that burden, a plaintiff must show both (1) that he suffered a violation of a constitutional right and (2) that the right he claims was clearly established at the time of the alleged misconduct." *Id.* at *26-27. In assessing whether the law is clearly established, courts look to the law as it was interpreted at the time of the challenged conduct by the United States Supreme Court, the Eleventh Circuit, and the Georgia Supreme Court. *Id.*

In *Capt. Jack's*, the court— in deciding qualified immunity— analyzed a Fourth Amendment claim when the plaintiffs alleged that an "officer submitted a warrant affidavit with falsehoods that were made 'deliberately' or in 'reckless disregard for

the truth.'" *Id.* at *28. The court analyzed the question under *Franks v. Deleware*, 438 U.S. 154 (1978). "First, [the court] asks whether there was an intentional or reckless misstatement." *Capt. Jack's* at *28. "Second, [the court] examines the materiality of the information by inquiring whether probable cause would be negated if the offending statement was removed." *Id.*

"Probable cause to search exists where there is a fair probability that contraband or evidence of a crime will be found in a particular place. Even arguable probable cause is enough to show entitlement to qualified immunity." *Id.* The court must "examine the materiality of the information by inquiring whether probable cause would be negated if the offending statement was removed." *Id.* at *29. "Probable cause for *any* offense alleged in the search warrant affidavit will preclude a claim." *Id.* (*citing Madiwale v. Savaiko*, 117 F.3d 1321, 1327 (11th Cir. 1997) (officer entitled to qualified immunity where there was probable cause for only some offenses outlined in the warrant affidavit)). "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009). "Even seemingly innocent activity can be the basis of probable cause." *Id.* "Probable cause does not require overwhelmingly convincing evidence, but only reasonably trustworthy information." *Id.*

Plaintiffs allege that someone else— not Howard— applied for or submitted an arrest warrant. (Doc. 141 ¶ 159). The affidavits that were submitted are attached to the Second Amended Complaint. (Docs. 141-6, 141-7, 141-8). Although Plaintiffs

allege that the warrants were applied for with Howard's knowledge, there is no allegation that Howard was aware of what the affidavits contained. And even if he were aware, nothing in the affidavits is false. Plaintiffs merely challenge the conclusion that they used excessive force. The affidavits themselves are vanilla, containing no extraneous or hyperbolic language. They merely refer to the acts believed to be excessive force as the basis for the warrant. On the other hand, the Second Amended Complaint contains hyperbole couched as fact and the repeated accusation that no reasonable official could have believed there was probable cause. But the affidavits cannot be described as unreasonable. And the law requires "only a probability or substantial chance of criminal activity, not an actual showing." Under any analysis, the decision to initiate a prosecution and obtain a warrant was not constitutionally infirm.

The Supreme Court has held, where a video of an incident exists (and there are no accusations of doctoring or alteration), courts are entitled to give no weight to a party's allegations and can instead rely solely on the video evidence. *Scott v. Harris*, 550 U.S. 372, 378-380 (2007). Here, there is body cam video that captured the entire frightening ordeal. The contents of the video show a straightforward basis for a probable cause determination. Although reasonable people can agree on whether Plaintiffs should be convicted— as those in our community do— there is no

reasonable argument that the low bar for probable cause was not satisfied. Plaintiffs' claims against Howard are barred by qualified immunity.[9]

Howard is also entitled to qualified immunity for his comments to the press concerning the prosecution of Plaintiff raised in Count Five concerning deprivation of reputational liberty.

The Supreme Court has held that the "[e]xposure of the self to others in varying degrees is a concomitant of life in a civilized community. The risk of exposure is an essential incident of life in a society which places primary value on freedom of speech and of the press." *Paul v. Davis*, 424 U.S. 693, 701 (1976). The *Paul* Court held that the publication of a photo and name of a suspect, including the crimes he was accused of, did not violate the constitution. *Id.* Other courts have held that the exposure of a criminal defendant's name to the press and discussion of prosecution is a legitimate interest of the state: the state has an interest "in the accurate reporting of police activity, and to that end [a state officer] is free to advise the press about events related to a suspect's arrest, processing, and arraignment, including events that by their nature will rise to 'photo opportunities' and Kodak moments." *Caldarola v. Cnty. of Westchester*, 142 F.Supp. 2d 431, 443 (S.D.N.Y. Mar. 16, 2001).

### D.  State Tort Claims Against Howard Are Barred Under The Georgia Tort Claims Act.

The GTCA provides a limited waiver of immunity for torts against state agencies and officials, under the 1991 Amendment to the Georgia Constitution. A

---

[9] The raw, unedited video can be accessed here: https://youtu.be/HSRnPmIxryk

Georgia district attorney and his employees are considered employees of the State. *See Moseley v. Garrett*, 182 Ga. 810 (1936); 1971 Op. Atty. Gen. No. 71-173.1. A tort claim against a State employee, like Howard, is barred by sovereign immunity unless the claim falls within the waiver of sovereign immunity provided by the GTCA. O.C.G.A. §§ 50-21-20, *et seq.* Plaintiff has failed to follow the requirements of the Tort Claims Act, and the state-law claims are barred.

Under the Tort Claims Act, only the state government entity the state officer was acting for is properly named as a defendant and the state officer cannot be named individually. O.C.G.A. § 50-21-25(b). In other words, the claims may not be asserted against Howard.

The Tort Claims Act also requires an ante litem notice to be sent to proper Georgia entities, O.C.G.A. § 50-21-26(a). A copy of the *ante litem* notice and a receipt for its delivery to the Georgia Department of Administrative Services must be attached to the complaint. O.C.G.A. § 50-21-26(a)(4). If these conditions precedent are not met, the court lacks jurisdiction over the state law torts. O.C.G.A. § 50-21-26(a)(3). Failure to cure the conditions precedent within thirty days leads to dismissal. O.C.G.A. § 50-21-26(a)(4). Since Plaintiff has disregarded the strictly construed conditions precedent to suit, the state law torts are barred.

The state-law claims are also barred under the exception for discretionary acts and defamation. The Tort Claims Act contains exceptions for which the state has not waived its immunity. O.C.G.A. §§ 50-21-23(a); 50-21-24. Losses resulting from an official's discretionary acts are excepted from the Tort Claims Act. O.C.G.A. § 50-21-

24(2). A district attorney's decision about the initiation of a prosecution, including securing an arrest warrant, requires the exercise of discretion, deliberation, and judgment and constitutes a discretionary function under O.C.G.A. § 50-21-24(2). The exception also bars a claim for defamation. O.C.G.A. § 50-21-24(7).

The exception to the Tort Claims Act vitiates Plaintiff's claims for defamation, false arrest, ratification, and civil conspiracy. These claims should be dismissed.

### III.    EACH OF THE CLAIMS AGAINST HOWARD FAILS SUBSTANTIVELY.

Each claim asserted against Howard is untenable for substantive reasons as well. So, while each of the federal and state-law claims should be dismissed under the applicable immunities, the claims fail to state a claim under Fed. R. Civ. P. 12(b)(6).

### A.   <u>Plaintiff's Claim For The Deprivation Of Reputational Liberty Does Not Satisfy The Eleventh Circuit's Factors.</u>

To establish a procedural due process claim, a plaintiff must show the deprivation of a liberty or property interest protected by the due process clause. *Board of Regents v. Roth*, 408 U.S. 564, 92 S. Ct. 2701 (1972). Allegations of injury to reputation alone do not support a § 1983 claim for violating due process. *Paul v. Davis*, 424 U.S. 693, 701, 96 S. Ct. 1155 (1976) (reputation alone does not implicate any "liberty" or "property" interest sufficient to invoke the procedural protections of the due process clause). The defamation must accompany a constitutionally recognized injury to due process. This rule is often labeled the "stigma-plus" standard. *Cypress Ins. Co. v. Clark*, 144 F. 3d 1435, 1436 (11th Cir. 1998). The stigma-plus standard requires a plaintiff to show that the government

official's conduct deprived the plaintiff of a previously recognized property or liberty interest apart from damaging the plaintiff's reputation. *Paul* at 712. The rule is designed to prevent the due process clause from becoming an all-purpose constitutionalizing of state tort law. *Id.* at 701. Plaintiffs point to their termination as the "plus" of the stigma-plus test. [Doc. 141 ¶ 179]. Thus, the termination of employment is the only recognized due process injury that the Plaintiffs have alleged that a reputational injury can attach to under stigma-plus.[10] When reputational damage is sustained in connection with a termination, it may give rise to a procedural due process claim for deprivation of liberty. *Campbell v. Pierce Cty.* Ga., 741 F. 2d 1342, 1344 (11th Cir. 1984).

The Eleventh Circuit has developed a six-factor test to determine whether a plaintiff has a due process claim for the deprivation of reputational liberty. *Warren v. Crawford*, 927 F. 2d 559, 565 (11th Cir. 1991). To recover, a plaintiff must show:

1) a false statement;
2) of a stigmatizing nature;
3) attending a governmental employee's discharge;
4) was made public;
5) by the governmental employer;
6) without a meaningful opportunity for an employee name-clearing hearing.

---

[10] It appears in Paragraph 176 that Plaintiff's may also claim that false arrest can serve as the "plus" factor. This is never explained in the Second Amended Complaint and besides, the idea that there is not a constitutionally valid procedure available to redress claims of false arrest is baseless, as the volumes of case law on false arrest claims plainly evidence. And because the false arrest claim in the Second Amended Complaint is without merit, it cannot serve as a proxy for an actual procedural due process violation.

*Id.*

The hearing can be held either before or after the termination or publication of the defamation. *Harrison v. Wille*, 132 F. 3d 679, 683 n. 9 (11th Cir. 1998). Because Plaintiffs do not meet the fifth and sixth elements of this test against Howard the claims for deprivation of reputational liberty fail.

Howard is not the Plaintiffs' governmental employer. All Plaintiffs were employees of the Atlanta Police Department, making the City of Atlanta their employer. [Doc. 141 ¶¶ 5-7]. And Howard is not an employee of the City of Atlanta, he is the elected District Attorney for the Atlanta Judicial Circuit. [*Id.* ¶ 18]. Howard's lawful duties did not include the exercise of any authority over the Plaintiffs' employment status as police officers. *See generally*, O.C.G.A. § 15-18-6. Under the stigma-plus test, the defamatory statements <u>must be made</u> "by the governmental employer". *Warren* at 565 (emphasis supplied). Since Howard was not the Plaintiffs' employer, the fifth factor is not satisfied and the claim for the deprivation of reputational liberty fails.

Even if Howard could be considered the Plaintiffs' governmental employer, which he cannot, Plaintiffs would still fail to state a claim because they were given an opportunity for a name-clearing hearing. It is "only when the state refuses to provide a process sufficient to remedy the procedural deprivation [that] a constitutional violation actionable under § 1983 arise[s]." *McKinney v. Pete*, 20 F. 3d 1550, 1557 (11th Cir. 1994). It is the state's failure to provide adequate

procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives right to a federal procedural due process claim. *Id.* The Eleventh Circuit recognized that the state must have the chance to "remedy the procedural failings of its subdivisions and agencies in the appropriate fora – agencies, review boards, and state courts" before being subjected to a claim alleging a procedural due process violation.  This hearing can be held either before or after the termination or the publication of the defamation. *Harrison* at 683, n. 9.

All three Plaintiffs had a name-clearing hearing in front of the Civil Service Board.  [Doc. 141 ¶ 57].  And all three were reinstated by the Civil Service Board to their positions with the Atlanta Police Department. *Id.*  Plaintiffs could have filed a civil suit in state court to reclaim their jobs, which was another meaningful opportunity for the Plaintiff's to clear their names. The Civil Service Board hearings and ability to litigate the issue are each meaningful opportunities for a name-clearing hearing; opportunities which the Plaintiffs have benefited from. Plaintiffs' claim for the deprivation of reputational liberty does not satisfy *Crawford's* sixth element.

Howard was not the Plaintiffs' governmental employer and, regardless, all Plaintiffs have been given a meaningful opportunity for a constitutionally adequate hearing. Plaintiffs have failed to state a claim for deprivation of reputational liberty against Howard.

**B.** **Plaintiffs Fail To State A Claim For False Arrest Under State Law or For Unlawful Seizure Under Federal Law.**

Plaintiffs' claim for false arrest under state law and for unreasonable seizure related to Plaintiffs' arrests under federal law, both fail under the applicable immunities. Both false arrest and a Fourth Amendment seizure claim for arrest are analyzed using the same standard. *See, e.g., Cooke v. Brashears*, 2022 U.S. Dist. LEXIS 236543, at *12-17 (N.D. Ga. Dec. 22, 2022).[11]  The claims, however, also fail under substantive law.

False arrest or unlawful seizure related to an arrest is an allegation of "detention without legal process." *Wallace v. Kato*, 549 U.S. 384, 389 (2007). When an arrest is pursuant to a form of legal process, such as a warrant issued by a court, a cause for false arrest or unlawful seizure will not stand. Plaintiffs' claim for false arrest under state law and the Fourth Amendment alleges that Howard is liable for securing an arrest warrant without sufficient probable cause. (Doc. 141 ¶ 153, 157). Plaintiff concedes that the arrest was pursuant to a warrant issued by Fulton County Superior Court Judge Belinda Edwards. (Docs. 141-6, 141-7, 141-8). "The issuance of a warrant— even an invalid one as allegedly issued here— constitutes legal process, and thus, where an individual has been arrested pursuant to a warrant" there is no claim for false arrest. *Vandiver v. Meriwether Cnty., Ga.*, 325 F.Supp. 3d 1321, 1327 (N.D. Ga. 2018).

---

[11] 2022 WL 18426150 (N.D. Ga. Dec. 22, 2022).

Plaintiff's claim for false arrest and unlawful seizure both fail and should be dismissed.

## C. **The Civil Conspiracy Allegations Fail**.

Plaintiffs assert that Howard conspired with Defendant Thomas, an investigator at the DA's Office, in violation of Georgia and federal law. (Doc. 141 ¶¶ 214-217, 220-222 (Counts Eleven and Twelve)). Plaintiffs do not allege what this conspiracy sought to accomplish. (*Id.*). Plaintiffs merely assert that they were "arbitrarily deprived of life, liberty, or property guaranteed them by the Constitutions and laws of the United States and the State of Georgia." (*Id.* ¶ 217).

Section 1983 requires that a plaintiff show they were deprived of a federal right by a person acting under color of state law. *Harvey v. Harvey,* 949 F.2d 1127, 1130 (11th Cir. 1992). Section 1983 creates no substantive rights; it merely provides a remedy for deprivations of federal statutory and constitutional rights. *Whiting v. Traylor*, 85 F.3d 581, 583 (11th Cir.1996). Section 1983 does not supplant state tort law; liability is appropriate solely for violating federally protected rights. *Almand v. DeKalb Co.*, 103 F.3d 1510 (11th Cir. 1997). To assert conspiracy under § 1983, a plaintiff must show "an underlying actual denial of [his] constitutional rights." *GJR Invs, Inc. v. Cnty. of Escambia*, 891 F.2d 1555, 1563 (11th Cir. 1990).

In Counts Eleven and Twelve, Plaintiffs allege the same violations of state and federal law that are subject to the immunities discussed earlier. Since there is no underlying denial of constitutional rights, or state law violations, a claim for

conspiracy necessarily fails. Even if they could conspire, these claims are barred under prosecutorial immunity. Indeed, "[i]t would be cold comfort for a prosecutor to know that he is absolutely immune from direct liability for actions taken as prosecutor, if those same actions could be used to prove him liable on a conspiracy theory involving conduct for which he was not immune." *Rowe v. Ft. Lauderdale*, 279 F.3d 1271, 1282 (11th Cir. 2002).

Finally, when alleging a conspiracy, "[m]ore than mere conclusory notice pleading is required." *Fullman v. Graddick*, 739 F.2d 553, 556 (11th Cir. 1984). "It is not enough to simply aver in the complaint that a conspiracy existed." *Id.* at 557. "Conclusory allegations of agreement or conspiracy are insufficient." *Quality Auto Painting Ctr. Of Roselle v. State Farm*, 917 F.3d 1249, 1262 (11th Cir. 2019). Plaintiffs merely recite the elements of a conspiracy, including communications, but provides nothing beyond conclusory legal arguments "masquerading as facts." Plaintiffs do not make the required showing. For example, the Second Amended Complaint ambiguously contends that Howard and Thomas "either explicitly agreed…or tacitly agreed to and participated in the underlying course of action." (Doc. 141 ¶ 217). Under *Twombly* and *Iqbal*, Plaintiff fails to state a claim.

i. <u>Plaintiff's Claims Are Barred Under the Intracorporate Conspiracy Doctrine.</u>

"Under the intracorporate conspiracy doctrine, a corporation's employees, acting as agents of the corporation, are deemed incapable of conspiring among

themselves or with the corporation." *Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000). The Eleventh Circuit has repeatedly held that the doctrine applies to governmental entities. *Dickerson* at 767-68. "The reasoning behind the intracorporate conspiracy doctrine is that it is not possible for a single legal entity…to conspire with itself, just as it is not possible for an individual person to conspire with himself… [t]his doctrine has been applied not only to private corporations but also to public, government entities." *Grider v. City of Auburn*, 618 F.3d 1240, 1261 (11th Cir. 2016).

Plaintiff acknowledges the obvious in his Complaint: that the district attorney and his investigator, were both members of the DA's Office. (Doc. 141 ¶¶ 18, 20). Since both Defendants are members of the DA's Office, the conspiracy claims are barred under the intracorporate conspiracy doctrine.

### D. <u>Plaintiffs' Ratification Claim is Untenable.</u>

O.C.G.A. § 51-1-12 states:

> By ratification of a tort committed for his own benefit, the ratifier becomes as liable as if he had commanded that it be committed. A person ratifying a tort does not become liable, however, if the act was done to benefit a third person.

Since the underlying "torts" this claim relies on are legally untenable, Howard could not have ratified them. Second, the "tortious" acts that Plaintiff claims Howard ratified concern only the decision to seek an arrest warrant. (Doc. 141 ¶¶ 225-230). Thus, the acts that Plaintiff complains of enjoy the strongest protections available under the prosecutorial immunity doctrine: those acts done to initiate a

prosecution. Howard also enjoys sovereign immunity and immunity under the Tort Claims Act for this claim. Under any scenario, Plaintiffs fail to state a claim and the ratification action should be dismissed.

**E.  Plaintiffs' Defamation Allegation Fails to State a Claim.**

As pointed out earlier, Plaintiffs' claims for defamation are barred under sovereign immunity and the Tort Claims Act. Even if the cause of action was not barred, the statements that Plaintiffs complain of are not actionable.

Under Georgia law, a defamation action does not lie for a statement of opinion. *Gettner v. Fitzgerald*, 297 Ga.App. 258, 261 (2009). "[T]he expression of opinion on matters with respect to which reasonable men might entertain differing opinions is not libelous." *Kendrick v. Jaeger*, 210 Ga.App. 376, 277 (1993).

Plaintiffs object to Howard's purported statements made in a press conference and while sitting as a guest on a podcast. (Doc. 141 ¶¶ 84, 89). The statements that Plaintiffs attribute to Howard from the podcast are straightforward opinion speech. Howard purportedly begins by qualifying his statement as opinion: "Well, I-I just thought…" (*Id.* ¶ 89). Howard follows this up with his opinion on why Plaintiffs were terminated by the City of Atlanta. (*Id.*).

The same is true of the comments attributed to Howard at the press conference. Plaintiff's claim that the defamation included statements that [the

victims][12] were not in possession or had access to a firearm. (*Id.* ¶ 84). This statement is true. The victims did not possess a firearm. It is, of course, axiomatic that truth is an absolute defense to defamation. The other statements Plaintiffs object to— that Plaintiffs violated City of Atlanta Policies and Procedures, that the victims were innocent, and that the Plaintiffs committed multiple crimes— is the crux of the disagreement between Plaintiffs and Howard, as well as members of the community on both sides of the divide. (*Id.*). It is Howard's opinion that, based on the video evidence, the Plaintiffs used excessive force. If Howard is correct in his opinion of what took place, the use of excessive force violates policy and is a criminal act.

In sum, reasonable people might entertain different opinions of what the video shows and whether the Plaintiffs used excessive force. A simple internet search into this incident will reveal hundreds of news stories, blogs, Twitter comments, and videos, where reasonable citizens, attorneys, journalists, and commentators are expressing their opinions on whether the video shows excessive force.

Since the comments Plaintiffs claim to be defamation are only Howard's opinion on an issue of heightened public concern— police brutality— Plaintiffs do not state a claim, and the defamation action should be dismissed.

---

[12] Defendant merely uses "victims" as shorthand to refer to Ms. Pilgrim and Mr. Young since they were the individuals that Plaintiffs shot with a TASER during the incident.

i.      The Defamation Claim is Barred by the Statute of Limitations.

Under Georgia law, the statute of limitation for a defamation claim is one year. O.C.G.A. § 9-3-33. Plaintiffs' Second Amended Complaint alleges that Howard made defamatory comments during a press conference on June 2, 2020, [Doc. 141 ¶ 84], and on a podcast published on June 30, 2020 [*Id.* ¶ 89]. Over a year later, on July 13, 2021, Plaintiffs filed their initial Complaint. [Doc. 1]. Plaintiffs' defamation claims are barred by the statute of limitation and should be dismissed.

**F. The Negligent Training Claim Brought Under Section 1983 Does Not State A Claim.**

Plaintiffs purportedly bring suit for negligent training under Section 1983. Section 1983 requires that a plaintiff show they were deprived of a federal right by a person acting under color of state law. *Harvey*, 949 F.2d at 1130. Section 1983 creates no substantive rights; it merely provides a remedy for deprivations of federal statutory and constitutional rights. *Whiting*, 85 F.3d at 583. Section 1983 does not supplant state tort law; liability is appropriate solely for violating federally protected rights. *Almand,* 103 F.3d 1510. To assert a valid cause of action under Section 1983, a plaintiff must show "an underlying actual denial of [his] constitutional rights." *GJR Invs.*, 891 F.2d at 1563.

Negligent training is not a federal claim. It is found neither in federal statute nor the Constitution. Because Plaintiffs have alleged a cause of action that does not exist, the claim should be dismissed.

**CONCLUSION**

For these reasons, Defendant requests that the Court grant his Motion to Dismiss the Second Amended Complaint.

Respectfully submitted this 31st day of March, 2023.

HENEFELD & GREEN, P.C.

/s/ Noah Green
Noah Green
Georgia Bar No. 468138
*Attorney for Defendant Howard*

3017 Bolling Way NE, Suite 129
Atlanta, Georgia 30305
(404) 841-1275
ngreen@henefeldgreen.com

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), this is to certify that the foregoing has been

prepared using Book Antiqua 13-point font in compliance with Local Rule 5.1.

/s/ Noah Green
Noah Green
Georgia Bar No. 468138
*Attorney for Defendant Howard*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| MARK GARDNER, LONNIE HOOD, and IVORY STREETER, | § § § | |
| *Plaintiffs*, | § § | CIVIL ACTION NO. |
| v. | § § | 1:21-cv-02798-TCB |
| PAUL HOWARD et al., | § § | |
| *Defendants*. | § § § | |

---

## CERTIFICATE OF SERVICE

This is to certify that I have this day served counsel for the opposing parties with a copy of **DEFENDANT PAUL HOWARD'S MOTION TO DISMISS AND BRIEF IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**, by filing same with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

This 31st day of March, 2023.

HENEFELD & GREEN, P.C.

/s/ Noah Green
Noah Green
Georgia Bar No. 468138
*Attorney for Defendant Howard*

3017 Bolling Way NE, Suite 129
Atlanta, Georgia 30305
(404) 841-1275
ngreen@henefeldgreen.com