# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

MARK GARDNER, LONNIE HOOD, and IVORY STREETER,

        Plaintiffs,

v.

KEISHA LANCE BOTTOMS, *et al.*

        Defendants,

No.: 1:21-cv-02798-TCB

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT PAUL HOWARD'S MOTION TO DISMISS
## PRELIMINARY STATEMENT

Defendant's Motion to Dismiss (ECF Doc. No. 150) (hereinafter "Def. Br." or "Defendant's Motion"), is summarized almost perfectly by the "larger" issues which Defendant chooses to address, *id.* at 2-3, wherein Howard answers questions, utilizing facts contrary to those contained in the complaint, and then poses irrelevant rhetorical questions he has already answered. *Ibid.* This is not about whether a prosecutor acting in a prosecutorial role enjoys immunity—he does—rather this is about whether or not undertaking a first-instance probable cause investigation, equivalent to those taken by traditional law enforcement is prosecutorial—it is not, *see Buckley v. Fitzsimmons*, 509 U.S. 259, 274 ("A prosecutor neither is, nor should

1

consider himself to be, an advocate before he has probable cause to have anyone arrested"). The entire Motion is simply feckless because the Defendant willfully chooses to address irrelevant issues and to never accept the facts pleaded as true.

## STATEMENT OF FACTS

Plaintiffs pleaded, as is relevant to the instant motion, that Defendant Howard was acting in an investigatory capacity, SAC at ¶¶ 19, 76-78, 98-100, 155, or otherwise outside of his prosecutorial role, *see, e.g.*, *id.* at ¶¶ 83, 85, 146-49, or that he was acting in furtherance of her personal political goals, speaking to the press to benefit a bid for re-election, *see id.* at ¶¶ 19, 74, 76, 85, 90-91 140, 155, 163, 186, 225, not as a prosecutor, *see*, *e.g.*, *id.* at ¶ 19, 76-78 83-85, 90-100, 146-49, 155, 186. No prosecution in fact was ever brought. *Id.* at 107-08, 165. Further, Plaintiff pleaded that at times he was acting as a County actor supervising a County employee. *See id.* at ¶¶ 92-103, 184, 188-92, 92-102. In this position Defendant took actions, ratified acts, and conspired to secure the arrest of Plaintiffs, without probable cause, and to defame plaintiffs. *See generally id.* at ¶¶ 167-92. These actions were taken intentionally, with malice, to further Defendant's interests, *see e.g.*, *id.* at ¶¶ 19, 83, 85, 91, 139, 157-61, 163, 186, 214, 217, 221, 228, or for self-interested political gain. *See id.* at ¶¶ 19, 74, 76, 85, 90-91 140, 155, 163, 186, 225.

## LEGAL STANDARDS

To survive a motion to dismiss for failure to state a claim, the complaint must

give the defendant general notice under Federal Rule of Civil Procedure, Rule 8, which requires *only* "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This is a lenient standard which was adopted to simplify the pleading system; the Rule "was adopted to focus litigation on the merits of a claim" rather than on technicalities that could keep litigants out of court. *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 513-14 (2002). Keeping in mind this leniency, states of mind, such as intent or knowledge may be pleaded generally. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir.1997). Further, the Eleventh Circuit still accepts Rule 9(b) as written. *See U.S. ex Rel Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1224 (2012) (reversing 12(b)(6) dismissal for failure to properly apply 9(b) general allegation standards). Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.* 574 U.S. 10, 11 (2014) ("For clarification and to ward off further insistence on a punctiliously stated 'theory of the pleadings,' petitioners, on remand, should be accorded an opportunity to add to their complaint a citation to § 1983."). Under *Twombly*: "a well-pleaded complaint may proceed even . . . the facts alleged is improbable, . . . recovery is very remote and unlikely." *Id*. at 556 (cleaned up).  In reviewing a complaint under Rule 12(b)(6) it must be viewed in a light most favorable to plaintiff and all factual allegations are assumed true. *See Am. United Life Ins. Co.*

*v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007). Nothing is considered beyond the face of the complaint, *see Brooks*, 116 F.3d 1364, 1368 (11th Cir.1997), and the burden is upon the moving party to show *to a certainty* that the plaintiff is not entitled to relief. *Jackam v. Hosp. Corp. of Am. Mideast, Ltd*., 800 F.2d 1577, 1581 (11th Cir 1986).

## **ARGUMENT**

## I. **DEFENDANT HOWARD WAS NOT ACTING AS A PROSECUTOR.**

Plaintiffs Pleaded that Howard was not acting in his prosecutorial capacity and was not acting in furtherance of a prosecution. *See, e.g.*, FAC at ¶¶ ¶ 19, 76-78 83-85, 90-100, 146-49, 155, 186. The Defendant, simply ignores these inconvenient facts and the many inferences that flow from them. *See* Def. Br. at 5-6 (ignoring supporting facts and purposefully citing to conclusions based on these facts). This failure alone is fatal to Defendant's arguments and precludes entrance of a dismissal based on prosecutorial immunity. Plaintiff, however, will assume for the purposes of argument that Defendant is arguing the actions which he perpetrated were prosecutorial in nature as a matter of law—they simply were not, as discussed below. Further, this case does not, nor does the SAC state that it involves a prosecutorial investigation, or a decision whether or not to prosecute, or even prosecution. *Contra* Def. Br. at 9-10 (assuming facts contrary to those pleaded). This case has nothing to do with prosecution whatsoever. SAC at ¶¶ 107-08, 165. In the instant matter

Howard, and all employees, were involved in a first-instance probable cause investigation, typical of that undertaken by traditional law enforcement. *Id.* at ¶¶ 19, 76-78, 98-100, 155.

Moreover, the cases Howard cites simply do not hold what he believes them to hold. Take for instance *Cap't Jack's Crab Shack, Inc. v. Cooke*, 2022 U.S. App. LEXIS 26523, 2022 WL 4375364 at * 6 (Sept. 22, 2022). *Cook* involves prosecutors arguing a motion, which involves presenting evidence to a judge, *i.e.*, they were doing what lawyers and prosecutors do. *Cook* cites to *Kalina v. Fletcher*, 522 U.S. 118 (1997) which holds swearing to facts or acting as a witness is non prosecutorial, and no immunity is available, arguing those facts as a prosecutor is prosecutorial and affords immunity. *Id.* at 129-31. In *Kalina* the selfsame person swore to facts and then presented them in an information, a chagrining instrument to a court, the Supreme Court balkanized the actions and found the same prosecutor without immunity for swearing to facts and acting as a witness despite the fact that in presenting those selfsame facts to the Court as a prosecutor absolute immunity was available. *Id.* (holding where prosecutor swears to facts, even when connected with filing of an information, prosecutor is not acting as prosecutor and receives no absolute immunity). *Kalina* demonstrates conclusively that in swearing to facts in an arrest warrant, even a prosecutor, is afforded no immunity because the action is

most functionally equivalent to that of a witness, *i.e.*, a law enforcement officer or a layman. *Id.*

### A. Prosecutorial Immunity *only* attaches Where Acting as a Prosecutor.

Prosecutorial immunity is meant to benefit prosecutors acting as prosecutors, where there is nothing especially prosecutorial in what an actor is doing, there is simply no reason to afford absolute immunity. *See Imbler v. Pachtman*, 424 U.S. 409, 430 (1976) (leaving open the question of breadth of prosecutorial immunity); *Buckley v. Fitzsimmons*, 509 U.S. 259, 259-60 (1993) (refining *Imbler* and holding prosecutor enjoys no prosecutorial immunity when conducting investigative work or making statements to media); *Van de Kamp v. Goldstein*, 555 U.S. 335 (2009) (further refining the *Imbler* analysis and focusing on required legal knowledge and nature of required system and training). Quite frankly an honest reading of *Buckley* is all that is needed to see that the entire argument of Howard is meritless.

### B. Howard Did Nothing Which Was Functionally Prosecutorial.

Court's look to functions to determine whether a particular act falls within the scope of immunity; the functional test is aptly described in *Buckley*:

> When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is "neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other." *Hampton v. Chicago,* 484 F.2d 602, 608 (CA7 1973)  internal quotation marks omitted), cert. denied, 415 U.S. 917, 94 S.Ct. 1414, 39 L.Ed.2d 471 (1974). Thus, if a prosecutor plans and executes a raid on a suspected weapons cache, he "has no greater claim to complete immunity than

activities of police officers allegedly acting under his direction." 484 F.2d, at 608–609.

*Buckley*, 509 U.S. at 273-74

In essence the underlying purpose of a prosecutor enjoying absolute immunity is analogous to that of judges; to allow for prosecutors to fulfill their purpose without fear of derivative suits or harassment. *See Van de Kamp v. Godlstein*, 555 U.S. at 341-42. If a prosecutor acts in a capacity more akin to that of other state officials, they will only enjoy qualified immunity like other executive officials. *Ibid. Buckley*, conclusively held "[a] prosecutor neither is, nor should consider himself to be, an advocate *before he has probable cause to have anyone arrested*[.]" *Buckley v. Fitzsimmons*, 509 U.S. 259, 274 (1993) (emphasis added). Here Howard and his ilk were seeking probable cause to effect arrest, *i.e.*, they were acting before they had probable cause and therefore were not acting as prosecutors. *Id.* Moreover, Defendants argument—attempting to bootstrap a probable cause investigation onto a prosecution, even though none occurred here—has been flatly rejected by the *Buckley* Court. *Id.* at 260. *Buckley* holds in no uncertain terms that investigating to find probable cause is non-prosecutorial and that "[c]onvening a grand jury to consider the evidence their work produced does not retroactively transform that work from the administrative into the prosecutorial." *Id.* Finally, Howard held a press conference to announce the "results" of his probable cause investigation, again

this is simply *not a prosecutorial act*. *Buckley*, 509 U.S. at 278 ("At the press conference, Fitzsimmons *did not act in his role as advocate for the State*).

Howard in this case was performing acts normally conducted by police, not prosecutors, *i.e.*, acts where it would be neither "appropriate nor justifiable that, for the same act, immunity should protect the one and not the other." *Buckley*, 509 U.S. at 273. Further those actions were taken prior to the establishment of probable cause, to establish that cause in order to effect arrest; this *is*—simply as a matter of hard law is—non-prosecutorial and there is nothing that can be done after the fact to transform it into a prosecutorial task. *Id.* at 260, 274. Next, there is the securing of an arrest warrant based on false statements and omissions; again, an act regularly done by police and an act for which they receive qualified immunity. *See Malley v. Briggs*, 475 U.S. 335, 442-43 (1996) (squarely holding that swearing to a warrant not prosecutorial because too far removed from "judicial phase of criminal proceedings"); *see also Kalina v. Fletcher*, 522 U.S. 118 (1997) (acting as a witness and swearing to facts non-prosecutorial). There was nothing prosecutorial in this act nor was there anything that prevents a normal actor from carrying out such duties. *Buckley*, 509 U.S. at 273 (holding neither "appropriate nor justifiable that, for the same act, immunity should protect the one and not the other" where prosecutors actions could be taken by executive official). Then there would also be statements made to the press for which no immunity is enjoyed. *See Id.* ("There was no

common-law immunity for prosecutor's out-of-court statements to the press, and, under *Imbler,* such comments have no functional tie to the judicial process just because they are made by a prosecutor. Nor do policy considerations support extending absolute immunity to press statements")

*Rojas-Guevara*, does not undo the fact that this was quintessentially non-prosecutorial; it is factually distinct in material ways: *after indictment*, defendants presented a warrant to a judge in which and appears not to have acted as a fact witness. *Rojas-Guevara v. Dunn*, No. 2:17-CV- 255-RWS, 2019 U.S. Dist. LEXIS 233529, 2019 WL 10375618 *2 (N.D. Ga. Jan. 28, 2019). Again, it was a prosecutor acting as a prosecutor not as a fact witness akin to an executive officer.

### C. Howard Failed to Carry His Burden.

Howard had the burden of showing absolute immunity is justified and did not carry it. *Malley v. Briggs*, 475 U.S. 335, 340 (1986); *Buckley*, 509 U.S. at 269.

In the instant case, Defendant and actors under his supervision were not acting in a prosecutorial capacity; literally every action complained of that constituted a tort could have been undertaken by an executive official—for this reason Defendant should be afforded the same qualified immunity available to those officials.: a district attorney is not acting as a prosecutor where he swears to a warrant. *See Jones v. Cannon*, 174 F.3d 1271, 1284-85 (11th Cir. 1999) (citing *Malley v. Briggs*, 475 U.S. 335 (1986)). A district attorney is not acting as a prosecutor where he holds a

press conference. See *Van de Kamp*, 555 U.S. 335, 341-42 (2009) (citing *Buckley*, 509 U.S. at 277). A district attorney is not acting as a prosecutor where he acts as an investigator. *Buckley*, 509 U.S. at 273.

First, the actions complained of were *all* taken pre-indictment. The injuries arose from: investigation, the issuance of a warrant, and public pronouncements, all of which fall outside of the traditional ambit of absolute immunity*, see Van de Kamp*, 555 U.S. at 341-42.  Second, and critically, acts taken by Defendant on the campaign trail, to further his ill-fated re-election, are in no way prosecutorial, *id.* Mr. Howard's reelection cannot seriously be considered intimately involved in the judicial process. Third, actions taken in order to expedite an investigation already underway (by proper law enforcement actors)—presumably, the length of time required to conduct an adequate investigation would have prevented Mr. Howard from profiting from a promoting himself as being "tough on police" a stance he found politically advantageous. *Id.*

 It should be further noted, that because Howard never actually addresses what it is that he has done, he has completely failed to demonstrate that he was acting within the scope of his duties and therefore failed to shift the burden to Plaintiffs on a qualified immunity analysis. *Habert Intern., Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998) ("We apply a two-part analysis to a government official's assertion of qualified immunity. *First, the official must prove that the allegedly*

*unconstitutional conduct occurred while he was acting within the scope of his discretionary authority.* [Citation.] Second, *if the official meets that burden*, the plaintiff must prove that the official's conduct violated clearly established law.) (citing *Evans v. Hightower*, 117 F.3d 1318, 1320 (11th Cir.1997)).

## II.   <u>HOWARD FAILS TO DEMONSTRATE HE IS A STATE ACTOR.</u>

For Howards Eleventh Amendment immunity and GTCA immunity argument to work he needs to demonstrate that he was a state actor; he has not. District attorneys acting in a prosecutorial role are State actors, there is no question about this, but equally it is clear that Howard here was not acting as a prosecutor.

As stated above, Howard was acting not as a prosecutor, but as a first-instance investigator seeking probable cause.509 U.S. at 274. This is not novel law. Further, *Buckley* makes very clear that a person who holds a prosecutor cannot take part in a non-prosecutorial investigation and later immunize his behaviors by initiating a prosecution. *Id.* at 260. A close reading of *Buckley* makes clear that the separation between a prosecutorial investigation and a police-style investigation is the fact that prosecutorial investigations take place *after* first instance, law enforcement investigators determine probable cause. *Id.* at 274 (holding prosecutor has no role as state's advocate prior to first-instance investigators finding probable cause to arrest). Here, there is no question that Howard arrogated this *first-instance, probable cause* investigatory capacity from traditional law enforcement actors—indeed, he

undertook the investigation at the selfsame time as actual law enforcement agencies. This leads to a single inescapable conclusion: Howard and those acting under him were not acting in a prosecutorial role.

Moving forward, given that Howard was not acting in a prosecutorial capacity, the Defendant's legal argument unravels. A "Georgia district attorneys are state, not county, officials when exercising discretion in prosecutorial decisions." *Vandiver*, 325 F. Supp. 3d 1321, 1330 (N.D.Ga. 2018) (citing *McClendon v. May*, 37 F. Supp. 2d at 1371, 1377 (S.D.Ga. 1999). This said, *McClendon*, does not do any favors to the argument that a District Attorney acting in a role wholly divorced from his State duties remains a State actor: *McClendon* cites to *Lucas v. O'Loughlin*, 831 F.2d 232, 235 (11th Cir. 1987), which involved a state actor who was considered a county actor despite the fact that he was elected under state law; there the question hinged on county control and payment: "[a]lthough elected by virtue of state law, he was elected to serve the county as sheriff. In that capacity, he had absolute authority over the appointment and control of his deputies. His and their salaries were paid by local taxation and according to a budget approved by the county commissioners. We conclude, therefore, that his act was the act of St. Johns County." *Id.* at 235.

Plaintiffs readily accept that Howard was elected under State law, that in his actions as a State prosecutor he acts as a State actor, and that in that role as a prosecutor he represents the State and exercises State authority.

The problem here is that Howard was not acting as a State prosecutor. Rather, he was utilizing County funds to train and supervise County employees, engaged in non-prosecutorial tasks; indeed, tasks which have nothing whatsoever to do with the duties and powers entrusted to him by the State. Further, this was being done in a highly localized area, Fulton County, utilizing employees of the County who were subject to County Human Resources, County discipline, and County training. Given the above it appears as if the State has almost nothing to do with the particular function—indeed, it is not a State function or a function that a District Attorney is empowered to undertake under state law. GA CONST Art. 6, § 8, ¶ I(d). It is one that was delegated to Howard by the County. Further, the County at any point could have terminated those employees or the funding which allowed for their positions. Again, Howard was essentially the chief of an independent County-funded quasi police force that was focused on law enforcement activities rather than prosecutorial activities.

The question is in this role, as non-state-sanctioned law enforcement officer, is that power "more properly characterized as an effectuation the policy of the State []or as an effectuation of discretionary local duties in the administration of county government." *Van Ooteghem v. Gray*, 774 F.2d 1332 (5th Cir. 1985). Just like in *Van Ooteghem*, it seems clear that this is an exercise of discretion granted Howard by the locality and not the State. *Id.*

Again, Howard here could have been running a hospital, a youth camp, or a

safety training course: what he was doing was wholly distinct from his duties as a State prosecutor and it was done utilizing authority provided to him by the County and utilizing County employees and funds.

It seems clear that were the County to fund with County money and provide with County staffing a mental ward which falsely imprisoned people, the County would be liable as long as it was aware of a practice of doing so under *Monell*. Presumably, had the County delegated the power to run this asylum to Howard, he would be exercising County authority and be a County actor in running the insane asylum. There is no reason why the calculus should be different where he was running a quasi-police force with County funding.

Indeed, Howard's argument is largely stating that he is a State employee, period. There is no functional analysis. The "functional"-nature of this analysis has more recently been highlighted in *Grech v. Clayton County*, *Ga.*, 335 F.3d at 1332. In *Grech* the plaintiff mistakenly argued that the labeling of an official as a county or state official was dispositive; the *Grech* court flatly rejected the formalistic focus on language:

> In this appeal, plaintiff Grech's main argument is that sheriffs are county policymakers under § 1983 because Georgia's Constitution characterizes sheriffs as "county officers." Grech contends that Georgia's statutory and decisional law supports this "county officer" classification. The insurmountable hurdles for Grech are that, under *McMillian, we must focus on control, not labels*, and that, under Georgia law, counties lack authority and control over sheriffs' law enforcement functions.

*Id.* (emphasis added).

Here, as explained above, within this function it appears Howard is a County actor. Moreover, Howard never bothers to actually undertake a functional analysis and, without doing so, it is impossible for him to have demonstrated as a matter of law that in *this function* he is acting as a state official.

## III.   DEFENDANT'S FALSE ARREST ARGUMENT IS FRIVOLOUS.

First, actions based on section 1983 are not state-law torts; while often those torts are used as useful proxies, whether or not a certain seizure constitutes a tort in a particular state has nothing to do with whether or not the act deprives a party of a right secured by the Constitution. *Wallace v. Kato*, 549 U.S. 384, 387-88 (2007).

Second, Georgia defines a "false arrest" and it *requires* a legal process: "OCGA § 51-7-1 defines false arrest as '[a]n arrest under process of law, without probable cause, when made maliciously[.]' An arrest made pursuant to a warrant is an arrest "under process of law." *Smith v. Wal-Mart Stores East*, LP, 330 Ga. App. 340, 343 (1), 765 S.E.2d 518 (2014).  Howard manages to utilize common law false arrest while ignoring local law to claim that the state law claim is barred, and then moves on to erroneously state that there can be no unreasonable seizure. In fact, Defendant cites to a case that references this very principle. *See* ECF Doc. No. 150 at 26(citing *Wallace*, 549 U.S. at 387-88 (noting federal law always resolves questions involving section 1983 though state law analogies may be helpful)).

To move forward, *Wallace v. Kato* actually holds that a 1983 action based on false arrest accrues at the time of detention; it is a statute of limitations case which states that a false imprisonment or false arrest claim accrues once the tort is complete, *i.e.*, upon seizure, and ends when the process of arraignment begins. *Id.* at 390. Unlawful seizure claims are often based on material misstatements made to secure arrest warrants. *See, e.g.*, *Wilson v. Stroman*, 33 F.4th 202, 206 (5th Cir. 2022) (false arrest based on false statements presented in affidavit supporting issuance of warrant).  Further, *Jones v. Cannon*, 174 F.3d 1271, 1285 (1999), makes rather clear that a false arrest claim can be based on false statements:

> Furthermore, the law was clearly established in 1993 that the Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest in order to detain a citizen and, thus, that qualified immunity will not shield Detective Powers from liability for such false statements . . .

In short, false statements, and material omissions, were knowingly made to have an arrest warrant issued where there existed no probable cause and Plaintiffs were arrested; this states a claim for false arrest under section 1983 or an unlawful seizure claim under section 1983. *See Jones* 174 F.3d at 1285. Put simply, a police officer doing the same thing would not receive prosecutorial immunity, and therefore Defendant should enjoy none. *Buckley*, 509 U.S. at 273 (holding neither "appropriate nor justifiable that, for the same act, immunity should protect the one and not the other" where prosecutors actions could be taken by executive official).

Needless to say, under *Jones*, that a party cannot swear to falsities or base an arrest warrant on material omissions was clearly established law and no qualified immunity is available. 174 F.3d at 1285.

## IV.   Defendant Presents No Reason to Dismiss Conspiracy Claims.

Defendant's entire argument as it relates to the section 1983 requires his immunity arguments to succeed and they cannot. To begin, with the more generalized argument, there are facts alleged which allow a court to infer a tacit agreement as discussed *infra.*

The holding in *Dickerson*, to which Defendant cites, ECF Doc. No 150 at 29, is inapplicable where a party has a private interest at stake. *See Dickerson v. Alachua Cty. Comm'n,* 200 F.3d 761, 768 (11th Cir. 2000); *see also Grider v. City of Auburn*, 618 F.3d 1240, 1262 (11th Cir. 2016) (holding doctrine inapplicable where *the employee has an "independent personal stake"*). This very Court, citing to *Girder*, has found that an independent personal stake exists where an official acts on self-interest to further or preserve a career. *See Williams v. Fulton Cnty. Sch. Dist.*, 181 F.Supp.3d 1089, 1147 (N.D.Ga. 2016) ("it is inappropriate to dismiss a complaint that pleads significant factual material that supports the plausible inference that school officials may have covered up reports of abuse in order to *save their own careers*."). Defendant here undertook unconstitutional acts to *further his own career:* The doctrine is therefore not applicable.

Next, there are simply ample facts to demonstrate an agreement and conspiracy. *See, e.g.*, *McIntee v. Deramus*, 313 Ga.App. 653, 656 (2012) (holding conspiracy can be established where "two or more persons *in any manner, either positively or tacitly*, arrive at a mutual understanding . . .") (emphasis added).

> The law recognizes the intrinsic difficulty of proving a conspiracy. The conspiracy *may sometimes be inferred from the nature of the acts done, the relation of the parties, the interests of the alleged conspirators, and other circumstances.* To show conspiracy*, it is not necessary to prove an express compact or agreement to the parties thereto.* The essential element of the charge is the common design; but it need not appear that the parties met together either formally or informally, or entered into any explicit or formal agreement; nor is it essential that it should appear that either by words or by writings they formulated their unlawful objects. It is sufficient that two or more persons in any manner either positively or tacitly come to a mutual understanding that they will accomplish the unlawful design.

*Nottingham v. Wrigley*, 221 Ga. 386, 389 (1965) (emphasis added; cleaned up; citations omitted) Where one is to infer the existence of an agreement, which is most often the case, "[b]ecause civil conspiracy is by its very nature a secret endeavor" very seldom is it appropriate to enter summary judgment or a motion to dismiss. *Cf. Traub v. Washington*, 264 Ga.App 541, 546 (2003) (noting the highly fact specific inferences are best left to jury).

Defendant, literally, broadcasted that he was involved in an agreement to obtain arrest warrants without cause, there are more than enough facts to assume that there existed an agreement to deprive Plaintiffs of their constitutionally protected rights, and actions were taken. *See,* e.g., SAC ¶¶ 79, 86-88, 154, 156-57.

## V.    <u>SUBSTANTIVE CLAIMS ARE PLEADED.</u>

There is no question that swearing to false facts or omitting material facts to secure an arrest without probable cause violates the constitution. *Jones*, 174 F.3d at 1285. If this Fourth Amendment violation is coupled with a stigmatizing statement that the public would perceive, then there is a stigma plus-claim. *Marrero v. City of Hialeah*, 625 F.2d 499 (5th Cir. 1980) (finding stigma plus where "the defamation did not cause the violation of appellants' fourth amendment rights; *however, the public surely perceived the defamatory statements made by the police and Rashkind to be connected to the arrests and search and seizure*.") Plaintiff's did not plead loss of employment as a *plus*, SAC at 180-82, and Defendant cannot apply law which is inapposite to the *plus*, pretending that there is solely one avenue of liability—the plus can be any liberty or property interest and need not be government employment. Furthermore, *Marreo* clearly establishes this. *Id.*

To address a post-deprivation hearing: the purpose of a hearing is not to remedy the plus, but rather to cure the reputational injury, whether or not the judicial process worked or the firings were reversed does not address whether the reputational injury could be cleared or whether the process was adequate for name clearing. *See Johnston v. Borders*, 36 F.4th 1254, 1266 (11th Cir. 2022) ("the *hearing would not be for the purpose of saving her job; rather, it would be convened for the sole purpose of clearing her name*.") (emphasis added).

In *Johnston v. Borders*—an opinion which directly touches upon deprivation of procedural due process and the intersection of mandamus relief— the Eleventh Circuit held that mandamus would be inadequate to clear the plaintiff's name, where there was lack of adequate notice and statements made to the press. 724 F. App'x 762, 768 (11th Cir. 2018) (*per curiam*). The Circuit later clarified that the decision was based on the parties' briefing, specifically that the plaintiff contended that mandamus relief would be insufficient to remedy the plaintiff's claimed lack of notice and provide adequate chance to clear plaintiff's name. *Johnston*, 36 F.4th at 1266. Here to be clear, the Plaintiffs are contending that the state-remedies are simply inadequate to undo the harm wrought by the stigmatizing statements publicized world-wide and that there was grossly inadequate notice of both the termination and the defamatory statements accompanying the same.

While the second holding in *Johnston* emphasized it was "non-precedential" and that there was the potential for mandamus to provide adequate remedy, there is nothing in the opinion that would lead one to believe that mandamus relief *per se* provides an adequate name clearing remedy where there is wide public dissemination of the stigmatizing statement and that such is a matter of law immune from the facts pleaded. *Id*. at 1266 n.18. Further, Plaintiffs would urge this Court to apply the logic of other federal courts which have developed a sensible model for determining adequacy, *i.e.*, a proportional publicity requirement. *See Ganasekera v. Irwin*, 551

F.3d 461, 470-71 (6th Cir. 2009) (applying *Mathews v. Eldridge* balancing test and

requiring publicity commensurate with the publicity of the stigma).

> In order to satisfy due process, the university is required to offer
> Gunasekera a name-clearing hearing *that is adequately publicized to*
> *address the stigma the university inflicted on him.* The exact nature of
> that publicity depends on a fact-intensive review of the circumstances
> attending his case, and we leave to the district court the initial
> determination regarding the exact parameters of the name-clearing
> hearing due to Gunasekera.

> *Id.* at 471 (emphasis added).

Finally, Plaintiffs believe that the Defendant's argument must fail because he

simply ignores the possibility that in making statements to media outlets he acted as

a final policy maker whose acts are always in accordance with policy, because they

create policy, where the availability of post-deprivation remedies is of no importance

at all. *Hudson v. Palmer*, 468 U.S. 517, 532 (1984) (holding availability of post-

deprivation process inadequate where denial is pursuant to policy).

## VI.   <u>DEFENDANT DEFAMED PLAINTIFFS</u>

This should come as no surprise, but one cannot simply state, "in my personal

opinion he is a terrible human being who has violated multiple criminal statutes and

is being charged with those crimes by my office and they are guilty, but that's just a

personal opinion . . ." and magically not be liable for defamation.

To begin, stating that force used by a police officer was excessive is equivalent

to stating that he has acted unconstitutionally or in other words broken the law,

especially when coming from the mouth of *a prosecutor*.

Moving on Georgia's holdings regarding opinion, "[a] defamation action will lie only for a statement of fact. This is because a statement that reflects an opinion or subjective assessment, as to which reasonable minds could differ, cannot be proved false. As a result, a plaintiff who claims that a published opinion defamed him will generally be unable to carry his burden of proving the essential element of falsity. Still, there is no wholesale defamation exception for anything that might be labeled opinion." *Cottrell v. Smith*, 299 Ga. 517, 523 (2016) (quoting *Gettner v. Fitzgerald*, 297 Ga. App. 258, 261 (2009)) (cleaned up). Defamation will lie where, however,

> the words at issue[] charge the commission of a specific crime punishable by law. *Where the plain import of the words spoken impute no criminal offense*, they cannot have their meaning enlarged by innuendo. Indeed, the statement *must give the impression that the crime is actually being charged against the individual and couched in language as might reasonably be expected to convey such meaning to a hearer of the statement*; a vague statement or even a derogatory one does not amount to slander per se when a person cannot reasonably conclude from what is said that the comments are imputing a crime to the plaintiff.

*Id.* at 523 (cleaned up; emphasis added).

The statements here, especially when taken in context, certainly impute or connote that a crime was committed and indeed, later a crime would *actually be charged*. The statements certainly could lead a person to "reasonably conclude from what is said that the comments are imputing a crime to the plaintiff." *Id.* It is simply confusing to state that this could not lead a listener to conclude that Defendants are

imputing criminality to Plaintiffs. *See* SAC at ¶¶ 79-84 (stating that Plaintiffs committed crimes specified and cited crimes). There is simply no manner in which the statements are not actionable when viewed in context.

### VII.  HOWARD'S DERIVATIVE ARGUMENTS FAIL.

All of Howards other arguments require the existence of immunity or alternatively for there to be no underlying tort. They therefore are bound to fail.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court deny Defendant Howard's Motion to Dismiss.

Respectfully submitted this 27th day of April, 2023.

**LoRusso Law Firm, P.C.**
*/s/Lance J. LoRusso*
Lance J. LoRusso, Esq.
Georgia Bar No. 458023
LoRusso Law Firm, P.C.
1827 Powers Ferry Road, S.E.
Atlanta, Georgia 30339
P: 770-644-2738
F: 770-644-2379
lance@lorussolawfirm.com
*Attorney for Plaintiffs*

*/s/ Ken Davis*
Ken Davis
Georgia Bar No. 705045
LoRusso Law Firm P.C.
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

MARK GARDNER, LONNIE HOOD, and IVORY STREETER,

        Plaintiffs,

v.

KEISHA LANCE BOTTOMS, *et al.*

        Defendants,

No.: 1:21-cv-02798-TCB

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that the documents to which this certificate is attached have been prepared with one of the font and point selections approved by the Court in LR 5.1B for documents prepared by computer.

<u>/s/Lance J. LoRusso</u>
Lance J. LoRusso, Esq.
Georgia Bar No. 458023
LoRusso Law Firm, P.C.
*Attorney for Plaintiffs*

<u>/s/Ken Davis</u>
Ken Davis, Esq.
Georgia Bar No. 705045
LoRusso Law Firm P.C.
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| MARK GARDNER, LONNIE HOOD, and IVORY STREETER, <br><br> Plaintiffs, <br><br> v. <br><br> KEISHA LANCE BOTTOMS, *et al.* <br><br> Defendants, | No.: 1:21-cv-02798-TCB |

## CERTIFICATE OF SERVICE

I certify that I electronically filed the within and foregoing with the Clerk of Court using the CM/ECF system.

This 27th day of April, 2023.

*/s/Lance J. LoRusso*
Lance J. LoRusso, Esq.
Georgia Bar No. 458023
LoRusso Law Firm, P.C.
lance@lorussolawfirm.com
*Attorney for Plaintiffs*

*/s/ Ken Davis*
Ken Davis
Georgia Bar No. 705045
LoRusso Law Firm P.C.
ken@lorussolawfirm.com
*Attorney for Plaintiffs*