IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARK GARDNER; LONNIE
HOOD; and IVORY STREETER,

     Plaintiffs,

v.

KEISHA LANCE BOTTOMS;
PAUL HOWARD; GREG L.
THOMAS; ERIKA SHIELDS;
and FULTON COUNTY
GOVERNMENT,

     Defendants.

CIVIL ACTION FILE

NO. 1:21-cv-2798-TCB

# **O R D E R**

## I.  **Background**

This action involves Plaintiffs Mark Gardner, Lonnie Hood, and

Ivory Streeter's claims against various Defendants alleging violation of

their rights under color of law. In short, Plaintiffs—who were employees

of the City of Atlanta Police Department—were involved in an arrest on

May 30, 2020. They allege in their second amended complaint (the

operative pleading) that they were required to use force to effect the arrest because of third-party arrestees' actions. They allege that their actions complied with Atlanta Police Department ("APD") policy and were neither criminal nor grounds for termination. Yet their employment was indeed terminated. Plaintiffs allege that they were terminated without adequate notice and hearing, defamed in the media, arrested without probable cause, and irreparably harmed in their reputations.

The second amended complaint contains the following counts: (1) 42 U.S.C. § 1983 denial of equal protection against Defendants Erica Shields and Keisha Lance-Bottoms; (2) state-law defamation against Defendants Paul Howard, Shields, and Bottoms; (3) false arrest under Georgia law against Howard and Defendant Greg Thomas; (4) 42 U.S.C. § 1983 unlawful seizure in violation of Fourth Amendment against Howard, Thomas, and Defendant Fulton County Government; (5) 42 U.S.C. § 1983 deprivation of reputational liberty in violation of Fourteenth Amendment against Howard, Shields, and Bottoms; (6) 42 U.S.C. § 1983 negligent training against Howard and Fulton County;

(7) violation of rights secured under Georgia Constitution art. 1, § 1,

¶ 11 against Shields and Bottoms; (8) civil conspiracy against Shields

and Bottoms; (9) negligence against Shields and Bottoms;

(10) ratification against Bottoms; (11) civil conspiracy against Howard

and Thomas; (12) 42 U.S.C. § 1983 civil rights conspiracy against

Howard and Thomas; and (13) ratification against Howard.

Currently before the Court are the following motions: Thomas's

motion [144] to dismiss; Fulton County's motion [145] to dismiss;

Bottoms and Shields's motion [148] to dismiss; Bottoms and Shields's

motion [149] to take judicial notice; and Howard's motion [150] to

dismiss.

## II.   Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that

a complaint provide "a short and plain statement of the claim showing

that the pleader is entitled to relief[.]" This pleading standard does not

require "detailed factual allegations," but it does demand "more than an

unadorned, the-defendant-unlawfully-harmed-me accusation."

3

*Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012)

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

To survive a 12(b)(6) motion to dismiss, a plaintiff must plead

"enough facts to state a claim to relief that is plausible on its face." *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Chandler v. Sec'y of*

*Fla. Dep't of Transp.*, 695 F.3d 1194, 1199 (11th Cir. 2012) (quoting *id.*).

The Supreme Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads
> factual content that allows the court to draw the
> reasonable inference that the defendant is liable for the
> misconduct alleged. The plausibility standard is not akin
> to a "probability requirement," but it asks for more than a
> sheer possibility that a defendant has acted unlawfully.

*Iqbal*, 556 U.S. at 678 (citation omitted) (quoting *Twombly*, 550 U.S. at

556); *see also Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324–25 (11th Cir.

2012).

Thus, a claim will survive a motion to dismiss only if the factual

allegations in the complaint are "enough to raise a right to relief above

the speculative level." *Twombly*, 550 U.S. at 555–56 (citations omitted).

"[A] formulaic recitation of the elements of a cause of action will not do."

*Id.* at 555 (citation omitted). While all well-pleaded facts must be

4

accepted as true and construed in the light most favorable to the plaintiff, *Powell v. Thomas*, 643 F.3d 1300, 1302 (11th Cir. 2011), the Court need not accept as true the plaintiff's legal conclusions, including those couched as factual allegations, *Iqbal*, 556 U.S. at 678.

Accordingly, evaluation of a motion to dismiss requires two steps: (1) eliminate any allegations in the pleading that are merely legal conclusions, and (2) where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## III.  Discussion

### A.  Howard

Howard, the Fulton County District Attorney at the time, contends that the claims against him fail because (1) he is entitled to prosecutorial immunity for the claims against him in his individual capacity; (2) the claims are barred by the Eleventh Amendment (official-capacity claims) and the Georgia Tort Claims Act (state-law claims); and (3) the claims lack substantive merit.

Plaintiffs bring the following claims against Howard:[1] (1) state-law defamation; (2) state-law false arrest; (3) unlawful seizure in violation of the Fourth Amendment under 42 U.S.C. § 1983; (4) deprivation of reputational liberty under § 1983; (5) negligent training under § 1983; (6) state-law civil conspiracy; (7) civil rights conspiracy under § 1983; and (8) state-law ratification.

### 1. Individual Capacity Claims

As discussed below, most of the claims against Howard in his individual capacity are subject to dismissal based on absolute prosecutorial immunity. The only claims that survive this immunity are those related to Howard's alleged statements to the press. However, to the extent the claim for deprivation of reputational liberty is based on such statements, the claim fails on the merits.

### a. Prosecutorial Immunity

A prosecutor is entitled to absolute immunity for acts associated with the judicial process—acts in furtherance of their prosecutorial

---

[1] It is unclear whether Plaintiffs assert these claims against Howard in his individual or official capacity. The Court addresses both.

duties. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). This extends to claims for conspiracy. *Smith v. Shorstein*, 217 F. App'x 877, 880–81 (11th Cir. 2007).

There are two types of immunity: absolute and qualified. *Buckley v. Fitzsimmons*, 509 U.S. 259, 268–69 (1993). The Supreme Court applies a functional approach in determining which immunity applies to prosecutors, holding that prosecutors are entitled to absolute immunity for conduct that is "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. However, absolute immunity may not apply "when a prosecutor is not acting as an officer of the court, but is instead engaged in other tasks, say, investigative or administrative tasks." *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009) (quotation omitted).

In determining the border between the judicial phase of the criminal process and investigative tasks, the Supreme Court has held that absolute immunity applies to a prosecutor's actions "in initiating a prosecution and in presenting the [s]tate's case." *Imbler*, 424 U.S. at 431 (holding that the prosecutor was absolutely immune for his actions in

permitting a witness to give false testimony at trial and introducing an altered sketch into evidence).

Prosecutors also enjoy absolute immunity for courtroom advocacy such as "appearing before a judge and presenting evidence in support of a motion for a search warrant." *Burns v. Reed*, 500 U.S. 478, 491 (1991); *see also Hart v. Hodges*, 587 F.3d 1288, 1295 (11th Cir. 2009). A prosecutor "enjoys absolute immunity from allegations stemming from the prosecutor's function as advocate." *Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999).

However, "prosecutorial immunity does not apply when the prosecutor acts outside the . . . activities 'intimately associated' with the judicial process." *Hart*, 587 F.3d at 1296. For example, absolute immunity did not attach when a prosecutor was "advising the police in the investigative phase of a criminal case" because this was not "so intimately associated with the judicial phase of the criminal process" that it "qualifie[d] for absolute immunity." *Burns*, 500 U.S. at 493 (quotation omitted).

Nor did prosecutorial immunity bar claims where a prosecutor "fabricated false evidence" by "shopp[ing] for experts until they found one who would provide the opinion they sought" linking a bootprint from a murder scene to a suspect. *Buckley*, 509 U.S. at 262, 272–74 (noting that the prosecutor was acting more as "a detective or police officer"). And absolute immunity did not attach where a prosecutor testified in an affidavit in support of an application for an arrest warrant that there was probable cause for the arrest and "the only function that she perform[ed] in giving sworn testimony [was] that of a witness." *Kalina v. Fletcher*, 522 U.S. 118, 121, 131 (1997).

Howard contends that each claim against him concerns his decision to prosecute: the false arrest claim is based on his initiation of a prosecution; the claim for unreasonable seizure (based on Plaintiffs' arrest) stems from his prosecutorial discretion to commence a prosecution and his decision to seek an arrest warrant; the claim for deprivation of reputational liberty relates to statements Howard made about initiating the prosecution and Plaintiffs' temporary loss of employment; the claim for failure to train appears to stem from when it

is proper to seek an arrest warrant; the civil conspiracy claims are based on Howard's decision to prosecute; and the ratification claim is based on Howard's ratifying his investigator obtaining arrest warrants.

Howard contends that Plaintiffs' assertions that he acted as an "investigator" and undertook a "first-instance investigation" are conclusory and, devoid of other facts, are not entitled to the presumption of truth. The Court largely agrees. Indeed, it is unclear which acts supposedly constitute this investigation. However, to the extent Plaintiffs intend to refer to Howard reviewing the police bodycam video—as appears most likely—that argument fails.

Reviewing readily available evidence is part of the "factual investigation necessary to prepare a case" and falls within the prosecutorial function. *Rojas-Guevara v. Dunn*, No. 2:17-cv-255-RWS, 2019 WL 10375618, at *3 (N.D. Ga. Jan. 28, 2019), *aff'd*, 823 F. App'x 907 (11th Cir. 2020) (quoting *Mullinax v. McElhenney*, 817 F.2d 711, 715 (11th Cir. 1987)). The court there concluded that signing an arrest warrant without probable cause, withholding material evidence, and participating in a conspiracy to proffer perjured testimony fell within

the prosecutorial function; thus, claims based on those actions were barred by prosecutorial immunity. *Id.*

Indeed, the Eleventh Circuit has held that a conclusory pleading that a prosecutor acted as an investigator or performed an investigation was not entitled to the presumption of truth. *Capt. Jack's Crab Shack, Inc. v. Cooke*, Nos. 21-11112, 21-11114, 21-11113, 2022 WL 4375364, at *6 (11th Cir. Sept. 22, 2022) ("The problem is that '[t]he prosecutor[s'] actions at issue here—appearing before a judge and presenting evidence in support of a motion for a search warrant—clearly involve [their] role as advocate[s] for the [s]tate, rather than [their] role as administrator[s] or investigative officer[s].'" (quoting *Burns*, 500 U.S. at 491)).

The court noted that the plaintiffs in that case "pointed to certain 'investigative' conduct in their complaint" including "that the prosecutors 'directed an illegal raid,' 'insist[ed]' that the officers include the 'fabricated evidence' in the warrant affidavit, and acted in their 'investigative capacities'" but "failed to include 'enough facts' to 'plausibl[y]' allege that the prosecutors directed the search, fabricated evidence, or acted in an investigative capacity." *Id.* at 7 (quoting

*Twombly*, 550 U.S. at 557. Specifically, the court noted, the plaintiffs "don't tell us how the prosecutors 'directed' any search, what the prosecutors did to 'insist[ ]' on any false statements, or how they were acting in their 'investigative capacities.'" *Id.*

Ultimately, the court held that the plaintiffs' attempt to plead that the prosecutors had acted in their investigative capacities did not overcome prosecutorial immunity, noting that "[a]fter *Twombly* and *Iqbal*, we do not credit '[c]onclusory allegations, unwarranted deductions of facts[,] or legal conclusions masquerading as facts.'" *Id.* (quoting *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004)). The same reasoning applies here.

The bulk of Plaintiffs' claims against Howard are based on his initiation of the prosecution and seeking arrest warrants and are therefore barred by prosecutorial immunity.

On the other hand, the alleged statements made by Howard at a press conference are not entitled to prosecutorial immunity. *Buckley*, 509 U.S. at 278. The only two claims that appear to be based (fully or partially) on such statements are those for state-law defamation (count

two) and deprivation of reputational liberty pursuant to § 1983 (count five). As discussed below, however, those claims fail for other reasons.

### b.    Deprivation of Reputational Liberty

Count five of the amended complaint alleges that Howard is liable for the deprivation of Plaintiffs' reputational liberty because he deprived them of property rights in violation of the Fourteenth Amendment.

Mere reputation does not constitute a liberty or property interest sufficient to invoke the Due Process Clause. *Paul v. Davis*, 424 U.S. 693, 701 (1976). Instead, Plaintiffs must satisfy what is known as the "stigma-plus test"—they must establish defamation along with the violation of a more tangible interest. *Behrens v. Regier*, 422 F.3d 1255, 1260 (11th Cir. 2005). In determining what qualifies as a more tangible interest, courts examine whether state action significantly altered a right or status that was previously recognized by state law. *Id.*

To succeed on such a claim, Plaintiffs "must prove that (1) a false statement (2) of a stigmatizing nature (3) attending a governmental employee's discharge (4) was made public (5) by the governmental

employer (6) without a meaningful opportunity for employee name clearing." *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001). The Court concludes that Plaintiffs' complaint fails to plead the sixth requirement but instead demonstrates that they had multiple meaningful opportunities to clear their names.[2]

The requirements for a name-clearing hearing are largely flexible. Such a hearing can occur before or after the termination or publication. *Johnston v. Borders*, 36 F.4th 1254, 1272 (11th Cir. 2022). The ultimate requirements are that the claimant have notice of the charges against him along with the opportunity to refute those charges by cross-examination or independent evidence. *Campbell v. Pierce Cnty.*, 741 F.2d 1342, 1345 (11th Cir. 1984). The requirements are unquestionably satisfied here. Indeed, Plaintiffs had multiple opportunities to clear their names: (1) the opportunity to seek mandamus in the state court system pursuant to O.C.G.A. § 9-6-20 (which Plaintiffs chose not to do); (2) appealing their terminations without seeking mandamus (which

---

[2] This issue was briefed primarily in the context of Bottoms and Shields's motion to dismiss but applies equally to the claim against Howard.

Plaintiffs did); and (3) overturning the earlier personnel action (which Plaintiffs successfully did and had their jobs reinstated).

Specifically, the exhibits attached to the second amended complaint show that Gardner and Streeter were provided an opportunity to respond at 6:00 p.m. on May 31, 2020, but did not attend. Hood had the opportunity to respond at 1:00 p.m. on June 10 but also did not appear. Although Plaintiffs contend they did not receive adequate notice, they ultimately challenged their terminations and were reinstated by the Atlanta Civil Service Board.

The civil service board hearing that Plaintiffs received met the requirements of a name-clearing hearing. It is plain from the second amended complaint that Plaintiffs were given notice, the opportunity to cross-examine witnesses, and the opportunity to present independent evidence.

Plaintiffs point to a Sixth Circuit case, *Ganasakera v. Irwin*, 551 F.3d 461, 470–71 (6th Cir. 2009), which adopted a proportional publicity requirement to determine what level of publicity for the name-clearing hearing is required. Defendants contend that the Sixth Circuit's

approach is not appropriate here but, even so, the hearing was appropriate—with notice, cross-examination, and presentation of independent evidence.

Plaintiffs contend that "under the *Mathews*[3] balancing test, it strongly appears as if due process here was violated, even considering the availability of post-deprivation remedies." [161] at 15. However, Plaintiffs do not identify what specifically rendered their hearings inappropriate or what would be sufficient. Ultimately, Plaintiffs' argument appears to be that no amount of process could compensate them for the alleged wrongs here; this is contrary to Eleventh Circuit precedent.

And even if the hearings Plaintiffs received were in some way inadequate, the fact that they could have but chose not to seek mandamus relief dooms their claim. *See McKinney v. Pate*, 20 F.3d 1550, 1565 (11th Cir. 1994) (en banc). The state procedure need not provide all the relief available under § 1983; rather, it must be able to

---

[3] *See Mathews v. Eldridge*, 424 U.S. 319 (1976).

correct any existing deficiencies and provide Plaintiffs with the process that is due. *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000).[4]

The Court therefore concludes that Plaintiffs have not stated a claim upon which relief can be granted for deprivation of reputational liberty. At any rate, Howard would be entitled to qualified immunity.[5] In light of the Eleventh Circuit's holding in *Cotton* that Georgia's mandamus procedures provide an adequate opportunity for name-clearing, and the statement in *Johnston* that the contrary holding with

---

[4] The case to which Plaintiffs point in support of their argument that mandamus relief is insufficient does not support their contention. *See Johnston v. Borders* 36 F.4th 1254, 1266 (11th Cir. 2022) (citing *Johnston v. Borders*, 724 F. App'x 762 (11th Cir. 2018)). In the unpublished 2018 opinion, the Eleventh Circuit noted that a writ of mandamus was insufficient under Florida law to provide the plaintiff a chance to clear her name. And the Eleventh Circuit noted that the state court would have dismissed the state-court defamation claim because the sheriff was entitled to absolute privilege under Florida law. Indeed, a subsequent *Johnston* opinion noted that the "non-precedential conclusion" that the Florida mandamus procedures were inadequate as a name-clearing procedure "is dubious, though, considering that the writ of mandamus in Florida is available if there was an indisputable legal duty to perform the action, and no other adequate remedy was available." *Id.* at 1266 n.18 (citation and punctuation omitted).

[5] Even in his alleged statements to the press, the Court finds that Howard was acting within the scope of his discretionary authority. *See Buckley*, 509 U.S. at 278 ("Statements to the press may be an integral part of a prosecutor's job, see National District Attorneys Assn., National Prosecution Standards 107, 110 (2d ed. 1991), and they may serve a vital public function.").

respect to Florida mandamus procedure was dubious, Howard did not violate clearly established law.

To the extent Plaintiffs allege that notice was not adequate, they do not point to clear, binding Eleventh Circuit precedent on the issue. And to the extent Plaintiffs contend that the purpose of their hearing was simply to recover their jobs rather than to clear their names, the Court is not persuaded. As discussed above, the hearings they received met the Eleventh Circuit requirements of a name-clearing hearing.

Thus, Plaintiffs' counts three, four, five, six, eleven, twelve, and thirteen against Howard in his individual capacity will be dismissed.[6]

### 2. GTCA and Eleventh Amendment

Remaining are the claims against Howard in his official capacity and the defamation claim against him. As discussed below, the official-capacity claims are barred by the Eleventh Amendment, and the tort

---

[6] Further, although Plaintiffs acknowledge in their complaint that Howard did not draft the affidavit for an arrest warrant, personally swear to any of the affidavit's allegations, or present the affidavit to the Court himself, the response refers to Howard making false statements in the affidavit. Because Plaintiffs did not plead facts to support the argument made in the response brief, any claim based on such an argument—including those for false arrest and deprivation of reputational liberty—must fail.

18

claims—including the claim for defamation—are barred by the Georgia
Tort Claims Act ("GTCA").

The GTCA "constitutes the exclusive remedy for any tort
committed by a state officer or employee." O.C.G.A. § 50-21-25(a). "A
state officer or employee who commits a tort while acting within the
scope of his or her official duties or employment is not subject to lawsuit
or liability therefor." *Id.*

"The GTCA applies to actions against state employees in their
official and individual capacities; merely styling a suit against a public
officer as one brought against [him] personally does not deprive [him] of
any immunity to which [he] might otherwise be entitled under the
GTCA." *Smith v. Hatcher*, 516 F. Supp. 3d 1369, 1377 n.7 (S.D. Ga.
2021) (citing O.C.G.A. § 50-21-25(a); *Stephens v. Coan*, 825 S.E.2d 525,
528 (Ga. Ct. App. 2019)). The immunity applies "even when the officer
is accused of committing unauthorized torts that are intentional or
malicious." *Id.* at 1377 (citing *Ridley v. Johns*, 552 S.E.2d 853, 854 (Ga.
Ct. App. 2001)).

In addition, the Eleventh Amendment bars suits against a state or one of its officials absent state waiver or valid congressional override when the state is the real party in interest. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Specifically, the Eleventh Amendment bars claims under § 1983 against officials including district attorneys in their official capacities in federal court while functioning as an advocate for the government. *Williams v. Monroe Cnty. D.A.*, 702 F. App'x 812, 813–14 (11th Cir. 2017).

The State has not waived immunity from suit on state-law claims brought in federal court. *See, e.g.*, *Polite v. Dougherty Cnty. Sch. Sys.*, 314 F. App'x 180, 184 (11th Cir. 2008). And specifically, immunity is not waived on tort claims. O.C.G.A. § 50-21-23; GA. CONST. art. I, § II, ¶ IX(f).

Plaintiffs' sole argument that their state-law claims against Howard are not barred by the GTCA and the Eleventh Amendment is that Howard was acting as a county officer, not an officer of the state.

Generally, district attorneys in Georgia act as independent constitutional officers of the state notwithstanding that some funding

comes from individual counties. *See, e.g.*, *Owens v. Fulton Cnty.*, 877 F.2d 947, 951 (11th Cir. 1989). Employees of the district attorney's office are employees of the district attorney because only he can "supervise, hire, or fire employees of the district attorney" and the county is empowered only "to approve the 'manner and amount of compensation' for employees that was set out by the District Attorney." *Peppers v. Cobb Cnty.*, 835 F.3d 1289, 1297 (11th Cir. 2016) (citing GA. CONST. art. IX, § 2, ¶ I(c) and O.C.G.A. § 15-18-20(b)).

For the same reasons discussed above, despite Plaintiffs' conclusory allegations to the contrary, their second amended complaint demonstrates that Howard was acting within the scope of his employment and thus for the state, not the County. The federal claims against him in his official capacity are therefore subject to Eleventh Amendment immunity. And the state-law claims against him in both his individual and official capacities are barred by the GTCA.[7]

---

[7] In addition, the conspiracy claims fail for lack of an underlying constitutional violation and because of the intracorporate conspiracy doctrine. *See Rehberg v. Paulk*, 611 F.3d 828, 854 (11th Cir. 2010). Finally, without any underlying liability, the ratification claim is subject to dismissal.

The Court will therefore grant Howard's motion to dismiss.

## B.    Greg Thomas

Thomas was a criminal investigator employed by the Fulton County District Attorney's Office. On June 20, Howard instructed him to obtain arrest warrants against Plaintiffs. Those warrants were presented to a Fulton County Superior Court judge who signed off on them.

The claims against Thomas are as follows: (1) count three for false arrest pursuant to O.C.G.A. § 51-7-1; (2) count four for unlawful seizure pursuant to the Fourth Amendment via § 1983; (3) count eleven for civil conspiracy; and (4) count twelve for civil rights conspiracy pursuant to § 1983. Although it is not entirely clear from the face of the second amended complaint, the briefing assumes—as will the Court—that Thomas is being sued in both his individual and official capacities.

As discussed below, the claims against Thomas in his individual capacity are subject to dismissal based on absolute prosecutorial immunity. And the claims against him in his official capacity are barred by Eleventh Amendment immunity and the 1991 Amendment to the

Georgia Constitution and the Georgia Tort Claims Act. Further, the state-law claims against him in his individual capacity are barred by the GTCA.[8]

### 1.   Eleventh Amendment

For Eleventh Amendment purposes, an investigator for a district attorney is a state employee. *See Owens v. Fulton Cnty.*, 877 F.2d 947, 952 (11th Cir. 1989).[9]

Although Plaintiffs urge the Court to apply the factors set forth in *Manders v. Lee*, 338 F.3d 1304, 1309 (11th Cir. 2003), Thomas correctly asserts that there is no need to do so. Although *Manders* applies when a county office performs a limited state role, the district attorney's office and its employees in their official capacities are clearly established as

---

[8] The Court therefore need not address the qualified immunity arguments.

[9] Plaintiffs argue in their opposition brief that Thomas could possibly receive compensation by a local municipality or the Prosecution Attorneys' Counsel, or that it is conceivable that the County and the State could be joint employers of Thomas. However, they do not plead facts to support an argument that either of these scenarios is true. Further, as Thomas points out, the compensation issue does not affect Eleventh Amendment immunity for discretionary acts taken by Thomas at the district attorney's direction and as an agent of the district attorney's office. And the joint employer argument is normally applied only in an employment action. Plaintiffs do not point to any law to support their position that this would affect the outcome in a case involving an Eleventh Amendment issue.

state entities. Thus, there is no need to determine whether they were acting as an arm of the state in a specific instance.

The claims against Thomas in his official capacity are therefore barred by Eleventh Amendment immunity.

### 2.   Absolute Prosecutorial Immunity

The claims against Thomas in his individual capacity are barred by absolute prosecutorial immunity. His actions taken at the district attorney's direction were contemporaneous with and "intimately associated with the judicial phase of the criminal process," thus entitling him to absolute prosecutorial immunity. *See Imbler*, 424 U.S. at 430.

As discussed above, absolute prosecutorial immunity protects district attorneys, prosecutors, and their investigators from civil suits for various functions they perform as state or federal advocates in criminal matters. *Kalina*, 522 U.S. at 124. Preparing to initiate a judicial proceeding is covered. *Van de Kamp v. Goldstein*, 553 U.S. 335, 343 (2009).

Whether an act was wrongful, there were preferable alternatives, or the prosecutor had proper motives are not relevant in this context. *Neville v. Classic Gardens*, 141 F. Supp. 2d 1377, 1381 (S.D. Ga. 2001). Absolute immunity covers acts such as filing an information without investigation, filing charges without jurisdiction or probable cause, filing a baseless detainer, offering perjured testimony, suppressing exculpatory evidence, and refusing to investigate. *Hart v. Hodges*, 587 F.3d 1288, 1295 (11th Cir. 2009) (citation omitted).

A district attorney's investigator performing prosecutorial functions is entitled to absolute immunity. *See, e.g.*, *Files v. King*, 1:17-cv-1632-KOB-HNJ, 2018 WL 4326861, at *9 (N.D. Ala. July 31, 2018); *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1279 (11th Cir. 2002).

It is clear from the allegations in the amended complaint that Thomas's involvement consisted solely of following the district attorney's directions. He was an employee of the district attorney's office and maintained an office within that department, and his actions were prosecutorial rather than investigative because the charging decision was made by Howard.

25

Plaintiffs contend that this was a "front-line" investigation that took Thomas's actions outside the scope of prosecutorial functions. However, as Thomas asserts, the allegations in the operative pleading demonstrate that procuring the arrest warrant was not a preliminary investigative act but instead was "contemporaneous with and 'intimately associated with the judicial phase of the criminal process,' as specified by the Supreme Court in *Imbler v. Pachtman*." [164] at 5 (quoting 424 U.S. at 430).

Although Plaintiffs argue that *Buckley* counsels a different result, that case is factually distinguishable. Specifically, in *Buckley*, ten months elapsed between the conduct at issue and the prosecution. 509 U.S. at 275. In this case, by contrast, the arrest warrant was procured simultaneously with the initiation of the prosecution. Thus, the acts were inextricably intertwined with the initiation of the prosecution and not merely investigative or administrative functions. *See Kalina*, 522 U.S. at 129 (holding that preparing a motion for an arrest warrant was subject to prosecutorial immunity); *Rojas-Guevara v. Dunn*, 2:17-cv-255-RWS, 2019 WL 10375618, at *3 (N.D. Ga. 2019) (holding that a

26

prosecutor securing a bench warrant was entitled to prosecutorial immunity).

The state-law claims are equally barred by prosecutorial immunity. GA. CONST. art. VI, § VIII, ¶ I. Georgia state law entitles district attorneys and their agents to the same immunity as judges for acts within the scope of their jurisdiction. *Windsor v. Huber*, No. 1:11-cv-2326-TWT, 2011 WL 4436491, at *1 (N.D. Ga. Sept. 21, 2011). Relevant for the Court is whether the act or omission is intimately associated with the judicial phase of the criminal process. *Id.* (citation omitted).

Here, all state-law claims are barred by prosecutorial immunity. The complaint alleges that Thomas and Howard acted in concert in knowingly concealing and misrepresenting material and exculpatory facts that vitiated probable cause for arrest. All these are integral matters of the criminal process and are therefore actions for which Thomas is entitled to prosecutorial immunity.

In addition, for the same reasons discussed in the context of Howard's motion to dismiss, the state-law claims are barred by the GTCA.

Thomas's motion to dismiss will therefore be granted.

## C.   Fulton County

The second amended complaint asserts two counts against Fulton County: (1) unlawful seizure in violation of the Fourth Amendment under 42 U.S.C. § 1983, and (2) negligent training under § 1983. The alleged liability is based on acts taken by Howard, the district attorney.

Fulton County contends it is not liable because Howard was not a policymaker for the County and because it lacked actual or constructive knowledge of Howard's alleged violations.

### 1.   Whether Howard Acted for the County

With respect to whether Howard was a policymaker, Fulton County contends—and the Court agrees—that Plaintiffs invoke an incorrect legal standard to support the County's liability. Specifically, Plaintiffs employ the prosecutorial immunity analysis when they should use the *Monell* analysis. The former—discussed above with respect to

Howard's and Thomas's motions—provides absolute immunity to a prosecutor acting as an officer of the court but not when engaged in investigative or administrative tasks. *Imbler*, 424 U.S. at 430–31.

However, that is not the issue for the purposes of Fulton County's liability. Rather, a county cannot be held vicariously liable under § 1983 for the conduct of its employees unless the plaintiff can show a "municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978)). "The plaintiff[s] must also demonstrate that, through its *deliberate* conduct, the [county] was the 'moving force' behind the injury alleged." *Id.* at 404 (quoting *Monell*, 436 U.S. at 694).

Plaintiffs can establish a constitutional deprivation under § 1983 by identifying either "(1) an officially promulgated [Fulton County] policy, or (2) an unofficial custom or practice of [Fulton County] shown through the repeated acts of a final policymaker for [Fulton County]." *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (citing *Monell*, 436 U.S. at 690–91); *see also Mandel v. Doe*, 888 F.2d

783, 793 (11th Cir. 1989) ("Under this theory of municipal liability, the first step of the inquiry is to identify those individuals whose decisions represent the official policy of the local governmental unit.").

"This 'official policy' requirement [is] intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Grech*, 335 F.3d at 1329 n.5 (alteration in original) (emphasis omitted) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)).

The functional analysis test that courts use to determine whether a prosecutor was acting as a final policymaker for the county analyzes whether he was performing a municipality/county function or a state function when taking the relevant actions. *Teagan v. City of McDonough*, 949 F.3d 670, 675 (11th Cir. 2020). If he was acting as a state actor, the county cannot be held liable for his actions under § 1983. *Id.* Making this determination requires that the Court examine the relevant state law. *Id.*

In Georgia, prosecutorial powers are exercised through the attorney general. *Owens v. Fulton Cnty.*, 877 F.2d 947, 951 (11th Cir. 1989). When exercising his discretion in prosecutorial decisions, the district attorney is, therefore, not a county official but rather a state official acting on the state's behalf. *Id.* District attorneys' relationships to the counties in their circuit relate to "merely budgetary and administrative matters." *Id.* at 952. The Eleventh Circuit determined in *Owens* that claims of unconstitutional arrest warrant application and negligent training/supervision arose out of the district attorney's exercise of discretion in the prosecution of state offenses. *Id.*

O.C.G.A. § 15-18-1 et seq. confirms that district attorneys are state officials whose qualifications, duties, and salaries are determined by state law. Indeed, O.C.G.A. § 15-18-6(7) requires the district attorney "to advise law enforcement officers concerning the sufficiency of evidence, warrants, and similar matters relating to the investigation and prosecution of criminal offenses." And O.C.G.A. §§ 15-18-14.1 & -21 empower the district attorney to appoint investigators and outline those investigators' qualifications. O.C.G.A. § 15-18-40 establishes the

Prosecuting Attorney's Council, overseeing training prosecuting attorneys and assisting law enforcement agencies.

Based upon the abundance of authority so demonstrating, the Court finds that Howard was not acting as a final policymaker for Fulton County with respect to the claims against it. The claims against the County relate to Howard's decision to seek an arrest warrant against Plaintiffs and training or supervising of his employees/investigators. These are all acts done on behalf of the state.[10]

The claims against Fulton County are subject to dismissal on this basis.

### 2. Merits of Claims

In addition, a § 1983 claim against Fulton County requires Plaintiffs to allege facts to show that their constitutional rights were violated, that the county had a custom or policy constituting deliberate indifference to those rights, and that the policy or custom caused the

---

[10] The Court is not persuaded by Plaintiffs' speculative argument regarding possible payment by the county.

violation. *Marantes v. Miami-Dade Cnty.*, 649 F. App'x 665, 672 (11th Cir. 2016).

With respect to unlawful seizure, Plaintiffs have failed to allege a custom or policy: they have not pointed to any officially promulgated county policy to exercise unlawful seizure and, far from showing repeated acts, they point only to the alleged incident against themselves.

With respect to negligent training, the county may be liable only when its official policy causes a constitutional violation; there is no respondeat superior liability in this context. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). Plaintiffs may demonstrate failure to train against the County by showing its deliberate indifference to their rights. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Mere negligence—even gross negligence—does not rise to the level of deliberate indifference. *See Franklin v. Curry*, 738 F.3d 1246, 1250 (11th Cir. 2013). Plaintiffs have alleged only that it was negligent in training employees of the district attorney's office; they do not plead

gross negligence or recklessness. Thus, they fail to allege a sufficient basis for municipal liability.[11] [12]

In sum, the Court will grant Fulton County's motion to dismiss.

### D.   Bottoms and Shields

Bottoms and Shields contend that all the claims against them are subject to dismissal. Plaintiffs' claims against these two Defendants are (1) violation of the Equal Protection Clause of the Fourteenth Amendment (by being treated differently than other similar situated officers) pursuant to § 1983; (2) state-law defamation; (3) deprivation of reputational liberty in violation of the Fourteenth Amendment pursuant to § 1983; (4) civil conspiracy; (5) Georgia state-law Equal

---

[11] Even if Plaintiffs could overcome this failure, they do not show the County's knowledge of a need and deliberate choice not to take action. *See Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1293 (11th Cir. 2009). The allegations in the second amended complaint to which they point do not support their argument to the contrary.

[12] In the conclusion of their opposition brief, Plaintiffs request that, if the Court were to grant Fulton County's motion to dismiss, it do so with leave to amend. Such a statement does not suffice to constitute a motion for leave to amend. Even if it did, Plaintiffs have been given multiple opportunities to amend their complaint. The Court will not continually grant amendment in response to every motion to dismiss filed by Defendants.

Protection; (6) ministerial act negligence; and (7) ratification (against only Bottoms).

Bottoms and Shields contend that they are entitled to qualified immunity on the federal claims against them.

Section 1983 creates no substantive rights. *See Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Rather, it provides a vehicle through which an individual may seek redress when his federally protected rights have been violated by an individual acting under color of state law. *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994).

To state a claim for relief under § 1983, Plaintiffs must satisfy two elements. First, they must allege that an act or omission deprived them of a right, privilege, or immunity secured by the U.S. Constitution. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). Second, they must allege that the act or omission was committed by a state actor or a person acting under color of state law. *Id.*

"Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known.'" *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

To claim qualified immunity, a defendant must first show she was performing a discretionary function. *Moreno v. Turner*, 572 F. App'x 852, 855 (11th Cir. 2014). Although Plaintiffs dispute this, the Court finds that Bottoms and Shields were acting within the scope of their discretionary authority.

To determine whether a government employee was acting within her discretionary authority, the Court must examine whether she was performing a legitimate job-related function (in other words, pursuing a job-related goal) through means within her power to utilize. *Holloman ex rel. Holloman*, 370 F.3d 1252, 1266 (11th Cir. 2004). The acts at issue are Plaintiffs' terminations and the press/media releases. Although Plaintiffs contend that Defendants did not act within the scope of their discretionary authority because their acts violated the law, this contention misunderstands the law. The scope of Defendants' discretion

is distinct from whether they violated the law. *Sims v. Metropolitan Dade Cnty.*, 972 F.2d 1230, 1236 (11th Cir. 1992).

It is clear the terminations were job-related functions pursuing job-related goals. And the Court agrees with Defendants that speaking with the media was part of their employment. Given the prevalence of press conferences and public statements, particularly in a situation such as that at issue here, with civil unrest and a great deal of publicity, such conferences were not irregular. Defendants were authorized to make such statements. The documents to which Defendants point—the subject of their request for judicial notice—support this outcome.[13] Atlanta City Code § 2-181; Executive Orders 2020-92, 94, and 96; Atlanta City Code § 98-126(b)(1).

"Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply." *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012)

---

[13] Bottoms and Shields's request [149] for judicial notice is granted. Although Plaintiffs object to the documents while responding to Bottoms and Shields's motion to dismiss, they did not object to the request for judicial notice. The Court takes judicial notice of the documents referenced therein.

(quoting *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009)).

A plaintiff demonstrates that qualified immunity does not apply by showing "(1) the defendant violated a constitutional right, and (2) [the] right was clearly established at the time of the alleged violation." *Moreno*, 572 F. App'x at 855 (quoting *Whittier v. Kobayashi*, 581 F.3d 1304, 1308 (11th Cir. 2009)). The "clearly established" requirement may be met by one of three showings: (1) a materially similar case has already been decided; (2) an accepted general principle should control the novel facts of the case with obvious clarity; or (3) the conduct in question so obviously violated the Constitution that no prior case law is necessary. *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204–05 (11th Cir. 2012).

The Court will examine each of Plaintiffs' § 1983 claims against Bottoms and Shields to determine whether Defendants violated Plaintiffs' clearly established constitutional rights.

### 1.    Equal Protection

Plaintiffs allege that they were subject to disparate and discriminatory treatment by being terminated without a thorough investigation and in violation of the City of Atlanta's ordinances and by being wrongly disciplined and terminated.

Bottoms and Shields contend that the equal protection claim fails against them for two reasons: (1) the claim is improperly pleaded, and (2) a rational basis existed for their actions.

"The Equal Protection Clause of the Fourteenth Amendment states that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (citation omitted).

Plaintiffs do not plead that they are members of a specific protected class or the existence of any specific comparators. "Rational basis review . . . applies to equal protection challenges concerned with a distinction between two groups drawn without reference to a protected

class, as is the case here." *Cook v. Bennett*, 792 F.3d 1294, 1301 (11th Cir. 2015) (citing *City of Cleburne*, 473 U.S. at 440).

Problematic for Plaintiffs is the fact that they fail to identify comparators. The law does not require them to specifically plead the identity of any comparator, but Plaintiffs do not even allege the characteristics of a person or group who allegedly were treated more favorably than they were. Rather, they allege that "[e]mployees who were not publicly reviled, or subject to then ongoing public protests" but were accused of using excessive force were treated more favorably. [141] ¶ 120. They do not allege facts to support this statement.

Plaintiffs have failed to carry their burden. *See, e.g.*, *Bah v. Little*, No. 1:13-cv-2571-WSD, 2014 WL 4230095, at *4 (N.D. Ga. Aug. 26, 2014) ("Plaintiffs allege that Defendants' dislike of non-Americans motivated their decision to enter Plaintiffs' home. Plaintiffs also allege that Defendants would not have conducted themselves in the same manner if Plaintiffs had more 'American' sounding names. While the Court will construe reasonable inferences in Plaintiffs favor, "'unwarranted deductions of fact" are not admitted as true in a motion

to dismiss.' Plaintiffs do not provide any facts to support their speculative claim about Defendants' motives." (citations omitted)); *Phillips v. City of Atlanta*, No. 1:15-cv-3616-TWT-RGV, 2016 WL 5429668, at *8 (N.D. Ga. July 29, 2016).[14]

And even if Plaintiffs had pleaded a tort, there is a rational basis for Defendants' actions. As Bottoms and Shields point out, they "acted with discretion and terminated the officers, accused of excessive force at a time when police conduct was front and center of the public's mind" when they "were in the spotlight and their actions were publicized and affected the public perception." [165] at 6.

Because Plaintiffs have failed to plead a constitutional violation, this claim will be dismissed.

### 2.   Deprivation of Reputational Liberty

Count five of the amended complaint alleges that Bottoms and Shields are liable for the deprivation of Plaintiffs' reputational liberty

---

[14] The case upon which Plaintiffs rely, *Williams v. Secretary for Department of Corrections*, 131 F. App'x 682, 686 (11th Cir. 2005) (per curiam), predates *Twombly* and *Iqbal*.

by depriving them of property rights in violation of the Fourteenth Amendment.

For the same reasons discussed above in the context of Howard's motion to dismiss, Plaintiffs have failed to plead facts to support that they were not provided the opportunity for a name-clearing hearing. Therefore, this claim will be dismissed.

### 3.    Conspiracy

Because the underlying federal claims fail, the conspiracy claim—to the extent based on federal law—fails as well. In addition, Plaintiffs do not allege facts to support their claim that Bottoms and Shields worked together and in concert to conspire to deprive them of rights. *See, e.g.*, *Bivins Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc.*, 140 F.3d 898, 912 (11th Cir. 1998) (noting that an action for civil conspiracy generally requires proof of an agreement between individuals to achieve an illegal objective, an overt act in furtherance of that objective, and a resulting injury). Although Plaintiffs point to allegations that Bottoms and Shields took certain actions jointly, they

fail to plead facts to allege that these Defendants worked in concert to agree to and act in furtherance of an illegal objective.

This claim, to the extent based on federal law, will be dismissed.

### 4.   State-Law Claims

Finally, Bottoms and Shields are entitled to official immunity with respect to Plaintiffs' state-law claims against them. Plaintiffs assert five claims against Bottoms and Shields arising under state law: count two, alleging that Bottoms and Shields defamed Plaintiffs; count seven, alleging that Bottoms and Shields denied Plaintiffs equal protection rights under the Georgia Constitution; count eight, alleging that Bottoms and Shields conspired to deny Plaintiffs their rights; count nine, alleging that Bottoms and Shields were negligent in failing to follow various policies and ordinance; and count ten, that Bottoms ratified tortious conduct committed by Shields. Bottoms and Shields move to dismiss these counts on the grounds of official immunity.

The state constitutional provision governing official immunity provides as follows:

> [A]ll officers and employees of the state or its departments and agencies may be subject to suit and may be liable for

43

> injuries and damages caused by the *negligent performance of, or negligent failure to perform, their ministerial functions* and may be liable for injuries and damages if they act with *actual malice or with actual intent to cause injury in the performance of their official functions* . . . .

GA. CONST. art. I, § 2, ¶ 9(d) (emphasis added). The Supreme Court of Georgia has held that the term "official functions" refers to "any act performed within the officer's or employee's scope of authority, including both ministerial and discretionary acts." *Gilbert v. Richardson,* 452 S.E.2d 476, 483 (Ga. 1994). Accordingly, under Georgia law, "a public officer or employee may be personally liable only for ministerial acts negligently performed or acts [ministerial or discretionary] performed with malice or an intent to injure." *Cameron v. Lang,* 549 S.E.2d 341, 344 (Ga. 2001). "In other words, public officials are immune from damages that result from their performance of discretionary functions, unless those functions were undertaken with malice or intent to cause injury." *Carter v. Glenn,* 548 S.E.2d 110, 112 (Ga. Ct. App. 2001).

Here, all alleged actions underlying the claims against Bottoms and Shields were discretionary—they related to these Defendants'

official duties and powers in the time of emergency. Moreover, the

Georgia Court of Appeals "has consistently held that the operation of a

police department, including the degree of training and supervision to

be provided its officers, is a *discretionary governmental function* as

opposed to a ministerial, proprietary, or administratively routine

function." *Harvey v. Nichols,* 581 S.E.2d 272, 276–77 (Ga. Ct. App.

2003) (collecting cases) (emphasis added); *see also Carter,* 548 S.E.2d at

113 (indicating that the general decision to hire an officer was

discretionary while the duty to conduct a background check was

ministerial because it was required by policy). Thus, count nine must be

dismissed because Plaintiffs have failed to identify any specific non-

discretionary, ministerial duties that Bottoms or Shields were negligent

in performing.

The remaining state law counts against Bottoms and Shields must

also be dismissed because the Court is not persuaded by Plaintiffs'

conclusory allegations of actual malice. For purposes of official

immunity, "'actual malice' requires a deliberate intention to do wrong,

and denotes express malice or malice in fact. It does not include willful,

wanton or reckless conduct or implied malice. Thus, actual malice does not include conduct exhibiting a reckless disregard for human life." *Daley v. Clark,* 638 S.E.2d 376, 386 (Ga. Ct. App. 2006).

In response to Bottoms and Shields's argument that the second amended complaint does not adequately allege actual malice, Plaintiffs cite to Federal Rule of Civil Procedure 9, which states, "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally," in contrast to the heightened pleading standard required to allege fraud. This is an accurate quotation of Rule 9; however, Rule 9 does not exempt Plaintiffs from Rule 8's requirement that legal conclusions must be supported by plausible factual allegations to be considered by the Court. *Iqbal*, 556 U.S. at 678.

Even if Plaintiffs' conclusory allegations were sufficient, Plaintiffs undercut their argument because they allege that Bottoms and Shields had "actual malice and/or reckless disregard for the truth." While plaintiffs can plead facts in the alternative, this is plainly a misstatement of the applicable legal standard because recklessness is insufficient to create actual malice. *Daley,* 638 S.E.2d at 386.

After carefully reviewing the second amended complaint, the Court cannot find any non-conclusory factual allegations that would allow a jury to reasonably infer that Bottoms and Shields deliberately intended to do wrong when they terminated Plaintiffs' employment and made public comments about Plaintiffs.

In sum, Bottoms and Shields's motion to dismiss will be granted.

## IV. Conclusion

For the foregoing reasons, Thomas's motion [144] to dismiss is granted; Fulton County's motion [145] to dismiss is granted; Bottoms and Shields's motion [149] to take judicial notice is granted; Howard's motion [150] to dismiss is granted; and Bottoms and Shields's motion [148] to dismiss is granted. The Clerk is directed to close this case.

IT IS SO ORDERED this 21st day of July, 2023.

Timothy C. Batten, Sr.
Chief United States District Judge